UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA, Plaintiff | : | |
| v. | : | C.A. No. 04-310S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants Southern Union Co. and New England Gas Co. hereby move for a protective order quashing Plaintiff's Requests for Admissions propounded to Defendants pursuant to Fed. R. Civ. P. 36. Defendants were served with Plaintiff's **five hundred and four** (504) Requests – covering an incredibly wide range of topics, both material and immaterial to this case – at 4:30 p.m. on May 31, 2006, the date that discovery closed. A protective order should issue on the grounds that Plaintiff's Requests (1) are oppressive, unduly burdensome, and calculated to harass Defendants; (2) violate the discovery deadline; and (3) will otherwise prejudice Defendants. In support of this Motion, Defendants submit the attached Memorandum.

Respectfully submitted,
DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent, first class mail, postage prepaid, a true and accurate copy of the within Defendants' Memorandum in Support of Motion for Protective Order to the following persons this 7th day of June, 2006.

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA, Plaintiff | : | |
| v. | : | C.A. No. 04-310S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendants Southern Union Co. and New England Gas Co., pursuant to Federal Rule of Civil Procedure 26(c), move for a protective order quashing Plaintiff's Requests for Admissions propounded to Defendants under Rule 36. Defendants object to Plaintiff's Requests – which number an astonishing **five hundred and four** (504) and which were served at 4:30 p.m. on the date that discovery closed – on the grounds that they (1) are oppressive, unduly burdensome, and calculated to harass Defendants; (2) violate the February 8, 2006 Order of this Court setting the discovery deadline for May 31, 2006; and (3) will severely prejudice Defendants by making it extremely difficult for Defendants to file for summary judgment by the required date. As the remainder of this memorandum makes clear, this Court should grant Defendants' motion in order to prevent Plaintiff from circumventing the discovery deadline, perverting the purposes of Rule 36, and causing Defendants severe prejudice.

## I. Facts and Travel

A. Numerous Extensions of Discovery Deadline

The facts relevant to the instant motion are as follows. This case was commenced in July 2004, and discovery was initially set to close on May 31, 2005. That date was later extended by

this Court's Amended Pre-Trial Order to November 17, 2005. In September 2005, by joint motion of the parties, discovery was once again extended to February 17, 2006.

On January 12, 2006, in anticipation of their imminent withdrawal and Plaintiff's retention of new counsel, Plaintiff's former attorneys moved for another extension to March 17, 2006, which was granted. On February 3, Plaintiff's current counsel entered her appearance. On February 8, 2006, this Court granted Plaintiff's current counsel's motion to extend the discovery deadline yet again. The February 8 Order stated that discovery would close on May 31, 2006 and noted: "There will be no further extensions." See Exhibit A. Despite this, Plaintiff – having failed to engage in *any* discovery since February 3, 2006 – moved for another extension on May 5, 2006. This Court, citing the clear language of the February 8 Order, denied this final motion. See Exhibit B. Discovery in this case closed on May 31, 2006. This Court once again reiterated the deadline in its June 6, 2006 Memorandum and Order relating to depositions, where it wrote: "The discovery deadline remains May 31, 2006 with the exception of conducting the three depositions . . . noticed prior to May 31, 2006." See Exhibit C. This Court made no other exceptions for discovery beyond the May 31 deadline.

B. Plaintiff's Request for Admissions

On that day, May 31, 2006, at approximately 4:30 p.m., Plaintiff's counsel hand-delivered a package of documents to the offices of Defendants' counsel. That package contained Plaintiff's Requests for Admissions propounded to Defendants pursuant to Federal Rule of Civil Procedure 36. See Exhibit D. Plaintiff's Requests consisted of (a) 504 separate statements of

purported fact, totaling forty (40) single-spaced, typewritten pages and (b) an appendix of ninety-four (94) tabbed exhibits, totaling several hundred pages.[1]

