UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA,<br>Plaintiff | : | |
| | : | |
| v. | : | C.A. No. 04-310S |
| | : | |
| SOUTHERN UNION CO. &<br>NEW ENGLAND GAS CO.,<br>Defendants. | : | |

**DEFENDANTS' OBJECTION TO REPORT & RECOMMENDATION**
**ON MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 72(b), and Local Rule cv. 72(d), Defendants Southern Union Co. and New England Gas Co. hereby object to the Report and Recommendation of the Magistrate Judge, dated January 3, 2007 ("R&R"), regarding Defendants' Motion for Summary Judgment filed on July 21, 2006. Specifically, Defendants object to that part of the R&R denying summary judgment on Count I of Plaintiff Carol Petrarca's Complaint, asserting hostile work environment discrimination under Title VII. In further support of this objection, Defendants submit the attached memorandum of law.

Respectfully submitted,
DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,
NIXON PEABODY LLP

/s/Neal J. McNamara
/s/Matthew J. Frankel
Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: January 17, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a true and accurate copy of the within document to the following persons this 17th day of January, 2007.

VIA REGULAR MAIL

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

VIA HAND DELIVERY

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

/s/ Neal J. McNamara

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA,<br>Plaintiff | : | |
| v. | : | C.A. No. 04-310S |
| SOUTHERN UNION CO. &<br>NEW ENGLAND GAS CO.,<br>Defendants. | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTION TO REPORT & RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT**

Defendants Southern Union Co. and New England Gas Co. (collectively, "Defendants") submit this memorandum in support of their objection, filed pursuant to Fed. R. Civ. P. 72(b), to the Report and Recommendation of Magistrate Judge Lincoln Almond entered on January 3, 2007 ("R&R"). Defendants object to the R&R only insofar as it denied summary judgment with respect to Count I of Plaintiff Carol Petrarca's Complaint, asserting a hostile work environment under Title VII.[1] As discussed in greater detail below, and contrary to the position taken by the Magistrate Judge, Plaintiff's cannot establish the existence of either (1) a hostile work environment that existed independently within the limitations period or (2) a single, overarching hostile environment that "persisted from the day she began her employment, to the date that she ended it," such that a continuing violation theory should be applied to resurrect her otherwise untimely allegations. See R&R at 32 (quoting Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Pl.'s Opp. Mem.") at 37). Because Plaintiff cannot establish a hostile work environment as a matter of law, Defendants are entitled to summary judgment on that count.

[1] Although Defendants strongly disagree with the Magistrate's recommendation denying summary judgment with respect to Count II (in part) and Count III, Defendants do not challenge those portions of the R&R for the purposes of this Fed. R. Civ. P. 72 objection.

## I. Procedural Posture

Plaintiff Carol Petrarca first filed a charge of discrimination with the RICHR on February 25, 2000, alleging that Defendants violated Title VII by, inter alia, harassing her because of her sex. Defendants' Statement of Undisputed Facts ("Defs.' Stmt") ¶ 8. On or about July 22, 2004, Plaintiff filed a judicial complaint in this Court asserting three causes of action against Defendants under 42 U.S.C. §§ 2000e et seq. Count I of Plaintiff's complaint alleged that Defendants subjected her to a hostile work environment. Count II alleged that Plaintiff was subjected to disparate treatment by Defendants. Count III alleged that Defendants retaliated against Plaintiff in violation of Title VII. Defs.' Stmt. ¶ 10.

Defendants filed a motion for summary judgment on all three counts in Plaintiff's Complaint, with supporting memorandum and statement of undisputed facts, on July 21, 2006. Plaintiff filed her opposition to summary judgment, with supporting memorandum and statement of facts in dispute, on August 18, 2006. Defendants filed a reply memorandum on September 15, 2006. The matter was referred to Magistrate Judge Almond for preliminary review, findings, and recommended disposition. The Magistrate Judge heard oral argument on the motion on September 28, 2006.

The Magistrate Judge issued his R&R on January 3, 2007, recommending that summary judgment be granted in limited part as to Count II but denied in all other respects. Defendants now seek this Court's de novo determination regarding the propriety of summary judgment solely as to Count I of Plaintiff's Complaint, alleging hostile work environment harassment. Defendants urge this Court to reject the Magistrate Judge's recommendation as to Count I and GRANT summary judgment on Plaintiff's hostile environment harassment claim.

