UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA, Plaintiff | : | |
| v. | : | C.A. No. 04-310S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' REPLY MEMORANDUM**
**TO PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO**
**REPORT & RECOMMENDATION ON SUMMARY JUDGMENT**

Defendants Southern Union Co. and New England Gas Co. (collectively, "Defendants") submit this memorandum in reply to Plaintiff's Memorandum in Response to Defendants' Objection to Report & Recommendation on Summary Judgment (Doc. No. 121, filed February 1, 2007) ("Pl.'s Resp."). Defendants incorporate into this memorandum the arguments raised in (a) their initial Memorandum in Support of Motion for Summary Judgment (Doc. No. 109, filed July 21, 2006); (b) their Reply Memorandum to Plaintiff's Objection to Motion for Summary Judgment (Doc. No. 118, filed Sept. 15, 2006) ("Defs.' Reply Mem."); and (c) their initial Memorandum in Support of Objection to Report and Recommendation on Summary Judgment (Doc. No. 120, filed Jan. 17, 2007) ("Defs.' Obj."). Defendants have tried, to the extent possible, to limit repetition of points made in previous filings. Therefore, Defendants' do not address each and every argument made in Plaintiff's Response, since prior filings have fully addressed all such arguments.

As a primary matter, Plaintiff does not dispute Defendants' argument that the absence of credible allegations of "continuing and concerted" harassment between 1996 and the limitations period would, as a matter of law, prevent application of the continuing violation doctrine in this

case. See Defendants' Memorandum in Support of Objection to Report and Recommendation on Summary Judgment (Doc. No. 120, filed January 17, 2007) ("Defs.' Obj."), at 6. Plaintiff simply argues that the record evidence does not support Defendants' legal position, not that that legal position is incorrect. See Pl.'s Resp. at 26 ("What Defendants appear to argue is that there was a 'break' between 1996 and 1999 incidents that would work to keep the pre-1996 incidents from being linked to the post-April, 1999 episodes such as to create a 'continuing violation' throughout Plaintiff's employment. We believe that this position is insupportable based upon the evidence . . . .").

Plaintiff then proceeds to use hyperbole, distortions, and speculation – but certainly not evidence – to support her argument that a continuing hostile environment existed from January 1996 into the limitations period. Her hope is that her strident tone and number of allegations – no matter how specious – will cause the Court simply to throw up its hands and grant her a trial covering all twelve years of her employment.

Yet, Plaintiff's allegations between 1996 and the limitations period cannot withstand even mild scrutiny. Plaintiff has, perhaps, adduced evidence that she disliked her supervisor, Ed Bolduc, and disagreed with him about her assignments and areas of responsibility. She has, perhaps, adduced evidence that Bolduc criticized her occasionally when he was displeased with her work or believed she had violated policy. Plaintiff has also, perhaps, adduced evidence that she believed other employees should have been disciplined more harshly than they were for various alleged transgressions.

But she has not, as she must, adduced evidence that she was subjected to continuous and concerted harassment on the part of Bolduc from January 1996 through the limitations period. For all of her allegations that Bolduc "scolded" and "reprimanded" her, not once does Plaintiff

explain *what* Bolduc said to take his alleged comments outside the realm of common supervisory criticism and into the realm of actionable harassment. Nor does she allege anywhere on the record that such "reprimands" ever resulted in a tangible change in the conditions of employment, such as formal discipline or a reduction in privileges or status. As to her claims of unfavorable or unsafe assignments, Plaintiff provides only conclusory allegations, but no evidence whatsoever to support those allegations. The Court has no evidence before it regarding *how* or *why* such assignments were unfavorable or unsafe so as to amount to actionable harassment, and Plaintiff makes no allegation that such assignments were outside of her job description or otherwise unreasonable. And even if her unsupported assertions are assumed to be true, Plaintiff alleges only *one instance* in which she was assigned a task that she alleges was unsafe. In the absence of any further evidence of alleged harassment, her claim of a continuing violation from 1996 through the limitations period fails.

