**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CAROL A. PETRARCA,**
**Plaintiff,**
**v.** **C.A. No. 04-310S**

**SOUTHERN UNION COMPANY,**
**NEW ENGLAND GAS CO.,**
**Defendants**

**PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO MOTION TO AMEND**

Plaintiff has moved to amend her complaint in order to add National Grid USA and Narragansett Electric Company as Defendants. As outlined in her Motion to Amend and Supporting Memorandum, said Amendment was brought about by the fact that National Grid USA had entered into an agreement with Southern Union regarding the purchase of Southern Union's New England Gas division. It also appears that Narragansett Electric, a subsidiary of National Grid USA, has taken over said New England Gas division.

Defendants Southern Union and New England Gas do not object to the amendment of the complaint to include Narragansett Electric, but object to National Grid's inclusion. Defendants assert that because National Grid has not acquired the assets of New England Gas, the complaint should not be amended to include National Grid. Based upon a review of the purchase and sale agreement between Southern Union and National Grid, we believe that Defendants' view of the situation is faulty. National Grid's responsibilities for assumed liabilities – which includes this matter – are set out at Section 2.2 of said agreement, which provides as follows:

> **Section 2.2 Assumed Liabilities.** In further consideration for the sale of the Assets and Stock, at the Closing, and subject to the other terms and conditions of this Agreement, *Buyer will satisfy Buyer's obligations under the Employment Agreement and will assume and agree to pay, perform and discharge when due, or cause the appropriate Subsidiary* to pay, perform and discharge when due, all the liabilities and obligations, of every kind or nature, of Seller or any of its Affiliates arising out of or relating to:

. . .

(v) Proceedings based on conduct, actions, inaction, facts, circumstances or conditions arising or occurring on or after the Closing Date, Proceedings described in Schedule 2.2, Proceedings arising from or related to any other Assumed Liability. . .

(Exhibit A, p. 13-14) (Emphasis added.)

"Buyer" for purposes of this Agreement is defined as "National Grid USA." (Exhibit A, p. 1) Under the express terms of this Agreement, then, if a judgment were to issue for the Plaintiff in this matter, National Grid must satisfy this judgment, or cause Narragansett or even another subsidiary to do so. Accordingly, National Grid retains ultimate responsibility for any judgment in this matter, regardless of the fact that it has apparently designated Narragansett to receive New England Gas' assets. Given this responsibility, it is incorrect to declare that National Grid is not a proper party in this matter.

Respectfully submitted,
Plaintiff,
By her attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
March 27, 2007
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
March 27, 2007
vbejma@smrobinsonlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of March, 2007, a true and complete copy of the foregoing was electronically filed with counsel of record for the Defendants: Neal J. McNamara, Esquire and Matthew J. Frankel, Esquire, Nixon Peabody LLP, One Citizens Plaza, Suite 500, Providence, RI 02903.

/s/ Vicki J. Bejma

# Petition of The Narragansett Electric Company and Southern Union Company for Approval of Purchase and Sale of Assets

Book 2 of 3
Purchase and Sale Agreement

March 16, 2006

Submitted to:
Rhode Island Division of Public Utilities and Carriers
Docket No.

Submitted by:

nationalgrid

Southern Union Company

# PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (this "Agreement") is made as of the 15th day of February, 2006, by and between SOUTHERN UNION COMPANY, a Delaware corporation ("Seller"), and NATIONAL GRID USA, a Delaware corporation ("Buyer"). Capitalized terms used herein shall have the meanings ascribed to them in Article I, unless otherwise provided.

