**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CAROL A. PETRARCA,**
**Plaintiff,**
**v.** **C.A. No. 04-310S**

**SOUTHERN UNION COMPANY,**
**NEW ENGLAND GAS COMPANY,**
**NATIONAL GRID USA, and**
**THE NARRAGANSETT ELECTRIC COMPANY**
**Defendants**

# PLAINTIFF'S WITNESS AND EXHIBIT LIST

In accordance with this Court's pretrial Order, Plaintiff submits the following list of witnesses and exhibits she proposes to present at trial.

## I. WITNESSES

The Plaintiff does not intend to call any expert witnesses.

Plaintiffs may call any or all of the following percipient witnesses:

1. **Carol Petrarca**: Carol Petrarca is expected to testify regarding the pattern of harassment and discriminatory treatment to which she was subjected during her employment, as well as the failure of her employers to take any action regarding said harassment and discriminatory treatment, especially with reference to her supervisor, Edward Bolduc. Ms. Petrarca is also expected to testify as to the facts surrounding her termination shortly after filing a complaint of harassment and discrimination with the Human Rights Commission, along with her female co-worker, Christine Stamp. Petrarca is also expected to testify regarding the damages that she suffered.

2. **Christine Stamp:** Ms. Stamp, a co-worker of Plaintiff's, is expected to testify regarding the pattern of harassment and discriminatory treatment to which Plaintiff was subjected, as well

as the failure of their employers to take action regarding said harassment and discriminatory treatment, particularly in reference to their supervisor, Edward Bolduc. Ms. Stamp is also expected to testify as to the “locker room” incident involving Mr. Bolduc which gave rise to Ms. Stamp and Ms. Petrarca’s filing a complaint with the Human Rights Commission. Ms. Stamp is also expected to testify regarding her own experiences of harassment and discriminatory treatment while working in the Building Maintenance Department with Plaintiff, particularly as they relate to Edward Bolduc..

**3. Lynore Horne:** Ms. Horne, a co-worker of Plaintiff’s, is expected to testify regarding the pattern of harassment and discriminatory treatment to which Plaintiff was subjected, as well as the failure of their employers to take action regarding said harassment and discriminatory treatment, particularly in reference to their supervisor, Edward Bolduc. Ms. Horne is also expected to testify regarding her own experiences of harassment and discriminatory treatment while working in the Building Maintenance Department with Plaintiff, particularly as they relate to Edward Bolduc.

**4. Kenneth Schiano:** Mr. Schiano, who was also employed in the Defendants’ Building Maintenance Department, is expected to testify regarding Bolduc’s animus towards female employees.

**5. Edward Bolduc:** Mr. Bolduc was Plaintiff’s supervisor throughout her employment. He is expected to testify regarding his actions when Plaintiff complained of sexual harassment by her male employees, as well as his own conduct towards Plaintiff.

**6. Roy Heaton:** Roy Heaton was another supervisor of Plaintiff. He is expected to testify regarding the medical examination was required to take to receive a Building Maintenance position, as well as the training she was to receive.

**7. Robert Biber:** Mr. Biber was another supervisory employee. He is expected to testify regarding the medical examination was required to take to receive a Building Maintenance position

**8. Royalynne Hourihan:** Ms. Hourihan was responsible for the Defendants' Human Resources Department. She is expected to testify regarding Plaintiff's complaints to her of sexual harassment from her male co-workers.

**9. Grant Keith:** Mr. Keith was also employed in Defendants' Human Resources Department. He is expected to testify regarding Plaintiff's complaints to him of sexual harassment from her male co-workers.

**10. Alycia Goody:** Ms. Goody was also employed by Defendants. She is expected to testify regarding Plaintiff's complaints to her of sexual harassment from her male co-workers.

**11. Richard Kala:** Mr. Kala is expected to testify regarding the actions taken by Defendants in connection with Plaintiff's complaints of sexual harassment, and also as to the requirements of the Building Maintenance position, and also disciplinary action taken against him.

**12. Maureen Morancey:** Ms. Morancey, another employee of the Defendants', is expected to testify regarding advances made to her by Mr. Kala.

**13. Robert Ferrante:** Mr. Ferrante is expected to testify as to security measures taken by Plaintiff in response to the sexual harassment.

**14. Steven Carlomostro:** Mr. Carlomostro was a witness to Plaintiff's sexual harassment.

**15. William Petrarca:** William Petrarca was a witness to the effects of the discrimination and harassment upon Plaintiff.

**16. Miriam Comeau:** Miriam Comeau is another employee of Defendants. She is expected to testify as to the fact that the room that Edward Bolduc entered in August, 1999 into had been consistently used a women's locker room.

**17. Gerald Porter:** Mr. Porter, Plaintiff's former co-worker, is expected to testify regarding Mr. Bolduc's treatment of Plaintiff.

