UNITED STATE DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA, Plaintiff, | : | |
| v. | : | C.A. No. 04-310 S |
| SOUTHERN UNION CO., NEW ENGLAND GAS CO., NARRAGANSETT ELECTRIC CO. & NATIONAL GRID U.S.A., Defendants. | : | |

**DEFENDANTS PRETRIAL MEMORANDUM**

Pursuant to the Court's Pretrial Order of November 29, 2004, Defendants Southern Union Co., New England Gas Co., Narragansett Electric Co., and National Grid U.S.A. ("Defendants" or "New England Gas") submit this pretrial memorandum.

**A. Theory of Defense and Expected Witnesses**

1. **Plaintiff's Hostile Work Environment Claim.** Defendants expect to prove the following in defense against Plaintiff's hostile work environment claim:

(a) that Plaintiff was not subjected to a hostile work environment during her employment with New England Gas;

(b) that Plaintiff unreasonably delayed reporting alleged misconduct to management or human resources;

(c) that when Plaintiff did report alleged misconduct to management or human resources, New England Gas responded reasonably and promptly to end the alleged misconduct;

(d) that the so-called "locker room incident" did not, as a matter of fact and law, establish a hostile work environment;

(e) that Bolduc's alleged reprimands of Plaintiff were legitimate supervisory conduct;

(f) that Bolduc's assignment of Plaintiff's of job responsibilities was legitimate supervisory conduct;

(g) that Plaintiff's allegations of harassment prior to April 26, 1999 are time-barred, because:

i. they were not continuous and concerted, as a matter of law, up to and through the limitations cut-off date;

ii. they were not connected to Plaintiff's timely allegations of unfair reprimands by Bolduc; and

iii. the allegations prior to the limitations period, on the one hand, and the allegations within it, on the other, were so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single course of conduct, to defeat the statute of limitations;

(h) that Bolduc's conduct toward Plaintiff had nothing to do with her gender, and was based on legitimate concerns about Plaintiff's performance and departmental needs;

(i) that New England Gas did not know and should not have known prior to Plaintiff's complaint in August 1999 that Plaintiff perceived her workplace to be hostile because of Bolduc's alleged conduct;

(j) that in each instance that Plaintiff complained of inappropriate conduct, New England Gas took reasonable and prompt action to address her concerns;

(k) that New England Gas exercised reasonable care to prevent and to correct promptly any harassing behavior and that Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by New England Gas and to avoid harm otherwise.

2. **Plaintiff's Gender Discrimination (Termination) Claim.** Defendants expect to prove the following in defense against Plaintiff's claim of discriminatory termination based on her gender:

(a) that Plaintiff did not experience an adverse employment action because she voluntarily retired, and received all benefits and pay to which she was entitled;

(b) that New England Gas's decision to separate Plaintiff from her employment was based upon a legitimate reason, i.e., that Plaintiff refused to provide basic paperwork regarding her receipt of state benefits despite numerous requests to do so and willfully received money from New England Gas to which she was not entitled; and

(c) that New England Gas's decision had nothing to do with Plaintiff's gender.

3. **Plaintiff's Retaliatory Termination Claim.** Defendants expect to prove the following in defense against Plaintiff's claim of retaliatory termination:

(a) that Plaintiff did not experience an adverse employment action because she voluntarily retired, and received all benefits and pay to which she was entitled;

(b) that New England Gas's decision to separate Plaintiff from her employment was based upon a legitimate reason, i.e., that Plaintiff refused to provide basic paperwork regarding her receipt of state benefits despite numerous requests to do so and willfully received money from New England Gas to which she was not entitled; and

(c) that New England Gas's decision had nothing to do with protected conduct engaged in by Plaintiff.

4. **Witnesses.** Defendant expects to call the following witnesses, who are expected to testify in the manner indicated:

(a) Ed Bolduc. Mr. Bolduc will testify regarding Plaintiff's work performance and his actions as her supervisor.

(b) Henry "Bud" Butler. Mr. Butler will testify regarding his interactions with Plaintiff as Labor Relations Manager, including his actions in connection with responding to Plaintiff's complaints and the sequence of events leading up to and including Plaintiff's separation from employment.

(c) Royalynne Hourihan. Ms. Hourihan will testify regarding her tenure as Vice President of Human Resources.

(d) Alycia Goody. Ms. Goody will testify regarding her tenure as Counsel to Providence Gas.

(e) Robert Savage. Mr. Savage will testify regarding his representation of Plaintiff in connection with her grievance, arbitration settlement, and decision to retire.

(f) Jerry Porter. Mr. Porter will testify regarding his interactions with Plaintiff as her co-worker, and regarding the Facilities Maintenance department.

(g) Richard Kala. Mr. Kala will testify regarding his interactions with Plaintiff while he was her co-worker in 1994 and 1995.

(h) Ray Conroy. Mr. Conroy will testify regarding his actions relating to Plaintiff as President of Plaintiff's Union.

(i) Ray Lang. Mr. Lang will testify regarding his interactions with Plaintiff as a member of Plaintiff's Union.

(j) Paul Cardin. Mr. Cardin will testify regarding his interactions with Plaintiff as steward in Plaintiff's Union.

(k) Susan Green. Ms. Green will testify regarding her work in Facilities Maintenance.

(l) Linda Therrien. Ms. Therrien will testify regarding the company's procedures regarding reconciling sick pay benefits paid by the company with benefits received from the state, in connection with Plaintiff's disability leave and sequence of events that led to her separation from employment.

(m) Joanne Zito. Ms. Zito will testify similarly to Ms. Therrien.

(n) Lorraine Cipriano. Ms. Cipriano will testify similarly to Ms. Therrien.

(o) Bruce Wilde. Mr. Wilde will testify regarding the sexual harassment policies and procedures in place from the time that plaintiff commenced work at the Company until 1998.

(p) Joan Chaffee. Ms. Chaffee will testify regarding the Human Resources department and her actions with respect to Plaintiff.

(q) Dr. James Gallo. Dr. Gallo will testify regarding treatment that he has provided to Plaintiff after an accident that took place in August 2004.

(r) Keeper of the Records, Butler Hospital. To authenticate records regarding Plaintiff.