Among the hundreds of topics covered by Plaintiff's Requests were: (a) Plaintiff's job duties in the late 1980s, see, e.g., Exhibit D, Nos. 4-6; (b) whom Neal McNamara represents as counsel, see, e.g., Exhibit D, Nos. 17, 35, 199, 497-99; (c) the job duties of other employees in the early 1990s, see, e.g., Exhibit D, Nos. 15, 39, 64, 67; (d) an investigative report produced by third party Rhode Island Rehabilitation Institute in 1991, see, e.g., Exhibit D, Nos. 56-62; (e) training Plaintiff may or may not have received in the early 1990s, see, e.g., Exhibit D, Nos. 78-80, 83-87; (f) the terms of unspecified collective bargaining agreements throughout Plaintiff's employment, see, e.g., Exhibit D, Nos. 99-101; (g) grievances filed in 1994, see, e.g., Exhibit D, Nos. 103-04; (h) alleged conversations between Plaintiff and another employee in 1994, see, e.g., Exhibit D, Nos. 109-17; (h) Plaintiff's medical treatment in 1995-96 with Doctor Ruggiano, see, e.g., Exhibit D, Nos. 165-66; (i) consecutive, contradictory requests, see, e.g., Exhibit D, Nos.180-81, 187-90, 192-93, 201-02, 205-06, 210-11; (j) restatements of various person's deposition testimony, see, e.g., Exhibit D, Nos.197, 199, 200, 209, 212-16, ; (k) whether certain persons outside the control of Defendants testified truthfully at their depositions, see, e.g., Exhibit D, Nos. 230-33; (l) events surrounding drug and alcohol treatment for another employee, see, e.g., Exhibit D, Nos. 250-52; (m) the motivations of Plaintiff and Christine Stamp in writing letters to their national union, see, e.g., Exhibit D, No. 331; (n) what Plaintiff believed regarding TDI notifying Providence Gas of the commencement of TDI payments, see, e.g., Exhibit D, No. 398; (o) Plaintiff's motivations for retiring, see, e.g., Exhibit D, Nos. 428-31; (p) grievances filed

[1] To spare Defendants the cost of reproduction and to spare the Court any concomitant filing problems, Defendants have not appended to this Memorandum Plaintiff's several-hundred-page appendix to the Requests for Admissions. If the Court desires to view the appendix, Defendants will gladly produce it upon request.

by Lynore Horn, see, e.g., Exhibit D, Nos. 461-66; and (q) whether another employee took home a vacuum without permission, see, e.g., Exhibit D, No. 496. This list covers only a fraction of the topics referred to in Plaintiff's 504 Requests.

## II. Argument

Requests for admissions are a means "whereby the trial of the case may be shortened and issues made clear, avoiding unnecessary delay and expenses." 8A Wright & Miller, Federal Practice & Procedure § 2252, n. 2 (quoting In re Stein, 43 F. Supp. 845, 848 (N.D. Ill. 1942)). They are meant to "conserve the time of the Court, counsel, litigants, and all persons involved in the proceedings." Id. "Requests for admissions are not intended for factual discovery that should be done through interrogatories and depositions. . . . They exist to narrow the issues at trial where the parties unambiguously agree." Russo v. Baxter Healthcare Corp., 51 F. Supp. 2d 70, 79 (D.R.I. 1999). Plaintiff's voluminous and burdensome requests would not only fail to advance the efficiency-based purposes of Rule 36, but would actually serve to waste time and money without meaningfully narrowing any fact issues in this case.

Plaintiff's behavior bears all of the usual hallmarks of oppression and harassment that have traditionally led courts to issue protective orders pursuant to Rule 26(c). This Court should "apply the standards [for issuance of a protective order] in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." Fed. R. Civ. P. 26, Advisory Committee Notes, 1983 Amend., Subdivision (b); see also Wigler v. Electronic Data Sys. Corp., 108 F.R.D. 204, 206 (D. Md. 1985). There is no doubt that Plaintiff's 504 Requests for Admissions are (1) inappropriate in that they violate the spirit and letter of the discovery deadline set by this Court; (2) abusive because they are excessive in number and scope; and (3) are a transparent attempt to burden

Defendants with responding to hundreds of Requests so as to prevent Defendants from filing an effective dispositive motion before the due date.[2] A protective order is therefore appropriate.

A. A PROTECTIVE ORDER SHOULD ISSUE BECAUSE PLAINTIFF'S REQUESTS FOR ADMISSIONS VIOLATE THE DISCOVERY DEADLINE AND ARE UNTIMELY.