## II. Summary Judgment Standard

This Court must conduct a de novo review of evidence and legal arguments put forth by the parties regarding Plaintiff's hostile environment claim in determining whether summary judgment should be granted. Fed. R. Civ. P. 72(b). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 43 (1st Cir. 2003). "A fact is 'material' if it has the 'potential to affect the outcome of the suit under the applicable law.'" Randall v. Potter, 366 F. Supp. 2d 104, 112 (D. Me. 2005) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)). An issue is "genuine" only if the evidence relevant to that issue is "sufficiently open ended to permit a rational factfinder to resolve the issue in favor of either side." Id. (quoting National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (subsequent history omitted)). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Rodriguez v. Potter, 419 F. Supp. 2d 58, 63 (D.P.R. 2006). Conclusory assertions and unsupported speculation do "not meet a party's burden of producing some defense to a summary judgment motion." Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931-32 (7th Cir. 1995).

## III. Legal Argument

Defendants argument in favor of summary judgment on Plaintiff's hostile environment claim rests upon two basic premises. The first is that Plaintiff's allegations falling strictly within the limitations period are insufficient, as a matter of law, to establish a hostile environment claim. The second is that Plaintiff's proffered evidence fails to establish that application of the

continuing violation doctrine is appropriate, because her allegations of harassment both *prior to* and *during* the limitations period cannot be linked into one, overarching "unlawful employment practice." Because the continuing violation doctrine is inapplicable as a matter of law, and Plaintiff cannot establish an independent harassment claim within the limitations period, Defendants are entitled to summary judgment on that count.

## A. Applicable Law

### 1. Hostile Work Environment

In order to establish a hostile work environment, Plaintiff "must show that she was subjected to severe or pervasive harassment that materially altered the conditions of her employment." Noviello v. City of Boston, 398 F.3d 76, 93 (1st Cir. 2005) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998)). The harassment must be "objectively . . . offensive, one that a reasonable person would find hostile or abusive." Id. (quoting Faragher, 524 U.S. at 787). In determining whether a reasonable person would find particular conduct hostile or abusive, a court must examine the totality of the circumstances, including factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Faragher, 524 U.S.at 787-88). "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Id.

Title VII "does not guarantee a utopian workplace, or even a pleasant one," Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1162 (7th Cir. 1994), and is not a "general civility code." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). "Stepping out of one's home into the working world means, to some extent, subjecting oneself to the slings and arrows

of daily life. Title VII does not codify Emily Post's rules of etiquette." Feliciano v. Alpha Sector, Inc., 2002 WL 1492139, at *8 (S.D.N.Y. July 12, 2002). As the Seventh Circuit has aptly stated, "The workplace that is actionable is one that is hellish." Perry v. Harris Chernin, Inc.,126 F.3d 1010, 1013 (7th Cir. 1997).

2. Continuing Violation

It is widely recognized that statutes of limitations are "designed to keep stale claims out of court." Muniz-Cabrero v. Ruiz, 23 F.3d 607, 611 n.6 (1st Cir. 1994). In employment discrimination actions, the limitations period "protects the accused by guaranteeing that they receive sufficient notice of the alleged violations to adequately investigate the claims while those claims are still reasonably susceptible to investigation." Place v. California Webbing Indus., Inc., 249 F. Supp. 2d 157, 161 (D.R.I. 2003). Furthermore, the limitations period is "designed to provide [defendants] with adequate time for such matters as scheduling witnesses, hiring lawyers, and gathering and compiling evidence of the alleged violations before witnesses' memories of the incidents become too obscure." Rathbun v. Autozone, Inc., 253 F. Supp. 2d 226, 232 (D.R.I. 2003) (subsequent history omitted) (quoting Ferguson Perforating & Wire Co. v. Rhode Island Comm'n for Human Rights, 415 A.2d 1055, 1056 (R.I. 1980)).

Plaintiff has asserted her hostile environment claim under Title VII, and in Rhode Island – a "deferral state" – the applicable limitations period is three hundred (300) days. See 42 U.S.C. § 2000e-(5)(e). Plaintiff filed her charge of discrimination with the Rhode Island Commission for Human Rights on February 25, 2000. Defs.' Stmt. ¶ 8. Therefore, her hostile environment claims predating April 26, 1999, are per se time-barred absent some equitable exception. See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 (1st Cir. 2005); Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002).

One such equitable exception – the only one invoked by Plaintiff in this case – is the continuing violation doctrine as explicated by the United States Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-18 (2002). Under the continuing violation doctrine, a plaintiff can recover for a hostile work environment based on allegations pre-dating the limitations period so long as that *same* hostile work environment continued to exist into the limitations period. See Paquin v. MBNA Marketing Sys., Inc., 233 F. Supp. 2d 58, 63 (D. Me. 2002) (citing Morgan, 536 U.S. at 117-18). In order to show this, a plaintiff must establish that one act contributing to the overarching hostile environment claim occurred within the filing period. See Morgan, 536 U.S. at 117; see also Crowley, 303 F.3d at 395-96; Randall v. Potter, 366 F. Supp. 2d 104, 114-15 (D. Me. 2005).