On pages 27 and 28 of her Memorandum in Response (Doc. No. 121), Plaintiff lists numerous allegations that, she asserts, are within her personal knowledge and create a triable issue as to the existence of a hostile environment during the period from January 1996 through April 26, 1999. Yet, as Defendants have explained in great detail in their prior filings, the *evidence* underlying these allegations – once stripped of impermissible speculation and instances of legitimate supervisor conduct – falls short of establishing the existence of a hostile environment as a matter of law. Defendants address each sentence containing a factual allegation, allegedly within Plaintiff's personal knowledge, seriatim.[1]

---

[1] Here, Defendants address only those allegations on which Plaintiff seizes in her Memorandum in Response to argue that she had "personal knowledge" of facts that would support a continuing violation from 1996 through the limitations period. Defendants have previously dealt with virtually all allegations in Plaintiff's affidavit and deposition supporting her hostile environment claim. See generally Defs.' Reply Mem.

- Allegation: "Plaintiff could certainly know from her personal knowledge that Bolduc permitted Plaintiff's male co-worker to get away with leaving his work undone. As outlined in her Affidavit, her knowledge was not based only on the fact that she had not seen that co-worker being reprimanded – but also on the fact that she herself was ordered by Bolduc to do that work which the male co-worker had been assigned but left undone, and/or that Bolduc scolded her because the work had been left undone, even though he knew or should have known that it was the male co-workers' responsibility." Pl.'s Resp. at 27 (citing Pl.'s Ex. 57, Pl.'s Aff. ¶¶ 8-11).

Defendants addressed this allegation in their initial memorandum objecting to the Report & Recommendation ("R&R"). See Defs.' Obj. at 15. Beyond the arguments made there, Plaintiff provides no evidence with respect to *what* Bolduc actually said when reprimanding her, thus leaving the Court – and Defendants – to speculate as to the severity and nature of such reprimands. And there is no record evidence, only Plaintiff's conclusory allegations, that Bolduc "knew or should have known" that he was blaming her for problems caused by others, rather than basing his actions on an honest belief that she had not completed her assignments properly.

In addition to these obvious evidentiary deficiencies, and as noted previously, Plaintiff does not allege that these alleged reprimands resulted in any formal discipline or material change in her day-to-day employment. And Plaintiff does not allege that the assigned tasks were unreasonable or outside of her job description. At best, Plaintiff has shown that she disagreed with Bolduc over her job responsibilities and assignments, and that she took umbrage when he allegedly criticized her. Such disagreement is insufficient to defeat summary judgment. See Bishop v. Bell Atl. Corp., 299 F.3d 53, 59 (1st Cir. 2002) (mere fact that an employee is displeased by an employer's act has no legal effect); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("[C]ourts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decisionmaking process.").

- Allegation: "Plaintiff could also be in the position to directly observe that her male co-worker was being assigned less difficult tasks." Pl.'s Resp. at 27 (citing Pl.'s Ex. 57, Pl.'s Aff. ¶ 14).

As discussed in prior filings, see Defs.' Obj. at 16-17, Plaintiff provides no evidence, only conclusory affidavit allegations, to support this contention. Plaintiff cites paragraph 14 of her affidavit, which explains only that Plaintiff had to climb a ladder to clean a fixture, while Porter did not. Simply put, this one allegation does not offer credible support the notion that Bolduc "continuous[ly] and concerted[ly]" assigned her more difficult tasks. Further, Plaintiff has no evidence beyond her own say-so that male employees were not assigned unfavorable tasks elsewhere in the facility. Nor, again, does she allege that the tasks Bolduc assigned to her were unreasonable or outside of her job description. Simply put, these allegations are insufficient to defeat summary judgment. See Cowan v. Prudential Ins. Co. of Am., 141 F.3d 751, 759 (7th Cir. 1998); Worlds v. Flashfold Carton, Inc., 1999 U.S. Dist. LEXIS 7048, at *28 (N.D. Ind. Apr. 2, 1999).

- Allegation: "Plaintiff could also directly observe that she had complained to Mr. Bolduc when Joseph Ianiello put in a disappearance when Plaintiff and Ianiello were both assigned to a particular task – but that Bolduc did nothing about it." Pl.'s Resp. at 27 (citing Pl.'s Ex. 1, Pl.'s Dep. Tr. at 34:12-24).

First, Bolduc's treatment of Ianiello is utterly irrelevant to whether ***Plaintiff*** experienced a hostile work environment. See Defs.' Obj. at 13. Second, Plaintiff testified that she complained to Bolduc about Ianiello only "about three or four times" over a several year period between 1991 and 1995. See Pl.'s Ex. 1, Pl.'s Dep. at 36:20 – 37:20. Plaintiff further testified that at least two of these complaints were based upon Ianiello's use of vulgar language, rather than his failure to report to work assignments with Plaintiff. See id. at 35:15-20. Thus, at best, Plaintiff's evidence shows that Ianiello shirked his duties on two occasions, without consequence, over a five-year period. This meager showing cannot be construed to support

Plaintiff's allegation that was subjected to stricter scrutiny to the point of experiencing a hostile work environment.