**WITNESSETH:**

WHEREAS, Seller or a Subsidiary owns all of the Assets and Seller owns, directly or indirectly, all of the capital stock of each Subsidiary; and

WHEREAS, Buyer desires to purchase, and Seller desires to sell, the Assets owned by Seller and the capital stock of each Subsidiary, subject in all respects to the provisions of this Agreement.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.1 Certain Defined Terms.** For purposes of this Agreement, the following terms have the meanings specified or referred to in this Article I (such definitions to be equally applicable to both the singular and plural forms of the terms defined):

*"Affiliates" or "Affiliated Entities"* — shall have the following meaning: entities shall be deemed "Affiliated" as to each other to the extent (i) one of the entities directly or indirectly controls the other, or the direct or indirect control of one of the entities is exercised by the officers, directors, stockholders, or partners of the other entity (whether or not such persons exercise such control in their capacities as officers, directors, stockholders, or partners) or (ii) is deemed to be an Affiliate under existing statutes or regulations of the SEC.

*"Assets"* — means all of the assets, properties, rights, claims, contracts and interests of every type and description, real, personal or mixed, tangible and intangible, owned by Seller, directly or indirectly through any Subsidiary or any Affiliate of Seller, and relating primarily to the Business other than the Excluded Assets.

Without in any way limiting or expanding the foregoing, the Assets shall include all right, title and interest of Seller and its Affiliates in, to and under the following:

(a) all Real Property;

(b) all tangible personal property, including machinery, mobile and immobile equipment, furniture, furnishings, vehicles, tools, tooling, dies, stores, parts, supplies and other

| | |
|---|---|
| Seller's Meeting | 6.1(f)(iii) |
| Straddle Period | 11.6 |
| Transition Services Agreement | 6.6 |
| Transaction Taxes | 11.3 |
| Upset Date | 9.1(e) |
| WARN Act | Employee Agreement |

## ARTICLE II
## PURCHASE AND SALE

**Section 2.1 Purchase and Sale of Assets and Stock.** Upon the terms and subject to the conditions contained herein, at the Closing, Seller shall sell, transfer, assign, convey and deliver to Buyer, and Buyer shall purchase and accept delivery from Seller, all of the Assets owned directly or indirectly by Seller or any of its Affiliates, free and clear of any Encumbrances, other than Permitted Encumbrances, and all of the Stock.

**Section 2.2 Assumed Liabilities.** In further consideration for the sale of the Assets and the Stock, at the Closing, and subject to the other terms and conditions of this Agreement, Buyer will satisfy Buyer's obligations under the Employee Agreement and will assume and agree to pay, perform and discharge when due, or cause the appropriate Subsidiary to pay, perform and discharge when due, all the liabilities and obligations, of every kind or nature, of Seller or any of its Affiliates arising out of or relating to:

(a) the ownership of the Assets and the conduct or operation of the Business prior to the Closing Date, other than the Retained Liabilities;

(b) the ownership or use of the Assets by Buyer or any Subsidiary or the conduct or operation of the Business by Buyer or any Subsidiary, in each case after the Closing Date, including all liabilities, responsibilities and obligations relating to or arising from the following:

(i) performance of the Assumed Contracts included in the Assets and assigned to Buyer at Closing or retained by any Subsidiary, except that Buyer shall not assume any liabilities or obligations for (x) any breach or default by Seller or any Subsidiary under any such Contract occurring or arising prior to the Closing Date or (y) the payment of money with respect to any obligation arising under any such Contract prior to the Closing Date, except in the case of this clause (y) to the extent such obligation is reflected in the Working Capital of the Business as of the Closing Date set forth in the Closing Statement (such obligations and liabilities referred to in clauses (x) and (y), the "Retained Contract Liabilities");

(ii) customer advances, customer deposits and construction advances, unperformed service obligations, Easement relocation obligations, and engineering and construction required to complete scheduled construction, construction work in progress, and other capital expenditure projects, in each case relating to the Business and outstanding on or arising after the Closing Date;

(iii) the Assumed Environmental Liabilities;

(iv) Taxes for periods after the Closing Date to the extent Buyer or any Subsidiary is legally obligated to pay such Taxes in accordance with Article XI;

(v) Proceedings based on conduct, actions, inaction, facts, circumstances or conditions arising or occurring on or after the Closing Date, Proceedings described in Schedule 2.2, Proceedings arising from or related to any other Assumed Liability; and

(vi) the Assumed Indebtedness; and

(c) obligations and liabilities of Buyer and its Affiliates under the Employee Agreement.