**18. Pat Carlomostro:** Ms. Carlomostro is expected to testify as to the fact that Plaintiff attempted to contact Mr. Butler regarding her receipt of TDI payments.

**19. Henry Butler:** Mr. Butler was a supervisory employee of the Defendants'. He is expected to testify regarding the Plaintiff's termination, as well as her complaints regarding harassment, and also the treatment of other employees charged with similar types of misconduct. Mr. Butler also provided information used in responses to Plaintiff's Interrogatories.

**20. Lorraine Cipriano:** Ms. Cipriano is an employee of Defendants. She is expected to testify as to the processing of Plaintiff's sick leave and TDI claims.

**21. Joan Chaffee:** Joan Chaffee is expected to testify as to the procedures followed regarding TDI and sick leave pay benefits. Ms. Chaffee is also expected to testify regarding the provisions of LTD and pension plans offered by Defendants. Ms. Chaffee also provided information used to respond to Plaintiff's Interrogatories.

**22. Lynne Linden:** Lynne Linden is expected to testify as to the procedures followed regarding TDI and sick leave pay benefits.

**23. D'Anna Soehnge:** D'Anna Soenghe is the Defendants' Human Resources Director. She is expected to testify as to the procedures followed regarding TDI and sick leave pay benefits, as well as procedures followed in the event of overpayment of benefits to an employee, as well as procedures to be followed in cases of complaints of harassment or discrimination, and

disciplinary actions taken in regards to Richard Kala. Ms. Soenghe also provided responses to Plaintiff's interrogatories.

**24. James Dodge:** Mr. Dodge is the former President of Providence Gas. He is expected to testify regarding the manner in which discrimination and harassment claims were handled by Defendants.

**25. Robert Savage:** Mr. Savage, who served as the Union lawyer in connection with Plaintiff's grievance regarding her termination, is expected to testify as to the settlement of Plaintiff's grievance regarding her termination.

**26. Carl Saccoccia:** Mr. Saccoccia is an employee of the Defendants. He is expected to testify as to the procedures followed when he was overpaid.

**27. Keith Cotnoir:** Mr. Cotnoir, a former employee of the Defendants, is expected to testify regarding the procedures followed when he received TDI.

**28. John McHugh:** Mr. McHugh is expected to testify as to the lighter penalty that he received when charged with misconduct similar to that of the Plaintiff.

**29. Daniel Ford:** Mr. Ford is expected to testify as to the lighter penalty that he received when charged with misconduct similar to that of the Plaintiff.

**30. Kenneth Mace:** Mr. Mace is expected to testify as to the lighter penalty that he received when charged with misconduct similar to that of the Plaintiff.

**31. Dr. John Ruggiano:** Dr. Ruggiano was a treating physician for Plaintiff. He is expected to testify as to the medical and psychological impact of the acts of Defendants upon Plaintiff.

**32. Dr. Benjamin Gallo:** Dr. Gallo was a treating physician for Plaintiff. He is expected to testify as to the medical and psychological impact of the acts of Defendants upon Plaintiff.

**33. Richard Parris:** Mr. Parris is a licensed social worker. He is expected to testify as to the medical and psychological impact of the acts of Defendants upon Plaintiff.

**34. Wendy Smith:** Ms. Smith is expected to testify regarding incidents of discrimination that she experienced while working for the Defendants.

**35. Roberta Faria:** Ms. Faria is expected to testify regarding incidents of discrimination that she experienced while working for the Defendants.

**36. Brenda Shanley:** Ms. Shanley is expected to testify regarding incidents of discrimination that she experienced while working for the Defendants.

**37. Keeper of the Records, Department of Labor and Training:** The Keeper of the Records will authenticate records regarding Plaintiff, if necessary.

**38. Keeper of the Records, National Grid:** The Keeper of the Records will authenticate personnel records and company policies, if necessary.

**39. Chief Financial Officer, Southern Union:** The Chief Financial Officer of National Grid is expected to testify as to the financial condition of Southern Union.

**40. Chief Financial Officer, Narragansett Electric:** The Chief Financial Officer of Narragansett Electric is expected as to the financial condition of Narragansett Electric.

**41. Chief Financial Officer, National Grid, USA:** The Chief Financial Officer of National Grid is expected to testify as to the financial condition of National Grid.

**42. Peter Czekanski:** Peter Czekanski, Principal Analyst for National Grid, is expected to testify as to the financial condition of National Grid/Narragansett Electric.

Plaintiff reserves the right to add additional witnesses for purposes of rebuttal.

## II. EXHIBITS

Plaintiff contemplates offering the following exhibits at trial. Plaintiff reserves the right to present additional exhibits in rebuttal.