(s) Keeper of the Records, Department of Labor and Training. To authenticate records regarding Plaintiff

Defendants reserve the right to identify additional witnesses for the purpose of rebuttal.

**B. Points and Authorities**

**Hostile Work Environment**

1. Plaintiff's claim of hostile environment prior to April 26, 1999 is time-barred. Plaintiff has asserted her hostile environment claim under Title VII, and in Rhode Island – a "deferral state" – the applicable limitations period is three hundred (300) days. See 42 U.S.C. § 2000e-(5)(e). Plaintiff filed her charge of discrimination with the Rhode Island Commission for Human Rights on February 25, 2000. Therefore, her hostile environment claims predating April 26, 1999, are per se time-barred absent some equitable exception. See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 (1st Cir. 2005); Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002). Plaintiff attempts to invoke the continuing violations doctrine of National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-18 (2002), to save her

otherwise untimely claims. In order to do so, she must establish ***not only*** that one "act" occurred within the limitations period, but that the series of acts allegedly creating a hostile environment are "sufficiently continuous and concerted" to constitute a "single, continuing act of discrimination." Costanzo v. United States Postal Serv., 2003 WL 1701998, at *6 (S.D.N.Y. Mar. 31, 2003). Thus, in order to avail herself of the continuing violation theory, Plaintiff must prove that her post-April 26, 1999 allegations "reinforce" her pre-limitation allegations such that both her pre- and post-limitation allegations can "reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." Garrison v. Burke, 165 F.3d 565, 570 (7th Cir. 1999). If Plaintiff fails to prove this, her pre-April 26, 1999 harassment allegations are untimely as a matter of law and Plaintiff cannot recover damages based on such allegations.

2. Plaintiff cannot establish the existence of a hostile environment within the limitations period. Plaintiff alleges that Bolduc's conduct within the limitation period amounted to an actionable hostile work environment. To sustain this allegation, Plaintiff must prove that (1) she was subjected to sexually offensive conduct or statements because she was a female; (2) such conduct or statements were unwelcome and had not been invited or solicited, directly or indirectly, by Plaintiff's own acts or statements; (3) the sexual conduct or statements in the workplace were severe or pervasive, and resulted in a work environment that was so permeated with discriminatory intimidation, ridicule or insult that the sexual conduct or statements materially altered the conditions of Plaintiff's employment and created an abusive working environment; (4) a reasonable person, as distinguished from someone who is highly sensitive, would have found the workplace to be hostile or abusive; and (5) Plaintiff herself believed the workplace to be hostile. Noviello v. City of Boston, 398 F.3d 76, 93 (1st Cir. 2005) (citing

Faragher v. City of Boca Raton, 524 U.S. 775, 786-89 (1998)). If Plaintiff fails to establish any one of these elements at trial, her hostile work environment claim will fail as a matter of law and Plaintiff will be precluded for recovering damages on that basis. Further, if Plaintiff fails to prove that a hostile environment existed at least in part within the limitations period, all harassment allegations prior to the limitations period would be barred as a matter of law, as well. See Marrero v. Goya of P.R., Inc., 304 F.3d 7, 17 (1st Cir. 2002); Paquin v. MBNA Marketing Systems, 233 F. Supp. 2d 58 (D. Me. 2002).

3. Because Bolduc was not a "supervisor" for the purposes of vicarious liability analysis under Title VII, Plaintiff must prove negligence on the part of Defendants in order to recover for the alleged hostile work environment. Because Title VII employs different standards of liability depending on the position of the alleged harasser, courts must "must distinguish 'employees who are supervisors merely as a function of nomenclature from those who are entrusted with actual supervisory powers.'" Noviello, 398 F.3d at 95 (quoting Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1033 (7th Cir. 1998)). In the First Circuit, courts must determine whether the alleged harasser has "authority to affect the terms and conditions of the victim's employment," i.e., has "the power to hire, fire, demote, promote, transfer, or discipline an employee." Id. at 96. "An individual with the authority to direct the plaintiff's work operations, to have input into the plaintiff's performance evaluations and responsibility for training the plaintiff and other employees is not, without more, a supervisor for this purpose." Davis v. Cumberland County, 2005 U.S. Dist. LEXIS 11782, at *32 (D. Me. June 16, 2005) (citing Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002)). "Overseeing aspects of the plaintiff's job performance is not enough." Id. Because Bolduc did not have the powers

described above relative to Plaintiff, he was not a "supervisor" as a matter of law.[1] Given this, Defendants would only be liable to Plaintiff for the alleged hostile environment if Plaintiff proves that Defendants were negligent, i.e., "knew or should have known about the hostile work environment, yet failed to stop it." Noviello, 398 F.3d at 96-97.

4. Plaintiff must prove that Defendants knew or should have known of the alleged hostile work environment and yet acted unreasonably by failing to stop or correct it. Defendants will show that they acted reasonably to ensure that the alleged harassment by Richard Kala in 1995 ceased. Defendants will also show that Defendants acted promptly to correct the perceived hostile environment once Plaintiff complained of Bolduc's conduct in 1999. As Defendants at all times acted reasonably in response to Plaintiff's complaints, Plaintiff cannot establish employer liability for the conduct at issue, and thus cannot recover on her hostile work environment claim. Noviello, 398 F.3d at 96-97.

5. Defendants are entitled to raise the *Faragher/Ellerth* affirmative defense, which, if proven, would preclude Plaintiff from recovering for the alleged hostile work environment.[2] Assuming *arguendo* that Bolduc was Plaintiff's "supervisor" for vicarious liability purposes, Defendants are entitled to raise the *Faragher/Ellerth* affirmative defense. If Defendants prove (1) that they exercised reasonable care to prevent or to correct promptly any harassing behavior; and (2) that Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendants or to avoid harm otherwise, Plaintiff cannot recover for the

---

1 To the extent the Court deems Bolduc's supervisory status an issue of fact for the jury, Defendants respectfully request the opportunity to submit a supplemental jury instruction on this issue.