A "deadline for completion of discovery facially applies to requests for admissions." Kershner v. Beloit Corp., 106 F.R.D. 498, 499 (D. Me. 1985). A "majority of courts which have addressed the precise issue now presented have concluded that requests for admissions should be subject to case management discovery deadlines."[3] Brodeur v. McNamee, 2005 U.S. Dist. LEXIS 14939, at *8 (N.D.N.Y. July 27, 2005); see also Joseph L. v. Connecticut Dep't of Children & Families, 225 F.R.D. 400, 402-03 (D. Conn. 2005) (collecting cases); Gluck v. Ansett Austl. Ltd., 204 F.R.D. 217, 219 (D.D.C. 2001); Kershner, 106 F.R.D. at 499.

Here, after several extensions of the discovery deadline – the last two of which were granted at Plaintiff's request – this Court unequivocally set a final deadline of May 31, 2006. See Exhibit A. This deadline was reaffirmed on May 12, 2006, when this Court denied Plaintiff's most recent request for yet another extension, see Exhibit B, and again on June 6, 2006. See Exhibit C. At 4:30 p.m. on the date that discovery closed, Plaintiff's counsel served Defendants with the 504 Requests at issue, including a voluminous appendix. Pursuant to Rule 36, Defendants responses to the Requests would be due by June 30, 2006, exactly thirty (30)

---

[2] At the time Plaintiff's Requests were served, the summary judgment due date was June 30, 2006. It has since been changed to July 21, 2006. See Exhibit C.

[3] Although some courts have held that requests for admissions are not technically "discovery" and therefore not subject to discovery deadlines, see, e.g., Barr v. Weber (In re Carousel Candy Co.), 38 B.R. 927, 935-936 (Bankr. E.D.N.Y. 1984) and Hurt v. Coyne Cylinder Co., 124 F.R.D. 614, 615 (W.D. Tenn. 1989), the majority rule makes eminent sense given that (1) Rule 26(a)(5) lists "requests for admission" as a means of obtaining discovery and (2) Rule 36, governing requests for admissions, falls squarely within Chapter V of the Rules, which governs "Depositions and Discovery." See, e.g., Joseph L., 225 F.R.D. at 402; Gluck, 204 F.R.D. at 219; Kershner, 106 F.R.D. at 499.

days beyond the close of discovery. Not coincidentally, at the time of service June 30 was also the deadline set by the Court for the filing of dispositive motions.

A majority of the courts that have dealt with similar circumstances have found that requests for admissions served on the brink of the discovery deadline are improper and have granted motions for a protective order. In Joseph L. v. Connecticut Department of Children & Families, for example, the plaintiff served the defendants with one hundred sixty-three (163) requests for admission one day prior to the discovery deadline. See 225 F.R.D. at 401. The defendants sought a protective order on the grounds that the requests for admission violated the court's scheduling order because the "massive discovery request" required a response that was due "approximately one month after the expiration of the court-ordered deadline for discovery." See id. at 402 (internal quotes omitted). Noting, inter alia, that the requests for admission were "excessive to the point of being abusive," id. at 403, and the plaintiff's "failure to move the court for additional time in which to serve, and have the defendants respond to, the aforementioned requests,"[4] id. at 402, the court issued a protective order. "To hold otherwise," the court stated, "would be to leave the requests for admission 'afloat in the pretrial process, a situation which seems to be at odds with the purpose of the [scheduling] order." Id. at 403 (quoting Bieganek v. Wilson, 110 F.R.D. 77, 78 (N.D. Ill. 1986)).

Likewise, in Gluck v. Ansett Australia Ltd., the plaintiff served on the defendant several sets of requests for admission within one week of the discovery deadline. See 204 F.R.D. at 218. Describing circumstances eerily similar to the instant case, the court stated:

> Plaintiff served his requests for admissions a matter of days before the discovery deadline. He neither sought an extension of the discovery deadline to allow the

[4] In this case, Plaintiff did move for additional time to conduct discovery, but this Court squarely rebuffed Plaintiff's attempt. Plaintiff should not now be allowed to circumvent this Court's clear order through the use of underhanded tactics.