"[A] hostile environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Morgan, 536 U.S. at 117. Thus, where a plaintiff claims (as Plaintiff does here) that her hostile environment claim "straddle[es]" the limitations cut-off date, she must establish *not only* that one "act" occurred within the limitations period, but that the series of acts allegedly creating a hostile environment are "sufficiently continuous and concerted" to constituted a "single, continuing act of discrimination." Costanzo, 2003 WL 1701998, at *6 (S.D.N.Y. Mar. 31, 2003). Or, in the Seventh Circuit's formulation, "acts of sexual harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." Garrison v. Burke, 165 F.3d 565, 570 (7th Cir. 1999) (quoting Koelsch v. Beltone Elecs. Corp., 46 F.3d 705, 707 (7th Cir. 1995)). In the absence of evidence of "continuous and concerted" harassment of Plaintiff continuing into the limitations period, Defendants are entitled to summary judgment on Plaintiff's hostile environment claim.

**B. The Parties' Arguments: Applying the Law to the Facts**

As an initial matter, Defendants concede, for the purposes of this motion only, that Plaintiff has established a triable issue as to whether she was subject to a hostile work environment for the period ending with Richard Kala's January 1996 transfer out of the facilities maintenance department. The crux of Defendants' argument is that Plaintiff's allegations and evidence fall short, as a matter of law, of establishing that this alleged pre-January 1996 hostile environment *continued unabated* into the limitations period, i.e., through April 26, 1999. In the absence of any credible allegations or evidence that the alleged harassment was "continuous and concerted" from January 1996 to April 26, 1999, and thus formed "one 'unlawful employment practice'" extending into the limitations period, Plaintiff cannot invoke the continuing violation doctrine to defeat summary judgment.

Aware of the dearth of evidence of post-January 1996 harassment, Plaintiff attempted (in her opposition memorandum and exhibits) to fling as much mud at the wall in the apparent hope that some of it would stick. Plaintiff thus put forth a flurry of unsupported and non-creditable "evidence" that she alleges create triable issues of fact regarding whether a hostile environment existed from January 1996 through April 26, 1999. Plaintiff argues, in turn, that, under the continuing violation doctrine, she deserves a trial covering all twelve years of her employment.

In their reply memorandum, Defendants dealt in great detail with each and every one of Plaintiff's allegations of harassment post-dating Kala's January 1996 departure from Plaintiff's department. Defendants established that all such allegations, drawn almost exclusively from Plaintiff's deposition testimony and affidavit, were insufficient to avert summary judgment for one or more of the following reasons: (1) the allegations were conclusory and not based on Plaintiff's personal knowledge; (2) the allegations did not constitute evidence of harassment;

and/or (3) the allegations were ambiguous as to time of occurrence, making them insufficient as a matter of law to stave off summary judgment on limitations grounds. Having disposed of each and every one of Plaintiff's post-January 1996 allegations, Defendants argued that summary judgment was appropriate because of the complete absence of creditable allegations of harassment from January 1996 into the limitations period.

Defendants further argued that Plaintiff's "final" allegation of harassment, the "locker room incident," could not, as a matter of law, (a) independently constitute a timely hostile work environment or (b) be deemed part of one "single continuing act of discrimination" that straddled the limitations cut-off date. With respect to point (a), the "locker room incident" did not create a hostile work environment in and of itself, because it was one-time event that (1) had never happened previously, (2) never happened again, and (3) was resolved after an investigation by the Gas Company when Bolduc apologized. See Defs.' First Mem. at 20-22; Defs.' Reply Mem. at 21-22. Nor, as to point (b), could the "locker room incident" be deemed to contribute to a single, overarching hostile environment because the absence of creditable harassment allegations between January 1996 and the date it occurred precluded a finding that it was part of a "single course of conduct" constituting one "unlawful employment practice." Thus, Defendants argued that summary judgment was appropriate on Plaintiff's entire hostile environment claim.

**C. Defendants' Arguments *Contra* the Magistrate Judge's R&R**

The Magistrate Judge disagreed with Defendants, recommending that Plaintiff be granted a trial to determine whether she was subject to a hostile environment "from the day she began her employment, to the date that she ended it" – a twelve-year span. R&R at 32. Specifically, the Magistrate Judge held that because Plaintiff's had produced some evidence of gender animus on the part of Bolduc, she had established a "'trialworthy issue' as to whether Bolduc's behavior

during the 'locker room' incident was motivated by gender." R&R at 37. But the Magistrate Judge failed to address Defendants' argument that the "locker room incident" was so distant in time from – and otherwise unconnected to – Plaintiff's pre-January 1996 allegations that it could not be deemed an "act" contributing to a single hostile environment claim that spanned Plaintiff's entire period of employment.