Third, and most importantly for the present discussion, it is undisputed that Plaintiff's complaints about Ianiello occurred before or during 1995, and that by 1996, she was no longer working alongside him. See Defendants' Statement of Undisputed Facts (Doc. No. 110, filed on July 21, 2006) ("Defs.' Stmt."), ¶¶ 28, 36; Plaintiff's Statement of Disputed Facts (Doc. No. 115, filed on Aug. 18, 2006) ("Pl.'s Stmt."), ¶¶ 28, 36 (admitting that Porter was her only co-worker after Kala departed in January 1996). Thus, even if Bolduc's alleged treatment of Ianiello could constitute evidence supporting Plaintiff's meta hostile environment claim, it is not evidence supporting the *continuation* of that hostile environment from January 1996 into the limitations period. Thus, Plaintiff's allegations of Bolduc's lack of action regarding Ianiello do not create any triable issue with respect to her hostile environment claim.

- Allegation: "Plaintiff could directly observe that she was being given tasks to do alone that two men were normally assigned to – even where safety considerations had dictated that two men be assigned to the task, as in the case of the vent-cleaning job." Pl.'s Resp. at 27 (citing Pl.'s Ex. 1, Pl.'s Dep. Tr. at 44:5-20, 105:7 – 106:8).

Taken in context, Plaintiff's own testimony completely belies the assertion that these allegations support her hostile environment claim. Plaintiff testified that on *one occasion* – a Saturday in 1998 – she was given the opportunity to come in to work in lieu of an alleged missed overtime shift. See Pl.'s Ex. 1, Pl.'s Dep. Tr. at 44:5-20, 105:7 – 106:8. Plaintiff worked on the alleged two-person jobs that day alone because it was a Saturday and *no one else was there*. See id. The tasks were within Plaintiff's job description, and she provides no evidence other than hearsay and uninformed speculation that such jobs were unsafe for one person. To hold this

allegation up as an example of harassing conduct is to stretch the hostile work environment doctrine to the point of meaninglessness.

- Allegation: "Plaintiff was also in the position to directly observe that her male co-worker was going unreprimanded when reporting to work visibly intoxicated (Ex. 57, ¶13) – while Mr. Bolduc "white gloved" her work area." Pl.'s Resp. at 27.

First, Plaintiff provides no citation to record evidence for the assertion that Bolduc "white gloved" her work area. Nor is there any such evidence in the record, only Plaintiff's conclusory allegations of stricter scrutiny. See Defs.' Reply Mem. at 7-8.

Further, Porter's alleged alcohol problem – and Bolduc's alleged response to it – are completely immaterial to the issues before the Court. Plaintiff had absolutely no problem with Porter while in Defendants' employ. See Defs.' Stmt. ¶ 26; Pl.'s Stmt. ¶ 26. Regardless of what actions Defendants did or did not take with respect to Porter, Plaintiff cannot point to Defendants' treatment of Porter as evidence that ***Plaintiff*** was subjected to a hostile environment.[2] Thus, Plaintiff's allegations with respect to Porter do not create a triable issue of fact relating to her hostile environment claim.

- Allegation: "With respect to the incident about using the parking garage, Plaintiff's deposition firmly suggests that the other men's cars were in the garage – a fact that she could have seen for herself when she was getting her own car out." Pl.'s Resp. at 27-28 (citing Pl.'s Ex. 57, Pl.'s Dep. Tr. at 103:24 – 104:2).

Defendants addressed this allegation in detail in their initial memorandum objection to the R&R. See Defs.' Obj. at 14. The bottom line is that Plaintiff insinuates that men's cars were in the garage that night, but provides no supporting evidence. She does not deny this lack of evidence, but instead argues that her deposition testimony "*suggests* that other men's cars were in the garage" and that she "*could* have seen [them] for herself" (emphasis added). Pl.'s Resp. at

---

[2] In any event, Plaintiff's own exhibits establish that Defendants – including Bolduc personally – did, in fact, take action with respect to Porter's work-related problems. See Pl.'s Exs. 43-45.