The liabilities, responsibilities and obligations to be assumed by Buyer or retained by the Subsidiaries pursuant to this Section 2.2 are hereinafter collectively referred to as the "Assumed Liabilities." Subject to the other terms and conditions of this Agreement, Buyer, for itself and each of its Affiliates (including each Subsidiary upon Closing), hereby irrevocably and unconditionally waives and releases Seller from all Assumed Liabilities and all liabilities or obligations relating to the Business or the Assets to the extent arising from events or occurrences on or after the Closing Date or to the extent otherwise relating to the period after the Closing; *provided, however*, that for the avoidance of doubt, Buyer and its Affiliates shall not be deemed to have waived, and nothing in this sentence shall be deemed or interpreted in any way to limit, any right of indemnification that any Buyer Indemnitee may have in respect of any such matter pursuant to Article XII. Notwithstanding anything in this Section 2.2 to the contrary, Assumed Liabilities shall not include any liabilities, responsibilities or obligations expressly stated to be Retained Liabilities pursuant to Section 2.3.

**Section 2.3 Retained Liabilities.** Buyer shall not assume, and Seller shall retain and pay, perform and discharge when due, all of the liabilities and obligations, of every kind and nature, relating to or arising from the following (collectively, the "Retained Liabilities"):

(a) all obligations of Seller or any Subsidiary with respect to any indebtedness for money borrowed by Seller or any Subsidiary (including items due to Seller's Affiliates), other than the Assumed Indebtedness, and payment obligations arising on or after the Closing Date relating to the Business under any equipment or vehicle lease or under any line extension Contracts or similar construction arrangements, it being understood and agreed that such leases, Contracts and similar arrangements do not create indebtedness for money borrowed;

(b) Taxes for periods on or prior to the Closing Date to the extent Seller or any Subsidiary is legally obligated to pay such Taxes in accordance with Article XI;

(c) Excluded Assets and all liabilities or obligations of Seller and its Affiliates related to their businesses other than the Business, in each case whether arising before, on or after the Closing Date;

(d) the Retained Environmental Liabilities;

# Schedule 2.2
# Assumed Proceedings

I. Proceedings

| NAME OF LITIGATION OR CLAIM<br><br>RELEVANT DATE(S)<br><br>LEGAL COUNSEL | DESCRIPTION OF THE NATURE OF EACH CASE | STATUS AND DATE OF LAST ACTIVITY |
|---|---|---|
| Scott Brooks vs. NEGC<br><br>DOI:<br><br>Rice Dolan & Kershaw | **Litigation:** Underinsured motorist claim when plaintiff stopped at NEGC site. | Discovery in process. |
| Shawn and Lisa Crowley vs. NEGC<br><br>DOI: 2/9/03<br><br>Rice Dolan & Kershaw | **Litigation:** Explosion at 14 Stella Street, Providence, RI<br>Primarily property damage, minor bodily injury, emotional distress | Discovery: Sean and Lisa Crowley's depositions. NEGC has filed responses to plaintiff's interrogatories and requests for documents. |
| Robert DiDonato<br><br>DOI: 1/10/03<br><br>Rice Dolan & Kershaw | **Litigation:** Plaintiff's car hit trench causing personal injury and property damage. | Discovery in progress. |
| Amica Insurance as Subrogee for Kurt and Else Heymann<br><br>DOI: 11/3/00<br><br>Rice Dolan & Kershaw | **Litigation:** Property insurance company asserted claim for property damage it paid to Heymanns. | Heymann indemnified NEGC in Settlement Agreement and Release. Expect Heymann's lawyer to resolve issue with Amica or NEGC may initiate a third party complaint against the Heymanns to obtain a quick resolution. Formally served 1/31/06. |
| Timothy King vs. NEGC<br><br>7/27/02<br><br>Rice Dolan & Kershaw | **Litigation:** Customer/owner claims property damage caused by service tech who was responding to a leak call. | Subro property claim denied. |