1. Carol Petrarca's employment history

   *This document reflects Plaintiff's employment history, including positions held and wage information*

2. Memo re Pat Domenicone, written by Bolduc

   *This document evidences Plaintiff's harassment by her co-worker*

3. R.I. Rehabilation Institute Report

4. 7/3/91 memo from R. Biber re results of examination

5. 10/11/91 memo from Heaton re extension of probation

   *Exhibits 3-5 are offered in support of the claim that Plaintiff was singled out for a physical examination in order to receive a position in Building Maintenance, and subsequently was not given appropriate training.*

6. 12/14/94 Overtime grievance

7. 12/15/94 memo to Bolduc from Butler re OT grievance

   *Exhibits 6-7 support Plaintiff's claim that she was denied opportunities for overtime in favor of male employees.*

8. Employment Record, Richard Kala

9. Garage Helper posting signed by Kala

   *Exhibits 8-9 rebut the Defendants' position that disciplinary action was taken against Kala after Plaintiff complained of harassment.*

10. TDI records

11. Records of Behavioral Health Specialists

    *Exhibits 10-11 evidence stress and anxiety Plaintiff suffered as a result of workplace harassment*

12. E-mail from Barbara Ducharme to Brian Hunt re 1999 Kala customer complaint

13. 10/6/99 memo to Walter Zamoida from Kathy Gudaitis re 1999 Kala customer complaint

14. Anonymous letter received 10/28/1999, addressed to Mr. Dodge re sexual harassment on another customer

15. 10/26/99 ltr to Kala from Butler re suspension, transfer to C & M as a result of customer complaint

16. Authorization for Payroll Change of Rate or Reclassification re Kala, disciplinary

17. 10/18/99 Kala Grievance re suspension and change in classification

18. 12/12/99 memo to Raymond Conroy from Butler re 3rd step answer to 10/18/99 Kala grievance

19. 12/6/99 2nd grievance re Kala

20. 12/22/99 Settlement agreement re Kala grievance, signed by Raymond Conroy and Butler

21. 12/23/99 e-mail from Butler to others re adjustments to Kala's rate to be made in accord with 12/22/99 settlement grievance.

22. Last Chance agreement, for signature by Kala, Butler, and Union President Ray Land

> *Exhibits 12-22 are offered to rebut the position that Kala was transferred for disciplinary reasons as a result of Plaintiff's complaints. They are also offered to show that Kala, a male employee, was subjected to less stringent discipline than Plaintiff.*

23. 8/31/99 ltr from Petrarca and Stamp to Royalynne Hourihan

24. 9/1/99 ltr from Butler to Petrarca and Stamp

25. 9/21/99 ltr from Butler to Petrarca and Stamp

26. 10/14/99 ltr from Petrarca and Stamp to Human Rights Commission

27. 10/14/99 ltr from Petrarca and Stamp to United Steelworkers

28. 12/6/99 grievance filed by Conroy re locker room incident

29. 12/8/99 e-mail from Bud Butler to others (including Hourihan and Bolduc) re Kala grievance, Stamp and Petrarca complaint

30. Handwritten statement – Bolduc's handwriting re locker room incident

31. Typewritten statement re locker room incident

32. 12/13/99 memo from Bolduc to Stamp and Petrarca re locker room incident

33. 12/15/99 unsigned letter from Bolduc re Stamp and Petrarca

34. 12/15/99 ltr to file from Butler re Stamp/Petrarca complaint

35. 12/15/99 ltr to Conroy from Butler re locker room grievance

36. 5/10/01 ltr from Miriam Comeau – use of locker room

*Exhibits 23-36 pertain the "locker room incident" and the Defendants' lack of response.*

37. Personnel Policy Manual, with handwritten note

*This is the document that Plaintiff was required to study by Bolduc.*

38. Collective bargaining agreement, 1992-1996

39. Collective bargaining agreement, 1999-2001

40. Collective Bargaining Agreement 2002-2007

*Exhibits 36-39 outline the provisions regarding sick leave benefits and the procedures therefor. These documents also illustrate damages*

41. 10/20/99 TDI verification report

42. 11/22/99 Notice of Termination of Benefits to Petrarca

43. 2/10/00 Employment Verification report

44. 2/23/00 memo re discussion with TDI

45. 3/1/00 Charge of Discrimination to Dodge

46. 3/8/00 answer to charge from Susann G. Mark, Vice President, General Counsel and Corporate Secretary

47. 3/3/00 ltr to Petrarca from Butler asking for documentation re TDI

48. 4/13/00 ltr to Petrarca from Butler re TDI documentation

49. 4/24/00 ltr to Petrarca from Butler re TDI documentation

50. 5/17/00 ltr to Petrarca from Butler re TDI documentation, suspension

51. 5/23/00 memo to file prepared by Butler

52. 6/6/00 memo to file, prepared by Butler

53. 6/8/00 termination letter, prepared by Butler

54. e-mail from Chaffee to others, including Butler and Hourihan re overpayment

55. 6/12/00 termination grievance

56. 6/12/00 memo re conversation with Conroy

57. 6/12/00 3rd step grievance answer from Butler

*Exhibits 41-54 are offered to show that Plaintiff's termination was in retaliation for her having filed a complaint with the Human Rights Commission, and that the stated reason (collecting TDI while receiving sick pay benefits) was pretextual.*