2 Because Defendants submit that Bolduc was not a supervisor as a matter of law, Defendants do not believe this point of law is germane to this case, and thus have not submitted a jury instruction on the *Faragher/Ellerth* defense. To the extent the Court rules otherwise, Defendants respectfully request the opportunity to supplement their proposed jury instructions to include a charge on the *Faragher/Ellerth* defense.

alleged harassment. Faragher v. City of Boca Raton, 524 U.S. 775, 786-89 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

**Gender Discrimination (Termination)**

6. Plaintiff does not have direct evidence of discrimination. Plaintiff's allegation, if taken to be true, would only establish that Bolduc made statements in the late 1980s or early 1990s indicating that he was not happy about having women in the maintenance department. Even if Bolduc made such comments, such comments do not, as a matter of law, constitute direct evidence of discrimination in connection with Plaintiff's separation from employment. See, e.g., Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998) (supervisor's alleged admission that "she had difficulty in understanding Afro-Americans, and that further, her experience and interaction up to this time had been minimal with respect to black employees, and that [she] identified a bias against blacks and she found that they were difficult for her to trust or get along with," not direct evidence of discrimination); Heim v. Utah, 8 F.3d 1541, 1546-1547 (10th Cir. 1993) ("[A]n offer of . . . discriminatory statements, from which it was argued that the determining cause of an employment decision might be inferred, [is] not direct evidence of causation on the employment decision.") (internal quotes and citations omitted); Dunnom v. Bennett, 290 F. Supp. 2d 860, 868 (S.D. Ohio 2003) (supervisor's alleged statement that "women did not belong" not direct evidence of discrimination).

7. Plaintiff must establish a prima facie case of gender discrimination under the *McDonnell Douglas* framework. Plaintiff must prove (1) that she is a member of a protected class; (2) that she was performing her job at a level that rules out the possibility that she was fired for inadequate job performance; (3) that she suffered an adverse employment action; and (4) that the circumstances of her termination give rise to an inference of discrimination. See

Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). If Plaintiff fails to prove the any element of her *prima facie* case, Defendant will be entitled to judgment as a matter of law.

8. Plaintiff cannot establish the fourth element of her ***prima facie*** case of discriminatory termination based on her gender. With respect to the fourth element, Plaintiff will have to put forth evidence that would support an inference of discrimination in her separation from employment. If Plaintiff seeks to show discrimination through comparative evidence, she must put forth "evidence . . . showing that others similarly situated to [her] in all relevant respects were treated differently by the employer." Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999). Because Plaintiff has no evidence showing that she was treated unfairly as compared to co-workers who were "similarly situated to [her] in all relevant respects," she cannot establish that her termination occurred in circumstances giving rise to an inference of discrimination as a matter of law.

9. If Plaintiff establishes a prima facie case, Defendant must produce evidence that its decision was based upon legitimate, nondiscriminatory reasons. Assuming that Plaintiff adduces evidence from which a reasonable jury could find that she has established a *prima facie* case of discrimination, Defendants will submit ample evidence that Plaintiff was separated from employment for the legitimate reasons outlined by Butler in his letter of June 8, 2000, i.e., for improperly and willfully accepting sick leave payments from New England Gas in excess of that to which she was entitled. See id.

10. Plaintiff must then present evidence sufficient for a reasonable jury to find that Defendant's explanation for her termination is pretextual. If Plaintiff is unable to put forth evidence from which a reasonable jury could conclude that Defendants' explanation for her

separation from employment is, in fact, untrue, then Defendants will be entitled to judgment as a matter of law. See id. at 21-22.

11. Defendants had the legal right to terminate Plaintiff at any time and for any reason that was not discriminatory. It is undisputed that Plaintiff's employment was at-will. Thus, even if the jury disagrees with Defendants' judgment regarding the willfulness or severity of Plaintiff's transgression – and, by extension, Defendants' decision to separate her from employment – the jury must be instructed that it still cannot find in favor of Plaintiff *unless* it finds that her separation from employment was the result of gender discrimination. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999) (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1996)) ("[The antidiscrimination laws do] not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless facts and circumstances indicate that discriminatory animus was the reason for the decision.").

**Retaliatory Termination**

12. Because Plaintiff has no direct evidence of retaliatory animus, Plaintiff must establish a *prima facie* case of retaliation. In order to do so, Plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." See Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (citing Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002)). If Plaintiff fails to establish any element of her *prima facie* case, Defendants will be entitled to judgment as a matter of law on her retaliation claim.

13. If Plaintiff establishes a *prima facie* case of retaliation, Defendants must produce evidence that its decision was based upon legitimate reasons. Assuming that Plaintiff adduces

evidence from which a reasonable jury could find that she has established a *prima facie* case of retaliation, Defendants will submit ample evidence that Plaintiff was separated from employment for the legitimate reasons outlined by Butler in his letter of June 8, 2000. See id. at 26.

14. Plaintiff must then prove that Defendants' proffered legitimate reason is in fact a pretext and that the job action was the result of Defendants' retaliatory animus. If Plaintiff can do no more than establish temporal proximity between the alleged protected conduct and her separation from employment, Defendants will be entitled to judgment as a matter of law on Plaintiff's retaliation claim. See id.; see also Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."); Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period of time between plaintiff's protected activity and termination was insufficient to establish a causal connection).

**Damages**

15. If Plaintiff prevails on any or all claims, her total damages are capped at three hundred thousand dollars ($300,000). See 42 U.S.C. § 1981a; see also Baty v. Willamette Indus., 172 F.3d 1232, 1246 (10th Cir. 1999); Smith v. Chicago Sch. Reform Bd. of Trustees, 165 F.3d 1142, 1149-51 (7th Cir. 1999); Hudson v. Reno, 130 F.3d 1193, 1200 (6th Cir. 1997) (subsequent history omitted); cf. Hogan v. Bangor & Aroostook R.R., 61 F.3d 1034, 1037 (1st Cir. 1995) (holding that damages cap applies to sum total of all types of damages awarded).

16. Plaintiff cannot recover back pay because she was permanently disabled from working from October 15, 1999 until the date of trial. Because Plaintiff could not have worked at any point between her leave and the date of trial, and, indeed, represented that she was

permanently disabled in order to receive Social Security benefits, she cannot, as a matter of law, recover back wages, because the loss of such wages were not suffered "as a result" of Defendants' alleged discrimination or retaliation. See Acevedo Martinez v. Coatings Inc., 286 F. Supp. 2d 107, 116 (D.P.R. 2003) (citing Sullivan v. Raytheon Co., 262 F.3d 41, 47 (1st Cir. 2001)); Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993).