> thirty days for defendant's responses nor moved to shorten defendant's response time.[[5]] That effectively compressed the two time periods that the defendant would have been entitled to have for formulating responses and drafting dispositive motions in light of the responses into one.

Id. at 219-20. The court went on to affirm the magistrate's decision protecting the defendant from the plaintiff's "sharp practice." Id. at 220.

Similarly, in Toone v. Federal Express Corp., 1997 U.S. Dist. LEXIS 11637, at *22-23 (D.D.C. July 30, 1997), the plaintiff sent the defendant requests for admissions on the date discovery closed. The defendant objected to the requests "based on its interpretation of the scheduling order as requiring discovery to be completed by [the discovery cutoff], which include[d] the 30-day time period they would have to respond to the request for admissions." Id. at *22. The court stated:

> While the plaintiff argues that the defendant's interpretation of the scheduling order is "unreasonable," if the Court were to adopt the plaintiff's interpretation, then the defendant could have responded to the request for admissions on the day of the original trial date . . . . Moreover, if a discovery dispute had arisen as to the adequacy of the defendant's responses, there would have been no time for the parties to resolve the dispute prior to trial. Thus, the plaintiff's interpretation of [the] scheduling order is unreasonable.

Id. at *22-23. In denying the plaintiff's motion to compel responses, the court specifically noted that the "plaintiff waited until the eleventh hour to serve discovery which could not be completed prior to discovery cut-off." Id. at 23; see also Brodeur, 2005 U.S. Dist. LEXIS 14939, at *11-12.[6] Other courts within the First Circuit have effectively quashed requests for admissions in similar circumstances.[7]

---

[5] As noted in note 3, supra, Plaintiff's attempt to extend the discovery deadline was denied. Plaintiff has not moved to shorten the time for Defendants to respond to her Requests for Admissions. It is likely she has not done so because (a) she would be hard pressed to convince this Court that 504 requests could adequately be answered in less than thirty (30) days and (b) she wanted to avoid this Court's inevitable scrutiny when it became clear that she had served 504 Requests for Admissions on the final day of discovery.

[6] In Brodeur v. McNamee, the plaintiffs served on defendants several sets of requests for admissions during the fifteen-day period preceding the discovery deadline. See 2005 U.S. Dist. LEXIS 14939, at *2-3. The court

*(Footnote continued on next page)*

Here, Plaintiff's service of 504 requests at 4:30 p.m. on the date discovery closed is even more abusive than the conduct in the cases above in which protective orders were issued. This Plaintiff served well over three times as many Requests as – and did so one day later than – the plaintiff in Joseph L., whose shenanigans were criticized as "excessive to the point of being abusive." 255 F.R.D. at 403. This Plaintiff, like the plaintiff in Gluck, has also engaged in the "sharp practice" of attempting to "compress[] the two time periods that the defendant would have been entitled to have for formulating responses and drafting dispositive motions in light of the responses into one." 204 F.R.D. at 218, 220.

Furthermore, like the plaintiff in Toone, this Plaintiff's attempt to foist 504 Requests for Admissions onto Defendants at the "eleventh hour" is based upon an "unreasonable" construction of this Court's scheduling orders. See 1997 U.S. Dist. LEXIS 11637, at *22-23. There is no doubt that Defendants' responses to the Requests for Admissions could be potential evidence for the purposes of summary judgment. Since those responses would be due shortly before the due date for a motion for summary judgment, however, "if a discovery dispute [arises] as to the adequacy of the defendant's responses, there [will be] no time for the parties to resolve the dispute." See id. Furthermore, if Plaintiff's construction of the discovery deadline order stands, there would be nothing preventing a party from waiting until the final day of discovery to

*(Footnote continued from previous page)*
granted the defendants' motion for protective order primarily on the grounds that the requests constituted "discovery" and thus were barred by the district's local rule requiring that discovery "be served sufficiently in advance of the discovery deadline to allow for service of timely responses prior to the assigned discovery deadline." See id. at *4. The court also noted the "interests of promoting orderly and efficient litigation" and that the requests were "both numerous and seem to extend in scope well beyond what . . . [is] necessary to accomplish the potentially productive purpose to be served by Rule 36" in coming to its conclusion. See id. at *9-10.