The Magistrate Judge relied largely on evidence of statements and acts that occurred prior to January 1996, which cannot, as a matter of law, support a finding that the alleged hostile environment continued *beyond* January 1996 and into the limitations period. Further, to the extent that the Magistrate Judge relied on allegations spanning January 1996 into the limitations period, that reliance was misplaced. Plaintiff's allegations from that period are speculative and conclusory; outside of Plaintiff's personal knowledge; not evidence of harassment; and/or non-specific, especially with respect to dates – in short, they are an attempt to "fill the void" between January 1996 and the "locker room incident" so as to defeat the statute of limitations.

1. Pre-January 1996 Evidence

As mentioned above, the Magistrate Judge incorrectly relied primarily on evidence from the period prior to January 1996 in deciding that Plaintiff's evidence supported a continuing alleged hostile environment from January 1996 through April 26, 1999. See R&R at 36-39. In the second full paragraph on page 36 of the R&R, the Magistrate Judge listed several alleged comments by Bolduc and another supervisor, Roy Heaton, supporting Plaintiff's allegation that Bolduc exhibited gender animus. All of these alleged comments, however, were made during 1991 or 1992. See R&R at 36 (citing Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 2, 4; Defs.' Ex. B, Pl.'s Dep. Tr. at 25-29). They do not support the claim that Plaintiff experienced "continuous and concerted" harassment from January 1996 through April 26, 1999. The Magistrate Judge also incorrectly

relied on evidence that Plaintiff "was 'tested' as to her box lifting skills and that inappropriate comments were made regarding her breast size and the box lifting." R&R at 38 (citing Pl.'s Ex. 1,[2] Pl.'s Dep. Tr. at 61-62 and Pl.'s Ex. 57, Pl.'s Aff. ¶ 2). These allegations spanned 1991 and 1992. Additionally, the Magistrate Judge relied on the allegations in paragraph 16 of Plaintiff's affidavit. See R&R at 39. Plaintiff clearly averred that the allegedly unfavorable work assignments about which complains occurred in 1989 and 1990. See Pl.'s Ex. 57, Pl.'s Aff. ¶ 16. Lastly, the Magistrate Judge relied on allegations that Bolduc failed to take action when Plaintiff complained of sexual harassment by male co-workers. See R&R at 39 (citing Pl.'s Ex. 1, Pl.'s Dep. Tr. at 39-42, 50-52; Pl.'s Aff. ¶ 19). The record is clear, however, the Plaintiff's complaints with respect to Pat Domenicone occurred prior to 1991. See Pl.'s Ex. 1, Pl.'s Dep. Tr. at 39-42; Defs.' Stmt. ¶ 18. And it is further undisputed that her complaints with respect to Kala occurred in 1995. See Pl.'s Ex. 1, Pl.'s Dep. Tr. at 50-52; Pl.'s Aff. ¶ 19; Defs.' Stmt. ¶¶ 33, 35. None of this evidence supports a continuing violation after January 1996 and into the limitations period.

2. Schiano's Testimony

The Magistrate Judge also incorrectly placed great weight on the deposition testimony of Kenneth Schiano. Most importantly, ***Plaintiff was not present*** during the alleged incident, described by Schiano, where Bolduc criticized another female supervisee about her painting method and allegedly stated that "these girls are nothing but pains in the ass." See R&R at 37 (citing Pl.'s Ex. 3, Schiano Dep. Tr. at 44). While these alleged actions and comments might support the inference that Bolduc exhibited gender animus generally, they simply cannot, as a matter of law, support Plaintiff's claim that ***she*** was subject to a hostile environment during the

---

[2] The R&R cited to Pl.'s Ex. 2, but should have cited to Pl.'s Ex. 1, the transcript of her deposition testimony.

period in question. Plaintiff does not even allege that she had personal knowledge of Bolduc's alleged comments, described by Schiano, at or after the time they occurred.[3] In sum, Schiano's testimony has virtually nothing to do with the alleged hostile environment ***experienced by Plaintiff***. The Magistrate Judge's reliance on such comments in upholding Plaintiff's continuing violation/hostile environment claim was therefore incorrect.