28. Suggestions and possibilities, however, are not substitutes for actual evidence. Plaintiff also provides no evidence that Bolduc did not, in fact, reprimand others whose cars were allegedly in the garage that night. Nor does she allege that she was, in fact, allowed to park in the garage, but was reprimanded anyway. In short, this allegation is utterly unsupported by evidence and therefore cannot be credited for the purposes of summary judgment.

- Allegation: "During a deposition, Mr. Bolduc admitted to not taking immediate action when he repeatedly discovered Plaintiff's male co-workers at Dexter Street missing from their work sites." Pl.'s Resp. at 28 (citing Pl.'s Ex. 6, Bolduc Dep. Tr. at 91:21 – 98:24).

This allegation is false and a flagrant distortion of the record evidence. As discussed in prior filings, Bolduc plainly testified that he did, in fact, call for a meeting involving the union steward and issue a verbal warning. See id. at 90:21 – 91:6, 91:15-17, 97:20 – 98:1 ("I disciplined them based upon that infraction, leaving the worksite early and extending coffee breaks, yes."). Whether this discipline was immediate is immaterial, especially considering that Bolduc's sanction for the conduct was a formal reprimand – something the Plaintiff does not allege she ever received from Bolduc. This is yet another example of how Plaintiff is attempting – without any basis in fact or law – to build a hostile environment out of allegations of insufficient discipline of *other employees* for alleged transgressions that had *nothing to do with her*. Thus, this allegation does nothing to support her claim.

- Allegation: "Mr. Bolduc also admitted to permitting Plaintiff's male co-worker to take cigarette breaks whenever he liked." Pl.'s Resp. at 28 (citing Pl.'s Ex. 6, Bolduc Dep. Tr. at 174:18 – 177:16).

This allegation, too, is immaterial to the issues before the Court. Even if true, it provides no support for Plaintiff's hostile environment claim. Bolduc testified clearly that "there was no written policy as to how many times you could have a cigarette. So long as it was at the discretion of the supervisor that it wasn't being abused . . . ." Pl.'s Ex. 6, Bolduc Dep. Tr. at

176:21 – 177:3. Plaintiff has no evidence contradicting Bolduc's statement of the operative policy. Further, Plaintiff offers no evidence that Porter did, in fact, abuse his cigarette breaks. More importantly, Plaintiff does not allege, or put forth any evidence, that *she* was denied cigarette breaks that Porter received. In short, the alleged fact that Porter "took cigarette breaks whenever he liked" does nothing to support Plaintiff's hostile environment claim.

- Allegation: "This leniency certainly stands in sharp contrast to that given to Plaintiff and her female co-worker. In their case, as we have described, Mr. Bolduc's zeal for policing breaks and working hours caused him to launch an expeditionary force into the women's locker room." Pl.'s Resp. (citing nothing).

Once again, Plaintiff resorts to distortions and gross hyberole – but not evidence – to support her claim. Plaintiff has put forth *no evidence of any instance* – beside for the so-called "locker room incident" in August 1999 – where Bolduc scrutinized her breaks or working hours. A close review of Plaintiff's affidavit, deposition transcript, and legal submissions makes clear that not once has she presented any evidence that her break times were unfairly policed, limited, or eliminated. If anyone has exhibited zeal it is Plaintiff – for making all sort of spurious and exaggerated allegations with little or no evidentiary support.

This pattern typifies Plaintiff's opposition to summary judgment on the hostile environment count. Plaintiff attempts to assemble a small number of instances between 1996 and 1999 where she disagreed with Bolduc over assignments or the disciplining of other employees, or where Bolduc allegedly criticized her, and spin them into a triable continuing violation harassment claim. Yet, Title VII "does not guarantee a utopian workplace, or even a pleasant one," Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1162 (7th Cir. 1994), and is not a "general civility code." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). In the absence of evidence of "continuous and concerted" harassment, Plaintiff simply cannot

establish the continuation of an alleged hostile environment from January 1996 through the limitations period. Her hostile environment claim is therefore time-barred.

For these reasons, as well as those discussed in Defendants' prior summary judgment submissions, Defendants respectfully request that this Court reject the relevant portion of the Magistrate's R&R and GRANT Defendants' motion for summary judgment with respect to Count I of Plaintiff's complaint.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,
NIXON PEABODY LLP

/s/ Neal J. McNamara
/s/ Matthew J. Frankel______
Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: February 12, 2007

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a true and accurate copy of the within document to the following persons this 12th day of February, 2007.

Via Regular Mail, Postage Prepaid

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Via Hand Delivery

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

/s/ Neal J. McNamara