| NAME OF LITIGATION OR CLAIM<br><br>RELEVANT DATE(S)<br><br>LEGAL COUNSEL | DESCRIPTION OF THE NATURE OF EACH CASE | STATUS AND DATE OF LAST ACTIVITY |
|---|---|---|
| Jessica Larsen vs. NEGC<br><br>DOI: 8/20/02<br><br>Rice Dolan & Kershaw | **Litigation:** Customer attacked by dog during service turn on by service tech. | Discovery in process. |
| Antonio and Maria Luciano<br><br>DOI: 2/7/04<br><br>Rice Dolan & Kershaw | **Claims not in Litigation:** Explosion at 196 Eldridge Street, Providence, RI<br><br>$240,000 demand includes $127,790 subro claim for property damage. | Hingham Mutual subro $240k demand letter dated 10/25/04.<br>11/23/04 letter to Counsel for Hingham denying liability. 9/15/05 update letter to AEGIS from Rice Dolan.<br>12/9/05 update letter from Rice Dolan cites "no developments". |
| Bruce Murray vs. NEGC<br><br>DOI: 10/11/01<br><br>Rice Dolan & Kershaw | **Litigation:** Customer/property owner seeks recovery for property damage to exterior door. | Settlement negotiations in progress. |
| Maria T. Rodriguez, Joaquin Albuquerque and Joaquin Albuquerque, Jr.<br><br>DOI: 2/3/04<br><br>Lourdes Morales and Destiny Morales (minor) v. NEGAS<br><br>Rice Dolan & Kershaw | **Litigation:** Explosion at Tell Street, Providence, RI<br>Relatively minor burn injuries to Maria and serious burn injuries to Joaquin Jr. (minor).<br>Property damage claim of $17K from housing authority. No suit filed.<br><br>Pre-suit demand of $30,000.<br>This suit arises out of the same incident. Plaintiffs are neighbors of the primary claimants. | Settled personal injury claim w/Maria and Joaquin Sr., claim of minor child is still pending, no demand has yet been made.<br><br>9/15/05 update letter to AEGIS from Rice Dolan.<br>Summons & Complaint dated 11/10/05: Lourdes Morales Hernandez *et al* |
| Edmund Spears vs. NEGC *et al*<br><br>DOI: 5/20/04<br><br>Rice Dolan & Kershaw | **Litigation:** Fire at 10-12 Noyes Street, Providence, RI | Free-lance electrician installing a ceiling fixture suffered burns as result of fire near old gas light pipe.<br><br>Edmund Spears deposition taken with Glen Spears' to follow in February. |

| NAME OF LITIGATION OR CLAIM<br><br>RELEVANT DATE(S)<br><br>LEGAL COUNSEL | DESCRIPTION OF THE NATURE OF EACH CASE | STATUS AND DATE OF LAST ACTIVITY |
|---|---|---|
| Employment – Lynore Horn<br><br>Holland & Knight | **Litigation:** Sexual Discrimination and harassment claim | RI Commission on Human Rights<br>Suit moved to US District Ct 04-434 |
| Employment – Carol Petrarca<br><br>Holland & Knight | **Litigation:** Sexual Discrimination and harassment claim | RI Commission on Human Rights, 3/1/00 re sexual discrimination. Complainant elected to retire instead of NEGC's terminating for cause.<br>Suit filed US District Court 04-310 |
| Employment – Christine Stamp<br><br>Holland & Knight | **Litigation:** Sexual Discrimination and retaliation/harassment claim | RI Commission on Human Rights, 1/3/03.<br>Suit filed Superior Ct 04-4592 |
| Notices of Probable Violation #05-5 | **Administrative/Agency/Environmental:** RIDPUC – Six violations alleged, totaling $60,000 in penalties. | Company has requested formal hearing on five of the six violations. |

II. Schedule 5.8 is incorporated herein by reference.