58. 9/13/00 ltr to Brian Rhynard, Compensation and Benefits Director from Petrarca applying to retire

59. 9/14/00 e-mail from Butler to others – take overpayments from the vacation/holiday pay

60. 9/21/00 ltr to Chaffee from Watson Wyatt re pension calculations

61. 9/25/00 ltr to Petrarca from Butler

62. 9/22/00 ltr to Petrarca from Butler

63. 11/2/00 ltr to Petrarca from UNUM re LTD

64. 11/21/00 ltr to Petrarca re reduction in life insurance coverage

65. Ltr from Brian Rhynard to Petrarca re pension calculations

66. Defendants' Pension Plan

67. Recalculation – Pension to which Plaintiff would have received had she not been terminated.

68. Records of West Bay Psychiatry

69. Records of Richard Parris

> *Exhibits 58-65 are offered to show Plaintiff's damages as a result of her termination*

70. 6/25/02 Employment Verification form re Cotnoir

71. 9/3/02 ltr to Cotnoir from Chaffee re TDI documentation

72. 9/3/02 e-mail from Chaffee to Linda re Cotnoir TDI documentation

73. 8/20/04 ltr to Stamp from Linden re TDI documentation policy

> *Exhibits 66-69 are offered to demonstrate that the proferred reason for Plaintiff's termination is pretextual, and that Plaintiff was disparately disciplined when compared to male co-workers.*

74. 1/5/00 ltr to John McHugh from Maloney re falsification of time sheet

75. 12/3/02 grievance from Dan Ford, responded to by Butler, re falsification of time sheet

76. 7/30/97 ltr to Porter from Bolduc re absences

77. 11/5/97 Agreement re porter, signed by Butler

78. 4/8/98 memo to file from Keith re Porter

> *Exhibits 70-74 are offered to demonstrate that Plaintiff was disparately disciplined when compared to male co-workers.*

79. Agreement for the Sale of New England Gas

> *Exhibit 76 is offered to demonstrate that Narragansett Electric and National Grid USA agreed to assume liability.*

80. Defendants' answers to interrogatories

81. Defendant's 1st supplemental answers to interrogatories

82. Defendant's 2nd supplemental answers to interrogatories

83. Defendant's 3rd supplemental answers to interrogatories

*Exhibits 80-83 are offered in support of the Plaintiff's claim that the reasons proffered*

*for Plaintiff's termination were pretextual, and also to rebut Defendants' claims regarding actions taken in response to Plaintiff's complaints of harassment.*

84. 11/9/05 deposition of Kenneth Schiano

*Exhibit 84 is offered in support of Plaintiff's claim that Bolduc demonstrated discriminatory animus towards women, and also that Bolduc subjected females to a harsher standard of scrutiny.*

85. 5/24/06 deposition of Richard Kala

*Exhibit 85 is offered to rebut Defendants' claims regarding actions taken in response to Plaintiff's complaints of harassment, and also to demonstrate that Plaintiff was singled out when she was required to take a physical examination, and also that she was subjected to harsher discipline than her male co-workers.*

86. 11/14/05 deposition of Edward Bolduc

87. 8/12/05 deposition of Edward Bolduc

*Exhibits 86-87 are offered in support of the proposition that Plaintiff was subjected to harsher discipline than her male co-workers. Exhibit 87 provides background information regarding the history of the maintenance department.*

88. 5/9/06 deposition of Robert Savage

*Exhibit 88 is offered in support of Plaintiff's claims regarding damage.*

89. Affidavit of Karl Saccoccio

*Exhibit 89 is offered in support of the proposition that the stated reasons for Plaintiff's termination were prextual.*

90. Affidavit of Christine Stamp

*Exhibit 90 is offered in support of the proposition that the stated reasons for Plaintiff's termination were pretextual, and that Plaintiff and other female employees were subjected to harsher discipline than males.*

91. Deposition of D'Anna Soenghe

*Exhibit 91 is offered in support of the proposition that the stated reasons for Plaintiff's termination were prextual, and also to rebut claims that appropriate actions were taken in response to Plaintiff's complaints of harassment.*

92. 5/24/06 deposition of Maureen Morancy

*Exhibit 92 is offered to corroborate Plaintiff's claims regarding Kala's harassment, and to rebut claims that appropriate action was taken.*

93. 7/14/06 deposition of Alycia Goody

*Exhibit 93 is offered to rebut claims that appropriate actions were taken in response to Plaintiff's complaints of harassment.*