17. Plaintiff failed to mitigate her alleged damages. Plaintiff is required by law to take reasonable steps to mitigate any losses stemming from her allegedly discriminatory separation from employment. See Hazel v. United States Postmaster Gen., 7 F.3d 1, 5 (1st Cir. 1993); Daily v. Societe Generale, 108 F.3d 451, 458 n.1 (2d Cir. 1997). Defendants will show that if and to the extent Plaintiff was capable of working, she failed reasonably to seek alternative suitable employment. The jury should be instructed regarding Plaintiff's failure to mitigate damages so that it may reduce damages accordingly in the event that it finds that Plaintiff's separation was discriminatory or retaliatory.

18. Reinstatement is an equitable remedy that can only be ordered by the Court. The jury cannot order reinstatement as part of any damage award, as reinstatement is an equitable remedy that falls strictly within the discretion of the court. See Brochu v. City of Riviera Beach, 304 F.3d 1144, 1162 n.31 (11th Cir. 2002) (citing Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 847-48 (2001)) ("[R]einstatement . . . is a form of equitable relief which is determined by the court."); see also Partin v. St. Johnsbury Co., 447 F. Supp. 1297, 1303 n.6 (D.R.I. 1978). If Plaintiff prevails, reinstatement is not appropriate because Plaintiff was completely disabled for nearly eight years and cannot show that she is currently fit to work.

19. The award of front pay is an equitable remedy that can only be ordered by the Court. The jury cannot order reinstatement as part of any damage award, as front pay is an

equitable remedy that falls strictly within the discretion of the court. See Lussier v. Runyon, 50 F.3d 1103, 1108 (1st Cir. 1995) ("[F]ront pay, within the employment discrimination universe, is generally equitable in nature."). If Plaintiff prevails, an award of front pay is not appropriate because Plaintiff has was completely disabled for nearly eight years and cannot show that she is currently fit to work.

20. Plaintiff is precluded from seeking punitive damages as a matter of law. The party seeking punitive damages has the burden of producing evidence of Defendants' "reckless or callous indifference to the federally protected rights of others." Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir.1992)). The standard for imposing punitive damages under federal law is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. Id. Whether a party seeking punitive damages has met the high standard imposed on such an award is a question of law for the trial justice. Id. Here, Plaintiff cannot show that Defendants' conduct rose to the level of "reckless or callous indifference" necessary to sustain a claim for punitive damages. Additionally, Defendants issued and enforced in good faith a written non-discrimination policy, and responded reasonably and promptly to Plaintiff's complaints of harassment. Such action alone may insulate the employer from a punitive damage claim. Harris v. L & L Wings, 132 F.3d 978, 983 (4th Cir. 1997). "Holding employers liable for punitive damages when they engage in good faith efforts to comply with [antidiscrimination laws]" is incompatible with the common law principle "that it is improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously." Kolstad v. American Dental Ass'n, 527 U.S. 526, 544 (1999). Because Defendants will show

that they made good faith efforts to comply with the law, jury instructions on punitive damages are inappropriate here.[3]

**C. Intended Exhibits**

Defendants intend to offer the following exhibits:

**COMPANY POLICIES/Collective Baragaining Agreements ("CBAs"):**

| **Exhibit No.** | **Description** |
|---|---|
| A | 6/14/89 Memo from B. Wilde to all employees re: Sexual Harassment Policy |
| B | 6/2/89 Sexual Harassment Policy – Providence Energy Corporation (PEC) |
| C | 10/25/91 Memo from James Dodge, Chairman, President & CEO, PEC ("Dodge") to Officers and Supervisory Employees re: Sexual Harassment with attached Sexual Harassment Policy and related management information dated 6/89 |
| D | Prov Gas Personnel Policy No. 3.01 – Harassment; effective date: 9/18/95 |
| E | Harassment Complaint Procedure |
| F | Prov Gas Personnel Policy No. 3.08 –Harassment, effective 4/1/96 |
| G | Prov Gas Personnel Policy No. 3.16 – Sexual Harassment, effective 9/1/98 |
| H | Prov Gas Personnel Policy No. 3.16 – Sexual Harassment, effective 5/1/00 |
| I | Harassment Policy and Procedures C-107, issued 4/1/90 |
| J | Collective Bargaining Agreement ("CBA") between Providence Gas Company (Prov Gas) and United Steelworkers of America (AFL-CIO-CLC) ("USWA"), 1988-1991 |
| K | CBA between Prov Gas and USWA, 1991-1993 |

[3] To the extent the Court decides that a punitive damages jury instruction is appropriate, Defendants respectfully request the opportunity to submit proposed instructions on that issue.

| | |
|---|---|
| L | CBA between Prov Gas and USWA, 1992-1996 |
| M | CBA between Prov Gas and USWA, 1996-1999 |
| N | Memorandum of Understanding between Prov Gas and USWA extending CBA's dated 1/21/96 and 4/2/96 |

**8/99 "LOCKER ROOM INCIDENT"**

| **Exhibit No.** | **Description** |
|---|---|
| O | 8/31/99 letter from Carol Petrarca ("Petrarca") and Christine Stamp ("Stamp") to Royalynne Hourihan, VP HR ("Hourihan") re: 8/20/99 incident |
| P | 9/1/99 letter from Henry Butler ("Butler") to Petrarca and Stamp advising company is in receipt of 8/31/99 letter and that they "have not forgotten about the incident." |
| Q | 9/21/99 letter with certified mail receipt from Butler to Petrarca and Stamp advising a meeting will be scheduled with a union representative when they return to work |
| R | 10/14/99 letter with certified mail receipt from Petrarca and Stamp to USWA advising of actions taken against Prov Gas as a result of being discriminated against and harassed at work |
| S | 10/14/99 letter from Petrarca and Stamp to the Rhode Island Commission for Human Rights ("RICHR") re: discrimination and harassment at Prov Gas and the 8/20/99 incident |
| T | 12/6/99 Grievance report |
| U | 12/13/99 Statement of apology from Ed Bolduc ("Bolduc") to Petrarca and Stamp |
| V | Undated and unsigned handwritten statement of apology (probably of Bolduc) re: 8/20/99 incident |
| W | Undated and unsigned type written statement of apology re: 8/20/99 incident |
| X | 12/15/99 letter of apology from Bolduc to Petrarca and Stamp |

| | |
|---|---|
| Y | 12/15/99 memo from Butler to Raymond Conroy, President Local 12431, USWA ("Conroy") re: response to 12/6/99 grievance |
| Z | 12/15/99 Memo from Butler to File with chronology of Stamp/Petrarca harassment complaint |