[7] See, e.g., Kotler v. American Tobacco Co., 731 F. Supp. 50, 56 (D. Mass. 1990) (subsequent history omitted) (Appx. A) (holding that "defendants need not answer the plaintiff's requests for admissions, since they are an aspect of discovery which was not included in the extensions of the discovery deadline"); cf. Central Maine Power Co. v. Foster Wheeler Corp., 115 F.R.D. 294, 295 (D. Me. 1987) (granting protective order with respect to requests for admissions served two weeks after discovery deadline).

serve interrogatories, requests for production of documents, and requests for admissions, on the purported ground that they were all properly served "before" discovery closed. Needless to say, adopting Plaintiff's view of what the "close" of discovery means would wreak havoc on discovery scheduling orders throughout this Court's docket.

It appears that, within the First Circuit, the only court that allowed requests for admissions that conflicted with the close of discovery did so under markedly different circumstances than those here. In Kershner v. Beloit Corp., the defendant served fifty-five requests for admissions after the discovery deadline had passed. The court first held (a) that the discovery deadline applied to the requests, and (b) that the defendant's failure to file a motion to extend discovery for the specific purpose of the requests left the defendant "exposed . . . to objection for untimeliness." 106 F.R.D. at 499. However, the court denied the plaintiff's objection and allowed the requests to go forward because the court found (a) that the requests would help to "isolate[] the actually disputed factual issues for trial" and (b) that the plaintiff had made "no showing of actual prejudice should they be required to respond to the requests." Id. In finding lack of prejudice, the court noted that the plaintiff had "waited for thirty-five days before filing their motion to quash the request." Id.

The circumstances in the instant case are starkly distinguishable from Kershner, and, in fact, more closely resemble those in Central Maine Power Co. v. Foster Wheeler Corp., 115 F.R.D. 294, 295 (D. Me. 1987), where the court quashed untimely requests. Here, Plaintiff served nearly ten times as many separate requests as the defendant in Kershner. Further, Plaintiff *did* attempt to extend discovery – and that attempt was, in fact, denied because it would have gutted this Court's clear directive that no further extensions beyond May 31 be granted. Unlike the comparatively limited requests at issue in Kershner, the sheer number and scope of

Plaintiff's Requests here ensure that the Requests will not serve the "unique and generally beneficent effect" of narrowing the issues to be tried. Id.; see Central Maine Power Co., 115 F.R.D. at 295 ("[F]ew of the twenty-two questions propounded [after the close of discovery] are capable of a simple answer and . . . requiring [plaintiff] to respond would impose upon it a burdensome and time-consuming task. . . . [A] response to these admissions would be unlikely to significantly narrow the range of disputed factual issues."). Moreover, unlike the plaintiff in Kershner who waited for over a month to object, Defendants here have moved for a protective order within one week of receiving the Requests. Lastly, there can be no doubt that Defendants will be prejudiced, as the statements of purported fact in the Requests are so varied, wide-ranging, and numerous that it would be virtually impossible for Defendants to answer them and to prepare a motion for summary judgment simultaneously. Cf. Central Maine Power Co., 115 F.R.D. at 295 ("Given the late date and the necessity to complete other aspects of final trial preparation, the court concludes that [plaintiff] would likely suffer prejudice if a response were required.").

In short, Plaintiff's Requests for Admissions are untimely, and no circumstances exist that would justify disposing of the clear discovery deadline set by this Court. If anything, fairness considerations weigh heavily in favor of Defendants with respect to the issue of timeliness, given the eleventh hour service, the upcoming summary judgment due date, the excessive number and scope of the Requests, and the short amount of time between service of the Requests and Defendants' filing of this Motion. A protective order is therefore appropriate.

B. A PROTECTIVE ORDER SHOULD ISSUE BECAUSE PLAINTIFF'S REQUESTS ARE EXCESSIVE IN NUMBER AND SCOPE, AND ARE THEREFORE OPPRESSIVE AND UNDULY BURDENSOME.