3. Post-January 1996 Allegations

The Magistrate Judge also incorrectly relied on a number of allegations post-dating January 1996, despite Defendants' detailed arguments in their reply memorandum as to why such allegations could not be credited for the purposes of summary judgment. It is well-established that affidavit allegations must be based on personal knowledge, rather than speculation or conjecture. See Fed. R. Civ. P. 56(e); Slowiak v. Land O'Lakes, 987 F.2d 1293, 1295 (7th Cir. 1993); Rayl v. Decision One Mortgage Co., 2003 U.S. Dist. LEXIS 14556, at *14-17 (S.D. Ind. Aug. 19, 2003). Most of Plaintiff's allegations in her affidavit fall short in this respect. Further, several of the allegations relied upon by the Magistrate Judge, even if properly credited, constitute evidence only of Plaintiff's objection to Bolduc's assignments and management style, rather than evidence of actionable harassment.

Defendants discussed Plaintiff's various allegations in great detail in both their initial memorandum in support of summary judgment and their subsequent reply memorandum. See Defs.' First Mem. at 18-25; Defs.' Reply Mem. at 3-13, 21-24. Defendants will not rehash that entire discussion here. However, Defendants will address those post-January 1996 allegations specifically cited in the Magistrate Judge's R&R which allegedly support the finding that there

[3] It is worth noting that Schiano's testimony was taken in connection with another case altogether, Stamp v. Southern Union Co. et al., C.A. No. 04-4592, currently pending in Rhode Island Superior Court.

was evidence of a hostile work environment continuing into the limitations period. Each is addressed seriatim.

(a) Allegation: "Bolduc belittled [Plaintiff's] qualifications by asking her in front of male coworkers if she knew what a wrench or Phillips head screwdriver was." R&R at 38-39.

As an initial matter, this allegation cannot be deemed an act of harassment that materially altered the terms and conditions of Plaintiff's employment, especially since Plaintiff worked exclusively with Porter after 1995 and had no problem with him. See Defs.' Stmt. ¶ 26. Thus, even if Plaintiff perceived Bolduc's alleged instructions to be "belittling," they had no material affect on the way her sole co-worker treated her. Moreover, Plaintiff alleges that this alleged conduct lasted only "until Joseph Ianiello's retirement in 1998." See Pl.'s Ex. 57, Pl.'s Aff. ¶ 3. Ianiello retired on June 30, 1998. See Exhibit A, attached. Thus, this allegation cannot support Plaintiff's theory that the alleged harassment was "continuous and concerted" into the limitations period, i.e., through April 26, 1999. As such, it does not create a triable issue of fact with respect to Plaintiff's hostile environment claim.

(b) Allegation: "Plaintiff further asserts several instances of harsher treatment or more stringent work requirements than her male counterparts." R&R at 39.

(i) Bolduc allegedly gave Plaintiff a personnel manual and told her she needed to study it. See Pl.'s Ex. 1, Pl.'s Dep. Tr. at 87-88; Pl.'s Ex. 57, Pl.'s Aff. ¶ 24.

Plaintiff alleges that Bolduc gave her the manual and told her to study it because there would be a test. See Pl.'s Ex. 1, Pl.'s Dep. Tr. at 87:20 – 88:12. Plaintiff does not allege that she was *actually tested.* Nor does Plaintiff allege that (1) other women were told to study the policy or that there would be a test or (2) no men were told to study the policy. Although Plaintiff alleges that Bolduc did not give the manual to anyone else, she has absolutely no personal knowledge that her assertion is, in fact, true. In short, Plaintiff has adduced evidence that her

supervisor gave her a personnel manual and told her to study the policies. In the absence of any other allegations of actual testing or further badgering on the part of Bolduc, this is not evidence of actionable harassment.

(ii) Bolduc allegedly reprimanded Plaintiff on one occasion (without further consequence) for admittedly "joking and laughing" with the night crew. See Pl.'s Ex. 1, Pl.'s Dep. Tr. at 91-92.

First, as discussed in Defendants' First Memorandum at 19-20 and their Reply Memorandum at 5-6, Bolduc's *single* reprimand of Plaintiff for admittedly "joking and laughing" on the job cannot, as a matter of law, support her hostile environment claim. Plaintiff does not allege that this incident had any repercussions whatsoever in terms of discipline or other tangible changes in her working environment. Plaintiff admitted to joking and laughing while on the job; Bolduc cannot be deemed to have harassed her for directing her to stop. Nor does Plaintiff's allegation that Bolduc did not reprimand Porter for engaging in similar behavior change the analysis. Under no conception of Title VII can Plaintiff point to a *lack of managerial action with respect to another employee* as "an act contributing to" the hostile environment allegedly *experienced by Plaintiff*.[4] Plaintiff identifies – and Defendants are aware of – no case adopting such an expansive view of the type of "act" that can contribute to a hostile environment claim. Thus, this allegation presents no triable issue of fact to defeat summary judgment.