94. 6/22/06 deposition of Royalanne Hourihan

*Exhibit 94 is offered to rebut claims that appropriate actions were taken in response to Plaintiff's complaints of harassment.*

95. Annual Report, Southern Union

96. Annual Report, National Grid, USA

*Exhibits 95 and 96 are submitted in support of the financial condition of Defendants.*

Respectfully submitted,
Plaintiff,
By her attorneys,

______________________________
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
April 16, 2007
srobinson@smrobinsonlaw.com

______________________________
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
April 16, 2007
vbejma@smrobinsonlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2007, a true and complete copy of the foregoing was sent by regular mail to counsel of record for the Defendants: Neal J. McNamara, Esquire and Matthew J. Frankel, Esquire, Nixon Peabody LLP, One Citizens Plaza, Suite 500, Providence, RI 02903.

______________________

**JURY INSTRUCTIONS**

***A. Hostile Environment***

The Plaintiff has brought a claim under Title VII of the Civil Rights Act, claiming that throughout her history of employment with the Defendants, she was subjected to sexual harassment causing a hostile work environment.

In order to prevail upon her claim, Plaintiff must prove, by a preponderance of evidence:

1) she is a member of a protected class;

2) that she was subjected to unwelcome sexual harassment;

3) that the harassment was based upon sex;

4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment;

5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and

6) that some basis for employer liability has been established.

An explanation of the term "preponderance of evidence" is in order. To prove something by a preponderance of evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. Where the evidence adduced either for or against a given proposition outweighs opposing evidence, that evidence is said to preponderate. So, proof by the preponderance of the evidence means proof by the greater weight of the evidence. In other words, a claim must be proved by evidence that weighs more persuasively in the minds of jurors.

Sexual Harassment

Sexual harassment can take the form of sexual advances, requests for sexual favors, displays of sexually graphic materials, or other verbal or physical conduct of a sexual nature. It can also include acts that do not have clear sexual overtones; rather, any harassment directed at an employee because of that employee's gender is sexual harassment. Harassment can include, alongside of conduct with explicit sexual overtones, behaviors such as the "silent treatment," workplace sabotage, denial of support, humiliation, or being singled out for disparate or undeserved discipline or reprimands.

Hostile Environment

The harassing conduct must be so severe and pervasive that it has the purpose or effect of unreasonably interfering with the employee's work performance and of creating an intimidating, hostile, or offensive work environment. When determining whether a reasonable person would find the alleged harassment sufficiently severe or pervasive to constitute a hostile work environment, you must consider the totality of the circumstances instead of looking at each

single event. That is, you must determine whether, taken together, the accumulated effect of all the reported incidents of harassment - whether overtly sexual or not -- amounted to a hostile work environment.

Employer Liability

Plaintiff has alleged that supervisory employees of the Defendants engaged in harassment creating a hostile environment. If you find Plaintiff was subjected to a hostile working environment as a result of the actions of Defendants' supervisory employees, and that that hostile environment resulted in a tangible employment action taken against the Plaintiff, such as termination, the Defendants must be held liable. On the other hand, if you find that the harassment committed by the supervisory employees did not culminate in a tangible employment action, then the Defendants may avoid liability if it can prove by a preponderance of evidence (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendants or to avoid harm otherwise. If Defendants proves (a) and (b), you must find for Defendants.

Plaintiff has also alleged that her co-workers engaged in harassment creating a hostile environment. When a hostile work environment is created and carried on by nonsupervisory employees, Defendants will be liable for permitting such behavior only if Plaintiff proves that management level employees actually knew, or should have known, of the sexually hostile work environment committed by her co-workers, and failed to take prompt and appropriate remedial action to stop the harassment. If Plaintiff does not show that the management level employees actually knew or should have known of the sexually hostile work environment committed by her

co-workers, and failed to take prompt and appropriate remedial action, you must find for the Defendants.

Statute of Limitations

Plaintiff must file a complaint with an agency within 180 days of allegedly discriminatory conduct. Only the conduct that occurred within the 180 days before the filing is the basis for recovery.

There is an exception to the statute of limitations for plaintiffs who have experienced what is referred to as a "serial violation" of their rights under Title VII. A "serial violation" exists when the contributing to the hostile environment in question have a "substantial relationship" to one another, and are not isolated and discrete, but occur with frequency or repetitively or continuously. Separate acts contributing to the hostile environment may have a "substantial relationship" to one another when they are committed by the same person or persons, or have some other similarity to one another.

If such a "continuing violation" existed, then even if only one of the actions contributing to a hostile working environment took place within that 180 day period, then the Plaintiff may recover for injuries for the entire time period in which Plaintiff suffered a hostile work environment. It is not necessary that that single action taking place within the 180 day period be sufficient to create a hostile work environment in and of itself, provided that it is sufficiently related to the previous actions contributing to a hostile environment.