**TERMINATION / RETIREMENT / SEPARATION FROM PROV GAS:**

| **Exhibit No.** | **Description** |
|---|---|
| AA | 6/8/00 termination letter from Butler to Petrarca |
| BB | Employee Separation Check-off list – HR |
| CC | 6/8/00 email from Butler to Mary Paquet ("Paquet"), Lisa Pimental ("Pimental"), Joanne Zito ("Zito"), Joann Therrien ("Therrien") and Joan Chaffee ("Chaffee") advising that Petrarca has been terminated effective immediately |
| DD | Undated email with attached backup documentation from Chaffee to Zito, Paquet, Pimental, Therrien, Brian Rhynard ("Rhynard"), Butler and Hourihan advising of Petrarca's termination and not to pay her any leave entitlement. |
| EE | 6/12/00 Grievance report |
| FF | 6/12/00 Third Step answer to 6/12/00 grievance of Petrarca submitted by Butler |
| GG | 9/13/00 letter from Petrarca to Rhynard advising this is her application to retire from Prov Gas effective 9/30/00 |
| HH | 9/14/00 email from Butler to Paquet, Zito, Pimental and Chaffee advising that Petrarca is not entitled to her accrued vacation pay with attached backup documentation |

| | |
|---|---|
| II | 9/25/00 letter from Butler to Petrarca advising she will receive her retirement and healthcare benefits in accordance with CBA and that company does not agree that she is retiring because she is physically unable to work |

**RETIREMENT BENEFITS / PENSION / COBRA:**

| **Exhibit No.** | **Description** |
|---|---|
| JJ | 9/21/00 letter from Brown to Chaffee with benefit calculation |
| KK | 10/31/00 letter from Chaffee to Petrarca re: Application for Benefits |
| LL | 11/2/00 letter from UNUM to Petrarca re: approval of request for Long Term Disability ("LTD") benefits |
| MM | 11/15/00 signed Application for Retirement Benefits and Election of Payment Option |
| NN | 11/16/00 fax from Chaffee to Bank of New York requesting issuance of retroactive benefit check for the 10/31/00 payment |
| OO | Undated email from Chaffee to Therrien re: Petrarca pension and LTD |
| PP | 1/15/01 handwritten letter from Petrarca to Rhynard requesting exact calculations used by company to determine pension benefit amount |
| QQ | 1/22/01 letter from Rhynard to Petrarca advising that pension is calculated by Pension Plan's actuary, Watson Wyatt Worldwide |
| RR | 3/14/01 letter from Chaffee to Petrarca re: insurance form to be completed |
| SS | 4/25/02 letter from UNUM to Petrarca requesting update on status of application for social security disability benefits |
| TT | 3/17/04 letter from UNUM to Petrarca re: overpayment of LTD benefits and request for reimbursement from Petrarca |

**TDI DOCUMENTS:**

| **Exhibit No.** | **Description** |
|---|---|

| | |
|---|---|
| UU | 11/22/99 TDI Notice of Termination of Benefits |
| VV | 2/10/00 TDI Employment Verification Report |
| WW | Handwritten notes of Lorraine Cipriano re: 2/23 telephone conference with TDI |
| XX | 3/3/00 letter from Butler to Petrarca indicating that her TDI benefits expired on 11/20/99 and she has been receiving her gross pay since that date |
| YY | 4/13/00 letter from Butler to Petrarca re: requests for verification of her re-application for TDI benefits |
| ZZ | 4/24/00 letter from Butler to Petrarca re: third request for TDI information |
| AAA | 5/17/00 letter from Butler to Petrarca re: Petrarca's suspension during investigation of TDI benefits received |
| BBB | Certification of Records from TDI with attached records of Petrarca |

**TAX RETURNS, PAYSTUBS AND INCOME DOCUMENTS:**

| **Exhibit No.** | **Description** |
|---|---|
| CCC | 2002 income tax returns w/attached backup material |
| DDD | 2003 income tax returns with attached backup material |
| EEE | 2004 income tax returns with attached backup material |
| FFF | Payroll history report for period 9/30/99 – 5/25/00 with attachments |

**MEDICAL RECORDS:**

| **Exhibit No.** | **Description** |
|---|---|
| GGG | Butler Hospital: 9/98 |
| HHH | East Side Neurology (Vlad Zayas, MD): 10/04 – 5/05 |
| III | West Bay Psychiatric Associates (Dr. Gallo): 3/25/05 – 3/15/07 |

**PETRARCA PERSONNEL RECORDS:**

| **Exhibit No.** | **Description** |
|---|---|
| JJJ | Employment / Occupational Classification Record- Petrarca |
| KKK | 5/24/90 handwritten report of Bolduc re: Carol Wiberg's sexual harassment complaint against Pat Domenicone |
| LLL | Payroll record for 4/20/00 |

**DOCUMENTS CONCERNING OTHER EMPLOYEES:**

| **Exhibit No.** | **Description** |
|---|---|
| MMM | 6/25/02 TDI Employment Verification Report- Keith Cotnoir ("Cotnoir") |
| NNN | 9/3/02 letter from Chaffee to Cotnoir requesting copy of TDE determination of benefits letter |
| OOO | 9/3/02 email from Chaffee to Lynne Linden re: Cotnoir TDI claim |
| PPP | 7/30/97 letter from Bolduc to Gerald Porter ("Porter") re: written warning for unauthorized absences |
| QQQ | 11/5/97 Agreement Regarding Gerald Porter |
| RRR | Employment / Occupational Classification Record – Susan (Green) Scinto |
| SSS | Employment / Occupational Classification Record –Porter |
| TTT | Employment / Occupational Classification Record – Richard Kala |
| UUU | Employment / Occupational Classification Record – Pasquale Domenicone |

**MISCELLANEOUS DOCUMENTS:**

| **Exhibit No.** | **Description** |
|---|---|
| VVV | 2 page handwritten letter re: "Questions they ask you" |

| | |
|---|---|
| WWW | 5 pages of typewritten notes with "Gave Pat" at top |

**D. Anticipated Motions in Limine**

Defendants are in the process of determining what, if any, motions ***in limine*** will be filed, and respectfully reserve the right to file such motions as soon as possible.