Requests for admissions "should not be of such great number and broad scope as to cover all the issues [even] of a complex case" and "obviously . . . should not be sought in an attempt to harass an opposing party." Wigler, 108 F.R.D. at 206-07 (quoting Lantz v. New York Cent. R.R. Co., 37 F.R.D. 69, 69 (N.D. Ohio 1963)). The purpose of Rule 36 requests for admissions is "to *save* time and expense for all by narrowing the issues to be tried." Id. at 207 (emphasis in original). There can be little doubt that Plaintiff's 504 requests are excessive in both number and scope, as they touch on virtually every aspect of Plaintiff's claims against Defendants, as well as numerous purported facts that have little or no bearing on the issues in this case. Plaintiff's Requests, if allowed, will fully subvert the time- and expense-saving purposes of Rule 36.

1. PLAINTIFF'S REQUESTS ARE EXCESSIVE IN NUMBER.

Although Rule 36 does not limit the number of requests for admissions that a party can serve, courts have issued protection to parties that are besieged with excessive numbers of requests. See, e.g., Misco, Inc. v. United States Steel Corp., 784 F.2d 198, 205-206 (6th Cir. 1986) (holding that 2,028 requests for admissions were improper); Joseph L., 225 F.R.D. at 401, 403 (finding 163 requests served on day before discovery closed "excessive to the point of being abusive"); Wigler, 108 F.R.D. at 205, 207 (holding that 1,664 requests were improper and an "intolerable distortion of the purpose" of Rule 36). Here, Plaintiff's 504 Requests certainly qualify as numerically excessive, especially given their eleventh hour service by counsel that had approximately four months to conduct discovery in this case but chose not to conduct any discovery until the final weeks of May..

Courts that have allowed requests for admissions to go forward over objections based on the excessive number of requests have done so – with one exception – only where the number of requests was far smaller than the number in the instant case. See United States v. Marsten Apts., Inc., 1997 U.S. Dist. LEXIS 14262, at *6-7 (E.D. Mich. June 16, 1997) (collecting cases). Within the First Circuit, district courts dealing with this issue have, at times, allowed 292 separate requests, Duncan v. Santaniello, 1996 U.S. Dist. LEXIS 3860, at *7-8 (D. Mass. March 8, 1996),[8] 704 separate requests, Photon, Inc. v. Harris Intertype, Inc., 28 F.R.D. 327, 328-29 (D. Mass 1961), and 106 separate requests, Shawmut, Inc. v. American Viscose Corp., 12 F.R.D. 488, 489 (D. Mass. 1952). It goes without saying that with the exception of Photon, Inc., these cases involved substantially fewer requests than the instant case. Further, unlike the instant case, none of these cases involved any objection as to the timeliness of the requests.

Photon, Inc., in which the court dealt with individualized objections to a discrete number of the 704 requests in the context of a complex patent infringement case, is inapposite. 28 F.R.D. at 328. There, the responding party seemingly had no objection to the requests as a whole on the basis of excessive numerosity. See id. at 328-29. Therefore, the court did not rule on the reasonableness or propriety of the number of requests. See id. Importantly, Photon, Inc. involved patent disclosures, claims, and machines which were, in the words of the court, "highly complex." See id. at 328; see also Shawmut, Inc., 12 F.R.D. at 489 ("The number of requests is fairly large (one hundred and six) but not unreasonable in view of the complexity of this case."). The instant case, by contrast, is a straightforward Title VII case of alleged discrimination and

[8] It is worth noting that Duncan involved a total of 292 requests served upon three separate defendants. See 1996 U.S. Dist. LEXIS 3860, at *7. Thus, it is likely that the burden on each individual defendant was significantly less than 292 requests.

sexual harassment. It cannot be categorized as "complex" under any usual meaning of that term. As the court in Wigler noted under nearly identical circumstances:

> Where a case is particularly complex, a large number of requests for admissions may be justifiable. . . . In contrast, the case *sub judice* is relatively straightforward. This litigation involves a single plaintiff and two affiliated corporate defendants, posing issues which are customary in employment discrimination actions.

108 F.R.D. at 206. Plaintiff's 504 Requests, given their untimeliness and breadth, are excessive in number and therefore oppressive and unduly burdensome.

2. PLAINTIFF'S ARE UNDULY BROAD IN SCOPE, COVERING VIRTUALLY EVERY PURPORTED FACT IN THIS CASE, WHETHER RELEVANT TO PLAINTIFF'S CLAIMS OR NOT.