[4] "[I]nadequate . . . discipline of an employee who is guilty of sexual harassment is not independently actionable under Title VII." Ahart v. Host Marriott Corp., 1996 U.S. Dist. LEXIS 7335, at*12 (S.D. Ala. May 24, 1996) (citing Bedford v. Septa, 867 F. Supp. 288, 297 n.10 (E.D. Pa. 1994)). It therefore follows that alleged inadequate discipline of a *non*-harassing employee – here, Porter – for alleged infractions altogether unrelated to Plaintiff, cannot constitute support for a harassment claim.

(iii) Bolduc allegedly reprimanded Plaintiff for improperly parking her car in the garage during an executives meeting. See Pl.'s Ex. 2, Pl.'s Dep. Tr. at 103-04.

As discussed in Defendants' Reply Memorandum at 10-11, Plaintiff testified that she "sometimes" parked in the garage when she was unable to get a spot on the street, see Pl.'s Ex. 1, Pl.'s Dep. at 103:17-20, and that on *one occasion*, during a meeting of company executives, Bolduc reprimanded her for doing so. Id. at 103:24 – 104:2. Plaintiff does not allege that she was allowed to park in the garage. Plaintiff insinuates that men's cars were in the garage that night, but provides no supporting evidence. Plaintiff also provides no evidence that Bolduc did not, in fact, reprimand others whose cars were allegedly in the garage that night. Again, Plaintiff's assertion is dependent on the existence of facts outside of her personal knowledge. In short, this allegation is utterly unsupported by evidence and otherwise does not constitute evidence of actionable harassment.

(iv) Bolduc would allegedly require Plaintiff to report directly to him when she would be absent, while co-worker Porter would relay his absences through Plaintiff. See Pl.'s Ex. 57, Pl.'s Aff. ¶ 5.[5]

Bolduc's alleged requirement that Plaintiff tell him directly when she would be absent cannot possibly be deemed evidence of actionable harassment. Under no circumstances could such a requirement have contributed to a hostile environment that altered the terms and conditions of Plaintiff's employment. Plaintiff specifically averred that she had numerous absences, see Pl.'s Ex. 57, Pl.'s Aff. ¶ 11, and she does not allege that Bolduc harassed her regarding those absences or when she would call to report them. In short, this allegation provides no support whatsoever for Plaintiff's hostile environment claim.

---

[5] In paragraph 5 of her affidavit, Plaintiff also alleges that Porter would improperly record time as worked when, in fact, Porter was absent and Plaintiff had filled in for him. First, this allegation contradicts Plaintiff's clear testimony that she had no problem with Porter while they worked together. See Defs.' Stmt. ¶ 26. Second, Porter's alleged malfeasance, in any event, is not evidence of harassment on the part of Bolduc.

(v) Plaintiff alleges that Bolduc subjected her to arbitrary time limits on her work, inspections of her work areas, and repeatedly snuck up behind her. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 6-8).

Plaintiff's allegations in paragraphs 6 through 8 of her affidavit boil down to (1) Bolduc would often ask her what job she was doing; (2) Bolduc would assign her tasks to be completed in a certain amount of time; (3) Bolduc would complain or reprimand Plaintiff when she took longer than the designated amount of time; (4) Bolduc would check Plaintiff's assigned areas and reprimand her if something was wrong. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 6-8.[6] Allegations of stricter scrutiny, in the absence of actual sexual harassment, are insufficient as a matter of law to establish a hostile work environment. See Defs.' Reply Mem. at 18-20 (citing Lewis v. Potter, 114 Fed. Appx. 262, 264 (8th Cir. 2004); Osier v. Broome County, 47 F. Supp. 2d 311, 323-24 (N.D.N.Y. 1999); and Rayl, 2003 U.S. Dist. LEXIS 14556, at *14-17).

Plaintiff attempts to legitimize her claim by alleging that she "never saw" or "never witnessed" Bolduc similarly scrutinizing the work of male employees. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 6-8. Yet, Bolduc supervised at least ten employees at any given time, most of whom worked completely outside of Plaintiff's presence. Plaintiff has no personal knowledge – and certainly has not adduced any other evidence – that male employees were not similarly scrutinized. See Dudley v. Wal-Mart Stores, Inc., 931 F. Supp. 773, 813-16 (M.D. Ala. 1996) (granting employer summary judgment on race-based hostile environment claim where supervisor spent time in other departments and plaintiff did "not know how [supervisor] treated