**Authority:** Pennsylvania State Police v. Suders, 542 U.S. 129, 143, 124 S.Ct. 2342, 2352 (2004); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 118,122 S.Ct. 2061, 2064 (2002); Faragher v. City of Boca Raton,118 S. Ct. 2275 (1998); Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998); Che v. Mass. Bay Trans. Authority, 342 F.3d 31, 40-41 (1St Cir. 2003); Crowley v. L.L. Bean, Inc., 303 F.3d 387,395 (1St Cir. 2002); O'Rourke v. City of Providence, 235 F.3d 713, 728 (1" 2001); Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1St 1998); Ortiz v. Princini, 274 F.3d 1361 (Fed. Cir. 2001).

***B. Sex-Based Discrimination***

The Plaintiff has brought a claim under Title VII of the Civil Rights Act, claiming that the Defendants discriminated against her based upon her sex when they terminated her from employment. To prevail on a claim of sex discrimination, Plaintiff must prove by a preponderance of the evidence that Defendants discriminated against her when it terminated her. In order to prevail on her claim against Defendants, Plaintiff must prove two things:

1) that her sex was a determinative factor in Defendant's decision to terminate her;

2) that Plaintiff suffered damages as a result of her termination.

It is up to you to decide whether Plaintiff has proved her claim of discrimination by a preponderance of the evidence. It is Plaintiff's burden to show that it is more likely so than not so that her sex was a determinative factor in the decision of the employer to terminate her.
The Plaintiff is not required to produce direct evidence of unlawful motive. You may infer unlawful motive as a matter of reason and common sense from the existence of other facts, for example, explanations that were given that you really find were really pretextual.

Plaintiff is not required to prove that her sex was the only reason for the Defendants' decision, but if you find that Plaintiff has proven by a preponderance of evidence that it is more likely so than not so that her sex was a determinative factor in the decision of Defendants to terminate her employment, then your verdict must be for Plaintiff. If, on the other hand, you find that it is more likely so than not so that the Plaintiffs sex was not a determinative factor in the decision they made, then your verdict should be for the Defendants. Alternatively, if you do not believe that the given explanation was the real or full reason for the Defendants' decision to terminate her, you may find that Plaintiff has proven her claim of retaliation, particularly if you believe that the Defendants' representatives who testified did not put forth honestly the reason

for their decision to terminate Plaintiff.

If you have determined that Plaintiff has proven that it is more likely so than not so that Plaintiff's sex was a determinative factor in Defendants' decision, then you must also determine whether Defendants have proven that it is more likely so than not so that it would have terminated Plaintiff despite her sex. You must determine whether the Defendants have shown that it is more likely so than not so that Defendants would have made the same decision even if you find it more likely so than not so that Plaintiff's sex was a determinative factor in the decision it made to terminate the Plaintiff.

An adverse employment action by a supervisor, such as a termination, is deemed an action of the employer.

The fact that Plaintiff turned to the grievance procedure under the Union contract does not shield the Defendants from liability for discrimination.

**Authority:** 42 U.S.C. §2000e-2(m); Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000); Texas Dept. of Community Affairs v, Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Fonseca v. Sysco Food Services of Arizona, 374 F.3d 840, 848 (9"Cir. 2004).

***C. Retaliation***

Plaintiff has brought a claim under Title VII of the Civil Rights Act of 1964, which prohibits employers, like Defendants, from taking retaliatory personnel actions against employees who have engaged in activity protected by Title VII, such as pursuing a complaint of employment discrimination or sexual harassment.

In order for Plaintiff to prevail on her claim of retaliation, [he/she] has to prove three things:

1. she was engaged in a protected activity;

2. she suffered an adverse employment action; and

3. Defendants acted out of a retaliatory motive in taking the adverse employment action.

"Protected activity" is an employee's conduct in opposing a discriminatory practice, making a charge of discrimination or testifying, or assisting or participating in any manner in an investigation. "Protected activity" includes the employee's resort to corrective mechanisms provided by the employer or governmental agencies, such as the Human Rights Commission. An "adverse employment action" includes any action which would dissuade a reasonable worker from making or supporting a claim of discrimination. An "adverse employment action" may include termination, demotion, refusal to hire, refusal to promote, or a reprimand. An "adverse employment action" may be found even in absence of economic harm or loss.

In order to prevail on a claim of retaliation, it does not matter that Defendants are not actually found liable for the discrimination or sexual harassment that Plaintiff complained of, Plaintiff need only have had a reasonable basis for believing that the Defendants' conduct constituted sexual harassment or discrimination.

It is up to you to decide whether Plaintiff has proved her claim of retaliation by a preponderance of the evidence. It is Plaintiff's burden to show that it is more likely so than not so that her engaging in a protected activity was a determinative factor in the decision of the employer to terminate her. The Plaintiff is not required to produce direct evidence of unlawful motive. You may infer unlawful motive as a matter of reason and common sense from the existence of other facts, for example, explanations that were given that you really find were really pretextual.