**E. Proposed Jury Instructions**

Please see Exhibit A, attached, for Defendant's proposed jury instructions.

**F. Probable Length of Trial**

Defendant estimates that the time required for trial will be seven (7) days.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO., NEW ENGLAND GAS CO., NARRAGANSETT ELECTRIC CO., and NATIONAL GRID U.S.A.

By its attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Steven Richard (#4403)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
srichard@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: April 18, 2007

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a true and accurate copy of the within document to the following persons this 18th day of April, 2007.

Via Regular Mail, Postage Prepaid

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Via Regular Mail, Postage Prepaid

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

/s/ Neal J. McNamara

# EXHIBIT A

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

INSTRUCTION NO. 1

**Title VII of the Civil Rights Act of 1964**

The plaintiff has asserted claims under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment. The plaintiff makes three distinct claims under Title VII. First, she claims that that she was subjected to a hostile work environment during her employment. Second, she claims that she was terminated in June 2000 because of her gender. Third, she claims that her termination was an act of retaliation for complaining about the alleged sexual harassment. In order to recover damages, the plaintiff must prove every element of at least one of her claims. Each claim stands on its own and must be proven separately.

New England Gas, on the other hand, denies the plaintiff's claims and contends that it did not subject the plaintiff to a hostile work environment, or discriminate or retaliate against the plaintiff when it decided to terminate her. New England Gas also claims that it took reasonable measures to prevent sexually harassing behavior and provided the plaintiff with means to prevent or correct any alleged sexually harassing behavior. New England Gas further contend that on those occasions when the plaintiff did complain of allegedly sexually harassing behavior, it took reasonable and prompt action to investigate and remediate any alleged harassment. On other occasions, New England Gas contends that the plaintiff did not take advantage of the means to prevent or correct any alleged sexually harassing behavior provided to her. New England Gas also contends that its decision to terminate the plaintiff was based on legitimate reasons and was not the result of gender discrimination or retaliation.

INSTRUCTION NO. 2

**Burden of Proof on Plaintiff**

In this case, like most, the law places the burden of proof on the plaintiff. All this means is that the law imposes upon the plaintiff the obligation or responsibility of proving her claim. The law requires that one who advances a proposition has the burden of sustaining its validity. Because the plaintiff is advancing the proposition that the defendant should be held responsible for some harm it caused to the plaintiff, it is the plaintiff who has the responsibility of producing evidence which leads you to believe that what the plaintiff claims is more likely true than not. New England Gas, on the other hand, has no obligation to produce evidence concerning the plaintiff's claim. New England Gas does not have to disprove the plaintiff's claims. The burden is on the plaintiff to prove each of the elements of her claim to you.

**SUPPORTIVE AUTHORITY**

Rhode Island Model Civil Jury Instructions (2002), § 301.1.

INSTRUCTION NO. 3

**Preponderance of the Evidence**

In addition to imposing the burden of proof on a plaintiff, the law also requires that the proof and support of any given claim reach a certain level or standard. In this case the level of proof required is proof by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. So, proof by the preponderance of the evidence means proof by the greater weight of the evidence. In other words, a claim must be proved by evidence that weighs more persuasively in the minds of jurors. In proving her claim, a plaintiff must prove each and every element of that claim by a preponderance of the evidence.

**SUPPORTIVE AUTHORITY**

Rhode Island Model Civil Jury Instructions (2002), § 302.1; O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.61.

INSTRUCTION NO. 4

**Hostile Work Environment Sexual Harassment in Violation of Title VII**

As I mentioned, Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee as to terms and conditions of employment because of the employee's sex. It follows that an employer may not lawfully require an employee to work in a sexually hostile work environment, because such an environment is a discriminatory one. In this case, the plaintiff contends that New England Gas subjected her to a sexually-hostile work environment during her employment.

To establish that she was subjected to a sexually hostile working environment, the plaintiff must prove, by a preponderance of the evidence, the following:

(1) the plaintiff was subjected to sexually offensive conduct or statements because she was a female;

(2) such conduct or statements were unwelcome and had not been invited or solicited, directly or indirectly, by the plaintiff's own acts or statements;

(3) the sexual conduct or statements in the workplace were severe or pervasive, and resulted in a work environment that was so permeated with discriminatory intimidation, ridicule or insult that those sexual conduct or statements materially altered the conditions of the plaintiff's employment and created an abusive working environment;

(4) a reasonable person, as distinguished from someone who is highly sensitive, would have found the workplace to be hostile or abusive; and

(5) the plaintiff herself believed the workplace to be hostile.

Whether a workplace is sexually "hostile" can be determined only by looking at all the circumstances, including the frequency of the conduct; its severity; whether it was physically threatening or humiliating; whether it affected the employee's mental

INSTRUCTION NO. 4 (CONT'D)

or emotional well-being; and whether it unreasonably interfered with the employee's work performance.

A claim of sexual harassment must be measured by the realities of the workplace environment. Federal antidiscrimination laws are not general civility codes. The conduct must be sexual in nature, and not merely offensive, obnoxious or unpleasant. You must distinguish between simple joking, teasing, or flirting and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive. Conduct that only amounts to ordinary socializing in the workplace, such as occasional horseplay, sexual flirtation, isolated, sporadic or occasional use of inappropriate language, gender related jokes, and occasional teasing, does not constitute an abusive or hostile work environment.

Whether gender related comments, slurs and other actions constitutes a hostile work environment typically depends on their quantity, frequency and severity. To be deemed pervasive, they must be sufficiently continuous and concerted. Only extreme conduct amounting to a material change in the terms and conditions of employment is actionable.

If you find that a reasonable person in the plaintiff's position would not have found the other employees' conduct to be sexual harassment, then you must return a verdict in favor of New England Gas on the plaintiff's hostile environment claim. If you find that the plaintiff has failed to demonstrate by a preponderance of the evidence that she was subjected to a sexually hostile work environment, then you must return a verdict in favor of defendants on the plaintiff's hostile environment claim.