Plaintiff's Requests are oppressive and unduly burdensome because they are of such "broad scope as to cover all the issues" – and then some – in this case. Lantz, 37 F.R.D. at 69. Plaintiff's Requests range from the unnecessary, see, e.g., Exhibit D, Nos. 301-06 (restating Ed Bolduc's deposition testimony); to the irrelevant, see, e.g., Exhibit D, Nos.17, 35, 497-99 ("Attorney Neil [sic] McNamara is attorney for [Witness X]."); to the unknowable, see, e.g., Exhibit D, Nos. 230-33 ("Kala testified truthfully during his May 24, 2006 deposition."); to the downright bizarre, see, e.g., Exhibit D, Nos. 217-24 ("221. Morancy expressed shock that Plaintiff had made complaints that Kala had made unwanted sexual advances towards Plaintiff./ 222. Morancy did not express shock that Plaintiff had made complaints that Kala had made unwanted sexual advances towards Plaintiff.").

Plaintiff's Requests clearly "extend in scope well beyond what . . . [is] necessary to accomplish the potentially productive purpose to be served by Rule 36." Brodeur, 2005 U.S. Dist. LEXIS 14939, at *10. As the court in Wigler aptly noted:

> It also serves no useful purpose to invest a tremendous number of lawyer-hours in preparing such huge requests, especially where sanction for improper failure to

> admit, under Rule 37(c), is the recovery of expenses and fees incurred in proving the particular factual matter at issue. These expenses and fees, given the narrow scope of the issues actually to be tried, as opposed to matters as to which discovery is sought, may be far less than the expense of preparing Rule 36 requests as to every matter that has turned up in the course of interrogatory and deposition discovery.

108 F.R.D. at 207. As in Wigler, Plaintiff's Requests "represent an attempt not just to nail down the core facts of the case, but also to pick every nit that a squad of lawyers could possibly see in it." Id. at 205.

The impropriety of such an extensive, unduly broad range of Requests is compounded not only by the untimeliness of service, but also by the fact that "all parties have had a fair and adequate opportunity to engage in pretrial discovery." Brodeur, 2005 U.S. Dist. LEXIS 14939, at *10. This case had been pending for nearly two years, and current counsel has been involved for approximately four months. Plaintiff's service of 504 Requests at 4:30 p.m. on the final day of discovery – many of which are academic at best, and meant to harass at worst – can only be described as "excessive to the point of being abusive." Joseph L., 225 F.R.D. at 403. For these reasons, this Court should grant Defendants' motion for protective order.

C. DEFENDANTS WILL BE SEVERELY PREJUDICED IF THEY ARE FORCED TO RESPOND TO PLAINTIFF'S ABUSIVE REQUESTS FOR ADMISSIONS.

Defendants' motion for summary judgment in this case is due on July 21, 2006. This puts Defendants in the awkward, difficult position described by the court in Gluck, 204 F.R.D. at 219-20, of having to engage in the meticulous process of responding to 504 individual statements of purported fact while simultaneously preparing a summary judgment motion dependent, in large part, on the existence or non-existence of those same purported facts.

Further, Defendants submit that there is a strong likelihood, in view of the applicable law and the undisputed facts, that Plaintiff's claims based on alleged events occurring prior to 1999

are time-barred and will be disposed of via summary judgment. Therefore, Defendants will be severely prejudiced if they are forced to respond to Plaintiff's Requests, the vast majority of which describe purported events that occurred well before 1999 and therefore will not likely be at issue during trial. Forcing Defendants to respond to Plaintiff's requests would, therefore, have the perverse effect of actually *expanding* the time and expense associated with fact-development than would otherwise be the case. A protective order is therefore necessary to protect Defendants from undue prejudice.

## III. Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Protective Order along with such other and further relief as this Court deems just and proper.

Respectfully submitted,
DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent, first class mail, postage prepaid, a true and accurate copy of the within Defendants' Memorandum in Support of Motion for Protective Order to the following persons this 7th day of June, 2006.