[6] Although Plaintiff alleges that she was "reprimand[ed]" by Bolduc, she does not allege that she was every formally disciplined or censured in a way that affected her day-to-day employment. Additionally, Plaintiff's allegation that Bolduc "would sneak up behind me" is a vague and loaded assertion that carries no import for summary judgment purposes given that Plaintiff does not allege that Bolduc ever physically touched or threatened her, and testified unequivocally that Bolduc never said anything to her that was sexually suggestive or vulgar. See Pl.'s Ex. 1, Pl.'s Dep. at 62:9-12. The mere alleged fact that Plaintiff may not have seen Bolduc approach on an ambiguous number of occasions does not support Plaintiff's hostile environment claim.

employees in other areas of the store"). Plaintiff's assertions of stricter scrutiny consist, simply, of pure conjecture, and are therefore insufficient to defeat summary judgment.

(vi) Plaintiff's alleges that Bolduc would reprimand her for not having completed tasks that had been assigned to her male co-workers or for problems allegedly caused by others. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 10-12.

Plaintiff's allegations consist of two basic complaints: (1) that Bolduc assigned her tasks that she believed were Porter's responsibility and (2) that Bolduc reprimanded her for problems that she believed were attributable to others. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 10-12. Again, Plaintiff does not allege that these alleged reprimands resulted in any formal discipline or material change in her day-to-day employment. And Plaintiff does not allege that the assigned tasks were unreasonable or outside of her job description. At best, Plaintiff has shown that she disagreed with Bolduc over her job responsibilities and assignments. Such disagreement is insufficient to defeat summary judgment. See Bishop v. Bell Atl. Corp., 299 F.3d 53, 59 (1st Cir. 2002) (mere fact that an employee is displeased by an employer's act has no legal effect).

(vii) Plaintiff alleges that Bolduc gave her more difficult and/or less desirable tasks than her male co-workers. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 14.

Plaintiff provides no evidence, only conclusory affidavit allegations, to support this contention. The only detail Plaintiff relays is that she had to climb a ladder to clean a fixture, while Porter did not. See id. Plaintiff has no evidence beyond her own say-so that male employees were never assigned unfavorable tasks. Considering that males were supervised by Bolduc in several locations outside of Plaintiff's presence, she necessarily lacks personal knowledge required to allege credibly that she consistently received worse tasks than males co-workers. Importantly, Plaintiff does not allege that the assigned tasks were unreasonable or outside of her job description. Simply put, this allegation is insufficient to defeat summary judgment. Cowan v. Prudential Ins. Co. of Am., 141 F.3d 751, 759 (7th Cir. 1998) (hostile

environment claim failed where plaintiff alleged that men were treated better than females did not adequately support her allegations with specificity); Worlds v. Flashfold Carton, Inc., 1999 U.S. Dist. LEXIS 7048, at *28 (N.D. Ind. Apr. 2, 1999) (plaintiff could not establish race-based hostile environment claim by alleging that "minority employees were required to work on the more difficult machines, were subject to harsher criticism and more scrutiny from [the supervisor], and were required to do menial jobs during down times").

(c) Allegation: "Plaintiff identified several instances where she alleges Bolduc did not effectively address her complaints of sexually harassing behavior by her male coworkers." R&R at 39 (citing Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 21-22).

Plaintiff alleges the existence of calendars with "naked women" in the men's locker room at the Weybosset St. facility and at a couple of locations at Dexter St. where Plaintiff occasionally filled in. See Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 21-22. Plaintiff's opposition to summary judgment was the first time that Defendants were apprised of this particular allegation, despite Plaintiff's ample opportunity to lodge it at her deposition. Plaintiff's failure to bring these allegations to light deprived Defendant of any chance to investigate their veracity. Accordingly, these allegations should not be considered in determining this motion. See Gwen v. Regional Transit Auth., 7 Fed. Appx. 496, 501 (6th Cir. 2001) (district court properly declined to consider incidents of harassment raised for the first time in opposition to summary judgment).

Even if these allegations are considered, they do not constitute evidence of "continuous and concerted" harassment continuing into the limitations period. With respect to her Dexter St.-related allegations, see Pl.'s Ex. 57, Pl.'s Aff. ¶ 22, Plaintiff testified that she was never assigned to Dexter St., but would occasionally "fill in." See Pl.'s Ex. 1, Pl.'s Dep. at 19:11-21. Plaintiff provides no evidence that she was subjected to allegedly inappropriate calendars on a repeated or

consistent basis. Thus, even if true, her allegations cannot establish the repeated and pervasive behavior necessary to support a hostile environment.