Plaintiff is not required to prove that her complaining of sex discrimination or sexual harassment was the only reason for the Defendants' decision, but if you find that Plaintiff has proven that it is more likely so than not so that her complaining of discrimination and harassment

was a determinative factor in *the* decision of Defendants to terminate her employment, then your verdict must be for Plaintiff. If, on the other hand, you find that it is more likely so than not so that the Plaintiff's complaining of discrimination and sexual harassment was not a determinative factor in the decision they made, then your verdict should be for the Defendants. Alternatively, if you do not believe that the given explanation was *the* real or full reason for the Defendant's decision to terminate her, you may find that Plaintiff has proven her claim of retaliation, particularly if you believe that the Defendants' representatives who testified did not put forth honestly the reason for their decision to terminate Plaintiff.

If you have determined that Plaintiff has prove that it is more likely so than not so that retaliation was a determinative factor in Defendants' decision, then you must also determine whether Defendants have proven that it is more likely so than not so that it would have terminated Plaintiff even in the absence of retaliation. You must determine whether the Defendants have shown that it is more likely so than not so that Defendants would have made the same decision even if you find it more likely so than not so that retaliation was a substantial factor in the decision it made to terminate the Plaintiff.

An adverse employment action by a supervisor is an action of the employer.

The fact that Plaintiff turned to the grievance procedure under the Union contract does not shield the Defendants from liability for retaliation.

**Authority:** Burlington Northern & Santa Fe Ry. Co. v. White, 125 S.Ct. 2405, 2409 (2006); Provencher v. CVS Pharmacy, 145 F.3d 5 (1[S] Cir. 1998); Fonseca v. Sysco Food Services of Arizona,374 F.3d 840, 848 (9[th] Cir. 2004); Knox v. State of Ind.,93 F.3d 1327, 1332 (7th Cir. 1996); U.S.C. § 2000e-3(a).

***D. Damages***

If you find for Plaintiff on her claims of sexual harassment, then you must determine whether he/she is entitled to damages in an amount that is fair compensation. Plaintiff seeks to

recover damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses.

Plaintiff may also recover for these amounts on her claims of disparate treatment and retaliation, but only if you have found that 1) the Plaintiff has established that her sex was a motivating factor for her termination; and 2) that Defendants have not shown that it would have taken the same action despite the Plaintiff's sex.

You must not consider any lost wages or fringe benefits. Federal law requires that I, as the judge, determine the amount of any lost wages and fringe benefits that Plaintiff shall recover if you find Defendant liable. Distress arising from this lawsuit, or legal expenses incurred in this lawsuit must also not be included in these damages. You must determine instead what other loss, if any, Plaintiff has suffered or will suffer in the future caused by any hostile environment, discrimination, or retaliation that you find Defendant has committed under the instructions I have given you. We call these compensatory damages. You may award compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses if you determine that Plaintiff has proven, by a preponderance of the evidence, that she has experienced any of these consequences as a result of any hostile environment, discrimination, or retaliation. Plaintiff is not required to prove her emotional distress through expert medical testimony as long as she presents evidence that proves she actually suffered emotional distress as a result of Defendants' unlawful conduct.

No evidence of the monetary value of intangible things like emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other no economic losses are available and there is no standard I can give you for fixing any compensation to be awarded for these injuries. Even though it is obviously difficult to establish a standard of measurement for

these damages, that difficulty is not grounds for denying a recovery on this element of damages. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, of the amount of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other no economic losses you find that Plaintiff has undergone and can probably be expected to suffer in the future as a result of Defendant's conduct. And you must place a money value on this, attempting to come to a conclusion that will be fair and just to both of the parties. This will be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.

If you find that Plaintiff is entitled to damages for losses that will occur in the future, you will have to reduce this amount, whatever it may be, to its present worth. The reason for this is that a sum of money that is received today is worth more than the same money paid out in installments over a period of time, since a lump sum today, such as any amount you might award in your verdict, can be invested and earn interest in the years ahead.

If you have found Defendants liable to Plaintiff, but find that her damages have no monetary value, you may award her nominal or token damages such as One Dollar ($1.00) or some other minimal amount.

If you have awarded compensatory or nominal damages, you may also consider punitive damages. You may consider only award punitive damages if Plaintiff proves by a preponderance of the evidence that defendant engaged in a discriminatory practice with malice or with reckless indifference to Plaintiffs federally protected rights.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the

employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

An award of punitive damages would be appropriate only if you find for Plaintiff and then further find from a preponderance of the evidence (1) that a higher management official of Defendants personally acted with malice or reckless indifference to Plaintiffs federally protected rights, and (2) that Defendants itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

**Authority:** Karlstad v. American Dental Ass'n, 527 U.S. 526,119 S.Ct. 2118 (1999); Ramos v. Roche Products, Inc.. 936 F.2d 43, 49-50 (1st Cir. 1991); Criado v. IBM, 145 F.3d 437 (1st Cir. 1998); Mollov v. Blanchard, 115 F.3d 86, 93 (lst Cir. 1997); Tanca v. Nordberg, 98 F.3d 680, 684-85 (1" Cir. 1996).