INSTRUCTION NO. 4 (CONT'D)

If, however, you find that the plaintiff has demonstrated by a preponderance of the evidence that she was subjected to a sexually hostile work environment, then you still must consider whether New England Gas should be held liable.

**SUPPORTIVE AUTHORITY**

Faragher v. City of Boca Raton, 524 U.S. 775, 786-89 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

INSTRUCTION NO. 5[4]

**Vicarious Liability**

In the event that you find that the plaintiff was subjected to a hostile work environment, New England Gas is not liable unless you find that the plaintiff has proven, by a preponderance of the evidence, that New England Gas knew or should have known about the hostile work environment yet unreasonably failed to stop or correct it. Thus, even though you may have already determined that the plaintiff was in fact exposed to a sexually hostile work environment, that alone is not determinative of New England Gas' liability. Your verdict must be for New England Gas unless you find that the Plaintiff has proven by a preponderance of the evidence either that (a) New England Gas knew about the hostile work environment, OR (b) the hostile environment was so pervasive and unconcealed that knowledge on the part of New England Gas may be inferred; AND that the plaintiff has also proven that (c) that New England Gas did not take reasonable action to stop or correct the hostile environment. If you find that New England Gas provided the plaintiff with a means to make a complaint of discrimination, took such complaints seriously, and acted reasonably to stop or correct inappropriate behavior, then you must find in favor of New England Gas.

**SUPPORTIVE AUTHORITY**

Noviello v. City of Boston, 398 F.3d 76, 96-97 (1st Cir. 2005).

---

[4] As discussed in Defendants' pretrial memorandum, footnotes 1 and 2, should the court determine (a) that Bolduc was, in fact, a "supervisor" under Title VII for vicarious liability purposes, or (b) that such question is a question of fact for jury, Defendants respectfully request the opportunity to replace Instruction No. 5 with Instruction No. 5a (on Bolduc's status as "supervisor") and Instruction No. 5b (on the *Faragher/Ellerth* defense), as well as a supplemental verdict form.

INSTRUCTION NO. 6

**Continuing Violation**

Under Title VII, a plaintiff must file a complaint of discrimination with the proper agency within 300 days of the alleged act of discrimination. If you find that the plaintiff has proven by a preponderance of the evidence that she was subjected to a hostile work environment for which New England Gas should be held liable, the plaintiff can only recover for those discriminatory actions falling within that 300 day period unless she can prove that she was subjected to a continuing violation.

In order to establish a continuing violation, the plaintiff must show:

(a) that one act contributing to her hostile environment claim occurred on or after April 26, 1999; AND

(b) that that the series of acts contributing to the hostile environment were sufficiently continuous and concerted so as to constituted a single, continuing act of discrimination.

In determining whether certain acts are sufficiently continuous and concerted so as to establish a single, continuing act of discrimination, you may consider whether the acts of sexual harassment are or are not discrete in time or circumstances; whether they do or do not have a substantial relationship to one another; whether they do or do not reinforce each other; and whether the acts can or cannot reasonably be linked together into a single chain or a single course of conduct.

If you find that the plaintiff was subjected to a hostile work environment for which New England Gas should be held liable, and if you find that a continuing violation did occur, you may award the plaintiff damages for the entire period for which the hostile environment existed. If

INSTRUCTION NO. 6 (CONT'D)

you find that the plaintiff was subjected to a hostile work environment for which New England Gas should be held liable but you find that a continuing violation did not occur, you must limit your award to such damages as resulted from the hostile environment existing from April 26, 1999 to the end of the plaintiff's employment. Of course, if you find that the plaintiff was not subjected to a hostile environment for which New England Gas is liable, you may not award the plaintiff any damages on her hostile work environment claim.

**SUPPORTIVE AUTHORITY**

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-18 (2002); Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002); Garrison v. Burke, 165 F.3d 565, 570 (7th Cir. 1999); Costanzo v. United States Postal Serv., 2003 WL 1701998, at *6, *11 n.12 (S.D.N.Y. March 31, 2003); Paquin v. MBNA Marketing Sys., Inc., 233 F. Supp. 2d 58, 63 (D. Me. 2002).

INSTRUCTION NO. 7

**Gender Discrimination (Termination)**

The plaintiff also contends that New England Gas engaged in gender discrimination in violation of Title VII of the Civil Rights Act of 1964 when it terminated her. To succeed on her claim, the plaintiff must prove by a preponderance of the evidence that the defendant terminated her because of her gender.

**SUPPORTIVE AUTHORITY**

Thomas v. Eastman Kodak Co., 183 F.3d 38, 58 (1st Cir. 1999).

INSTRUCTION NO. 8

**Determinative Factor/Causation**

The plaintiff need not show that gender discrimination was the only or predominant factor that motivated New England Gas. In fact, you may decide that other factors were involved as well in New England Gas's decision-making process. In that event, in order for you to find for the plaintiff, you must find that she has proven that, although there were other factors, she would not have been terminated without the gender discrimination. Put another way, the plaintiff's gender must have been a determinative factor in New England Gas' decision to terminate her in order for you to find in her favor. If you find that the plaintiff was discharged for reasons other than her gender, you must find for New England Gas.

**SUPPORTIVE AUTHORITY**

Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 34 (1st Cir. 2001); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000).

INSTRUCTION NO. 9

**Pretext**

New England Gas has stated a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff. The plaintiff now has the burden of proving by a preponderance of the evidence that the legitimate reason offered by New England Gas was pretextual, or, in other words, was a cover up for unlawful discriminatory intent on the part of New England Gas. If you find that the plaintiff has proven that New England Gas's stated reason was pretextual, you may find for the plaintiff. Otherwise, you must find for New England Gas.

**SUPPORTIVE AUTHORITY**

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

INSTRUCTION NO. 10

**At Will Employment**

The plaintiff was an at-will employee, which means that New England Gas retained the right to terminate her employment at any time and for any reason, so long as that reason was not discriminatory. An employer may discharge an employee for any other reason, good or bad, for or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of New England Gas, even though you personally may not favor the decision or would have made a different decision under the circumstances.

**SUPPORTIVE AUTHORITY**

Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1996); see ABA Model Jury Instructions, Employment Litigation, at 87 (2d ed.).