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA<br><br>v.<br><br>SOUTHERN UNION COMPANY and NEWENGLAND GAS COMPANY | : | C.A. No: 04-310(S) |

**MOTION FOR DISCOVERY EXTENSION**

Now comes undersigned Plaintiff's counsel and hereby moves for a five (5) month extension of time within which Plaintiff will be permitted to conduct discovery in the above-captioned action. As grounds for this motion, undersigned counsel states that she entered her appearance in the above-captioned action on behalf of the Plaintiff, Carol Petrarca simultaneously with this motion. Undersigned counsel has no prior involvement in this litigation. Withdrawal by prior counsel was unexpectedly necessary due to a conflict of interest. Discovery is presently scheduled to close on February 17, 2006. Plaintiff respectfully requests that discovery be extended to July 17, 2006.

Respectfully submitted,

PLAINTIFF CAROL PETRARCA
By her Attorney,

N.K. Clapham

Noelle K. Clapham (5338)
Attorney at Law
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401) 783-3600
(401) 783-3670 (fax)

Discovery Closure will be extended to May 31 2006. There will be no further extensions

[signature]
USDJ
2/8/06

FILED
MAY 05 2006

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA | : | |
| v. | : | C.A. No: 04-310(S) |
| SOUTHERN UNION COMPANY and NEWENGLAND GAS COMPANY | : | |

**MOTION TO ENLARGE TIME FOR DISCOVERY**

Now comes the Plaintiff, and moves for enlargement of time in which to conduct discovery to June 30, 2006. In support of her Motion, Plaintiff avers that: 1) Defendants' counsel has already received an extension to June 30, 2006 for the purposes of filing a motion for summary judgment; 2) Plaintiff has recently obtained new counsel, and that new counsel requires time to familiarize herself with the facts of this case; 3) the factual issues on this sexual harassment case are particularly complex, involving numerous witnesses and matters spanning back over twenty years. Accordingly, an extension of time is in the interests of justice, and will not result in prejudice to any party.

PLAINTIFF CAROL PETRARCA
By her Attorney,

Vicki J. Bejma (6498)
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903
(401) 331-6565
(401) 331-7888 (fax)

DENIED. JUDGE [illegible] EXTENDED DISCOVERY ON 2/8/06 AND NOTED "THERE WILL BE NO FURTHER EXTENSIONS." PLAINTIFF PRESENTS NO COMPELLING REASON TO IGNORE THIS CLEAR DIRECTIVE.
USMJ

[illegible] 5/5/06

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA | : | |
| | : | |
| v. | : | C.A. No. 04-310S |
| | : | |
| SOUTHERN UNION COMPANY and NEW ENGLAND GAS COMPANY | : | |

**MEMORANDUM AND ORDER**

Before the Court for determination are Defendants' Motions to Quash Subpoenas for the depositions of Royalynne Hourihan and Alycia Goody (Document Nos. 89 and 90), and Plaintiff's Motion to Compel the Attendance of D'Anna Soenghe at a deposition. (Document No. 93). 28 U.S.C. § 636(b)(1)(A); LR Cv 72(a). A telephone conference was held on June 6, 2006. For the reasons stated by the Court during the telephone conference, the pending motions are resolved as follows:

1. Defendants' Motions to Quash (Document Nos. 89 and 90) are DENIED and Plaintiff's Motion to Compel (Document No. 93) is GRANTED. Plaintiff may conduct the depositions of Ms. Hourihan, Ms. Goody and Ms. Soenghe on or before June 23, 2006. The parties shall confer in good faith to schedule these depositions at mutually agreeable dates and times. During the telephone conference, Plaintiff's counsel represented to the Court that no additional depositions needed to be taken by Plaintiff, and none will be permitted.

2. The discovery deadline remains May 31, 2006 with the exception of conducting the three depositions referenced in paragraph 1 which were, in any event, noticed prior to May 31, 2006. However, in view of the accommodation granted to Plaintiff's counsel in scheduling these depositions and Defendants' counsel's representation that he is in the process of preparing a

dispositive motion, the dispositive motion deadline is extended until July 21, 2006. Pretrial memoranda are due thirty (30) days after a decision on any dispositive motions, or if no dispositive motions are filed, by August 18, 2006.

LINCOLN D. ALMOND
United States Magistrate Judge
June 6, 2006