With respect to her Weybosset St.-related allegations, Plaintiff does not allege that any males ever exposed themselves to her or otherwise harassed her. The mere allegation that some wore towels or zipped their pants (in a locker room, no less) is simply not credible evidence of a hostile work environment. Further, Plaintiff's allegations are confusing. She alleges that she could see a "calendar with naked women" because the door to the locker room was usually open. See id. ¶ 21. Yet, in the next breath, Plaintiff alleges that she "observed this" because she had to "clean the locker room." Id. It is difficult to imagine why Plaintiff would allege that she could see the allegedly offensive calendar through an open door if she had to be physically present inside the locker room to clean it. The obvious answer is that this allegation is just another conclusory allegation without factual support meant to stave off summary judgment on the hostile environment claim. In any event, similar allegations have been deemed insufficient to avoid summary judgment. See Osier v. Broome County, 47 F. Supp. at 323-24 (allegations that, inter alia, plaintiff was required to use a bathroom also used by numerous other males and plaintiff's supervisor entered the bathroom while plaintiff was using it insufficient to establish hostile environment).

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court REJECT the Magistrate Judge's Report & Recommendation with respect to Count I (hostile work environment), and GRANT Defendants' motion for summary judgment with respect to Count I.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
/s/ Matthew J. Frankel______
Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: January 17, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a true and accurate copy of the within Defendants' Memorandum in Support of Objection to Report and Recommendation on Motion for Summary Judgment to the following persons this 17th day of January, 2007.

Via Regular Mail, Postage Prepaid

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Via Hand Delivery

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

/s/ Neal J. McNamara

# Exhibit A

ANNIELLO, JOSEPH, A. 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 231-[illegible]

| DATE | HOME ADDRESS |
|---|---|
| 7/11/76 | 4 Vale Street, Providence, RI 02908 |
| 7/18/77 | 58 Atlantic Blvd., No. Providence, R.I. 02911 |

DATE BORN 6/12/31
CITIZEN Yes 1st PAPERS NO.
ELIGIBLE RET. PLAN: DEC. 31, 19
RET. PLAN NO.
NORMAL RET.
GROUP INS. NO.

| YEAR | AMOUNT |
|---|---|
| 1976 | 5,855 |
| 1977 | 14,628. |
| 1978 | 17,62[illegible] |
| 1979 | 19,13[illegible] |
| 1980 | 12,85[illegible] |
| 1981 | 22,089. |
| 1982 | 25,347. |
| 1983 | 27,89[illegible] |
| 1984 | 27,78[illegible] |
| 1985 | 30,756 |
| 1986 | 33,344 |
| 1987 | 37,08[illegible] |

MILITARY SERVICE RECORD Army 1952-1954 - Honorable

## EMPLOYMENT RECORD

| ENTERED | ENT. NO. | LEFT | SEP. NO. | R. | L.O. | D. | REASON |
|---|---|---|---|---|---|---|---|
| 7/11/76 | 4505 | 6-30-98 | 4954 | | | | Normal Retirement Under PGC Bargaining Pension Plan |

## OCCUPATIONAL CLASSIFICATION RECORD

| DATE | DEPT. | OCCUPATION | CODE | RATE | AUTH. NO. | SEN. DATE |
|---|---|---|---|---|---|---|
| 7/11/76 | Bldg. | Watchman & Cleaner Ldr. | TB2L | 5.165 | | |
| 1/9/77 | " | " " " | B2L | 5.21 | 10,924 | 7/11/76 |
| 1-21-77 | " | " " " | " | 5.73 | 10,941 | " |
| 7/10/77 | " | " " " | " | 5.795 | 11,050 | " |
| 1/8/78 | " | " " " | " | 5.84 | 11,210 | " |
| 1/21/78 | " | " " " | " | 6.365 | 11,222 | " |
| 1/21/79 | " | " " " | " | 6.94 | 11,539 | " |
| 6/1/80 | " | " " " | " | 7.62 | 11,869 | " |
| 1/21/81 | " | " " " | " | 8.36 | 12,042 | " |
| 2/8/81 | " | Building Maintenance | B3 | 8.36 | 12,068 | " |
| 7/5/81 | " | " " | " | 9.00 | 12,299 | " |
| 1/21/82 | " | " " | " | 9.855 | 25,910 | " |
| 1/21/83 | " | " " | " | 10.62 | 26,516 | " |
| 1/21/84 | " | " " | " | 11.445 | 13,683 | " |
| 1/21/85 | " | " " | " | 12.305 | 14,004 | " |
| 1/21/86 | " | " " | " | 13.04 | 14,339 | " |
| 1/21/87 | " | " " | " | 13.82 | 29,379 | " |
| 1-21-88 | " | " " | " | 14.58 | 29,845 | " |

JUL.14.2006 08:55 #1184 P.004 /005