JURY INSTRUCTION FORM

VERDICT FORM

We, the jury, answer the questions submitted as follows:

***Count I - Sexual Harassment***

1. Was Plaintiff subjected to sexual harassment while employed by the Defendants?

Yes ________ No________

*If your answer to Question No. 1 is "Yes," then go to Question No. 2. If your answer to Question No. 1 is "No," then proceed to Question 11.*

2. Was Plaintiff subjected to sexual harassment by any of Plaintiff's supervisors, as that term is defined in these instructions?

Yes ________ No________

If *your answer to this Question is "No, " skip Questions 3-5 and proceed to Question 6.*

3. Did Plaintiff suffer any tangible employment action as a result of any sexual harassment by any of her supervisors?

Yes ________ No________

*If your answer to this Question is "Yes, " do not complete Questions 5 and 6. Instead, you must find for the Plaintiff on the question of whether Defendants are liable for sexual harassment by her supervisors. If your answer to this Question is "No, "proceed to Question 4.*

4. Did Defendants exercise reasonable care to prevent and correct promptly any sexually harassing behavior by Plaintiff's supervisors?

Yes ________ No________

5. Did Plaintiff unreasonably fail to take advantage of any preventative or corrective opportunities provided by Defendants or to avoid harm otherwise caused by sexual harassment by her supervisors?

Yes ________ No________

*If you have answered "No" to either question, you must find for the Plaintiff on the question of whether Defendants are liable for sexual harassment by her supervisors. Proceed to Question 6.*

6. Was Plaintiff subjected to sexual harassment by any of Plaintiffs co-workers?

Yes ________ No________

7. Did Defendants know or should Defendant have known of sexual harassment of Plaintiff by her co-workers, if any, and fail to take prompt remedial action?

Yes ________ No________

*If the answer to Question #7 is "no, "you may not find for Plaintiff on the issue of whether Plaintiff suffered sexual harassment by her co-workers.*

8. State the amount, if any, of compensatory damages that Plaintiff sustained as a result of sexual harassment by Defendants by her supervisors and/or co-workers.

Compensatory Damages $ __________________

Go to Question No. 9.

9. State the amount, if any, of nominal damages that Plaintiff sustained as a result of sexual harassment by Defendants.

Nominal Damages $ __________________

Go to Question No. 10.

10. State the amount, if any, of punitive damages that Plaintiff should be awarded as a result of Defendants' sexual harassment against Plaintiff.

Punitive Damages $ ________________

***Count II -- Disparate Treatment***

11. Has Plaintiff proven, by a preponderance of the evidence, that sex was a determinative factor in Defendants' decision to terminate her employment?

Yes ________ No________

If "No," proceed to Question 16. If "Yes," proceed to next question.

12. Has Defendant proven, by a preponderance of the evidence, that it would nevertheless have taken the same action even if it had not considered sex?

Yes ________ No________

If "Yes," proceed to Question 16. If "No," proceed to next question.

13. State the amount, if any, of compensatory damages that Plaintiff sustained as a result of Defendants' unlawful termination.

Compensatory Damages $ _________________

Go to Question No. 14

14. State the amount, if any, of nominal damages that Plaintiff sustained as a result of Defendants' unlawful termination.

Nominal Damages $ ___________________

Go to Question No. 15

15. State the amount, if any, of punitive damages that should be awarded to Plaintiff as a result of Defendants' unlawful termination.

Punitive Damages $ ___________________

***Count III - Retaliation***

16. Has Plaintiff proven, by a preponderance of the evidence, that retaliation was a determinative factor in Defendants' decision to terminate her employment?

Yes ________ No________

If "No," answer no further questions. If "Yes," proceed to next question.

17. Has Defendant proven, by a preponderance of the evidence, that it would nevertheless have taken the same action even if it had not considered retaliation?

Yes ________ No________

If "Yes," answer no further questions. If "No," proceed to next question.

18. State the amount, if any, of compensatory damages that Plaintiff sustained as a result of Defendants' retaliatory conduct.

Compensatory Damages $ _________________

Go to Question No. 19

19. State the amount, if any, of nominal damages that Plaintiff sustained as a result of Defendants' retaliatory conduct.

Nominal Damages $ ________________

Go to Question No. 20

20. State the amount, if any, of punitive damages that should be awarded to Plaintiff as a result of Defendants' retaliatory conduct.

Punitive Damages $ _________________