INSTRUCTION NO. 11

**Retaliation**

The plaintiff has also alleged that her termination was retaliation by New England Gas because she complained of perceived discriminatory conduct by her co-employees. To prevail on her claim of retaliation, the plaintiff must prove, by a preponderance of the evidence, that:

(1) the plaintiff complained of her employer's practices that she reasonably and in good faith believed constituted unlawful discrimination;

(2) New England Gas took adverse action against her, such that the action might have dissuaded a reasonable worker from making a charge of discrimination; AND

(3) the plaintiff's complaint of discrimination was a motivating factor in the decision to take the adverse action against her.

You should be mindful that the law requires only that an employer not retaliate against an employee because of the employee's complaint of discrimination. So far as you are concerned in this case, an employer may discharge an employee for any other reason, good or bad, for or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of New England Gas, even though you personally may not favor the decision or would have made a different decision under the circumstances. Neither does the law require an employer to extend any special or favorable treatment to the plaintiff because she has complained of discrimination.

If you determine that the plaintiff has proven each of these elements by a preponderance of the evidence, then you may find for the plaintiff on her retaliation claim. If you find that the plaintiff has failed to prove any of these elements by a preponderance of the evidence, then you must find for New England Gas.

INSTRUCTION NO. 11 (CONT'D)

**SUPPORTIVE AUTHORITY**

Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405 (2006); Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004); see ABA Model Jury Instructions, Employment Litigation, at 86-88 (2d ed.).

INSTRUCTION NO. 12

**Damages: Generally and Burden on Plaintiff**

The fact that I instruct you on damages does not represent any view by me that you should or should not find the defendant liable. If, however, you do find that the defendant discriminated unlawfully against the plaintiff, then you must determine an amount that is fair compensation for the plaintiff's damages. The burden is on the plaintiff to prove by a fair preponderance of the evidence that she has suffered damages as a proximate result of defendant's allegedly discriminatory conduct. The burden is also on the plaintiff to prove by a preponderance of the evidence the extent or amount to which she has suffered loss. The plaintiff must prove by a fair preponderance of the evidence the particular element of damage that she suffered and the extent of such damage.

**SUPPORTIVE AUTHORITY**

Tom Shaw, Inc. v. Derecktor, 639 F. Supp. 1064 (D.R.I. 1986); see O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.90.

INSTRUCTION NO. 13

**Compensatory Damages**

If you find that the defendant discriminated unlawfully against the plaintiff, you may award compensatory damages only for injuries that the plaintiff proves were caused by the defendant's allegedly wrongful conduct. The damages you award must be fair compensation – no more and no less.

You may award damages for any pain, suffering, or mental anguish that the plaintiff experienced as a consequence of the defendant's allegedly discriminatory termination of the plaintiff. You may not award damages for any pain, suffering, or mental anguish resulting from events or circumstances unrelated to the plaintiff's allegations of employment discrimination. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. However, any award you make should be fair in light of the evidence presented at trial.

You may not award the plaintiff any damages for back pay. In other words, your total award of damages may not include any alleged lost wages between the time of the plaintiff's discharge and the date of trial. Also, you may not award the plaintiff any damages for future lost wages.

In computing the plaintiff's compensatory damages, you must not consider or attempt to estimate the plaintiff's expenditures in connection with this litigation, including any attorney's fees. Additionally, compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize New England Gas. Nor can you award damages for distress arising from this lawsuit.

INSTRUCTION NO. 13 (CONT'D)

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing the award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. The law does not require that the plaintiff prove her damages with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

**SUPPORTIVE AUTHORITY**

O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.90; Zimmerman v. District Fed. Credit Union, 262 F.3d 70, 79 (1st Cir. 2001).

# **DEFENDANT'S PROPOSED VERDICT FORM**

COUNT I – HOSTILE WORK ENVIRONMENT

1. Do you find that the plaintiff was subjected to a hostile work environment on or after April 26, 1999? YES _______ NO _______

*(If you answered YES, proceed to Question No. 2.) (If you answered NO, you may not award the plaintiff any damages for Count I, her hostile work environment claim. Proceed to Question No. 4.)*

2. Do you find that the plaintiff was subjected to a hostile work environment on or before April 25, 1999, that was substantially related to, and can be reasonably linked together as part of a single chain or course of conduct with, the hostile work environment on or after April 26, 1999? YES _______ NO _______

*(Proceed to Question No. 3.)*

3. Do you find that New England Gas took reasonable action to stop or correct any hostile work environment directed at the plaintiff once it was made aware of the plaintiff's complaints? YES _______ NO _______

*(If you answered YES, you may not award the plaintiff any damages for Count I, her hostile work environment claim. Proceed to Question No. 4.) (If you answered NO, you may assess against New England Gas those damages that the plaintiff has proven by a preponderance of the evidence resulted from the hostile work environment. <u>If you answered NO to Question No. 2</u>, the damages you assess in relation to Count I must be limited to damages which the plaintiff has proven by a preponderance of the evidence resulted from the hostile work environment that existed on or after April 26, 1999, <u>but not before that date</u>. Proceed to Question No. 4.)*

<u>COUNT II – GENDER DISCRIMINATION</u>

4. Do you find that the plaintiff has proven by a preponderance of the evidence that New England Gas terminated her because of her gender rather than for a legitimate reason?

YES ______ NO ______

*(If you answered NO, you may not award the plaintiff any damages for Count II, her gender discrimination claim. Proceed to Question No. 5.) (If you answered YES, you may award the plaintiff damages that she has proven by a preponderance of the evidence resulted from her termination, based on my instructions to you regarding damages. Proceed to Question No. 5.)*

<u>COUNT III – RETALIATION</u>

5. Do you find that the plaintiff has proven by a preponderance of the evidence that New England Gas terminated her because of retaliation rather than for a legitimate reason?

YES ______ NO ______

*(If you answered NO, you may not award the plaintiff any damages for Count III, her retaliation claim. Proceed to Question No. 6.) (If you answered YES, you may award the plaintiff damages that she has proven by a preponderance of the evidence resulted from her termination, based on my instructions to you regarding damages. Proceed to Question No. 6.)*

<u>DAMAGES</u>

6. If you found in favor of the plaintiff on Count I, Count II, and/or Count III, what amount of damages do you award? $ ____________________