UNITED STATE DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA,<br>Plaintiff,<br><br>v.<br><br>SOUTHERN UNION CO.,<br>NEW ENGLAND GAS CO.,<br>NARRAGANSETT ELECTRIC CO.<br>& NATIONAL GRID U.S.A.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 04-310 S |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE WITNESSES WHO LACK PERSONAL KNOWLEDGE OF PLAINTIFF'S WORKING CONDITIONS AND TERMINATION**

Pursuant to Fed. R. Evid. 401, 402, 403, and 602, Defendants Southern Union Co., New England Gas Co., and Narragansett Electric Co. hereby move *in limine* to exclude Wendy Smith, Roberta Faria, and Brenda Shanley (witnesses numbered 34-36 in Plaintiff's pretrial memorandum) on the ground that their testimony would be irrelevant, confusing, misleading, and a waste of time. Ms. Smith, Ms. Faria, and Ms. Shanley worked in a completely different department than Plaintiff; none worked with Ed Bolduc; and none had more than very limited involvement with Bud Butler. These witnesses have no personal knowledge of (a) the working conditions experienced by Plaintiff or (b) the facts and motivations relative to Plaintiff's termination. Thus, their testimony is irrelevant to Plaintiff's case and therefore a waste of time, and, equally importantly, could confuse and/or mislead the jury into deciding the case on the basis of the witness' experiences, rather than those of the Plaintiff. For these reasons, the Court should exclude Ms. Smith, Ms. Faria, and Ms. Shanley from testifying at trial. In further support of this motion, Defendants submit the attached memorandum of law.

Respectfully submitted,
DEFENDANTS SOUTHERN UNION CO., NEW ENGLAND GAS CO., and NARRAGANSETT ELECTRIC CO.

By its attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Steven Richard (#4403)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
srichard@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: April 30, 2007

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a true and accurate copy of the within document to the following persons this 30th day of April, 2007.

Via Regular Mail, Postage Prepaid

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Via Regular Mail, Postage Prepaid

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

/s/ Neal J. McNamara

UNITED STATE DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROL PETRARCA, Plaintiff, | : | |
| v. | : | C.A. No. 04-310 S |
| SOUTHERN UNION CO., NEW ENGLAND GAS CO., NARRAGANSETT ELECTRIC CO. & NATIONAL GRID U.S.A., Defendants. | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE WITNESSES WHO LACK PERSONAL KNOWLEDGE OF PLAINTIFF'S WORKING CONDITIONS AND TERMINATION**

Defendants have moved *in limine* to exclude three proposed witnesses – Wendy Smith, Roberta Faria, and Brenda Shanley – who have no personal knowledge of Plaintiff's working conditions or the facts and motivations relative to Plaintiff's termination. None of the three proposed witnesses worked in Plaintiff's department or had any interactions with Ed Bolduc or Bud Butler, the two primary persons to whom Plaintiff ascribes discriminatory conduct. In short, the testimony of these witnesses is irrelevant to Plaintiff's claim of hostile environment and her claim that her termination was due to gender discrimination or retaliation, and would therefore constitute a waste of time. Furthermore, if the three witnesses testify as Plaintiff has indicated they will – i.e., regarding completely unrelated "incidents of discrimination that she [allegedly] experienced while working for the Defendants" – there is a substantial danger that the jury will be misled or confused and decide the case on an improper basis. For these reasons, discussed in greater detail below, the Court should exclude Ms. Smith, Ms. Faria, and Ms. Shanley from testifying at trial.

## I. Factual Background

Plaintiff alleges three distinct counts in this action. First, she alleges that Defendants subjected her to a hostile work environment for the duration of her approximately ten-year employment tenure. In connection with this claim, Plaintiff alleges that she was subjected to sexual advances by a co-worker, Richard Kala in or about 1995, and that her supervisor, Ed Bolduc, subjected her to abusive and belittling conduct. Plaintiff further alleges that despite her complaints, Defendants did not take prompt action to stop or correct the alleged harassment.

Plaintiff's second and third distinct counts reflect her allegation that Defendants terminated her for a discriminatory or retaliatory reason. Plaintiff claims that Defendants' Director of Labor Relations, Bud Butler, terminated her in June 2000 not for the stated reason that she had willfully avoided informing Defendants' of her receipt of state disability payments while simultaneously receiving sick pay from the company to which she was not entitled, but because of her gender, or, alternatively, because she had filed a complaint of discrimination in August 1999.

The three proposed witnesses discussed in this motion never worked in Plaintiff's department, never worked with Kala or Bolduc, and never interacted in any significant way with Butler. They have no personal knowledge of the conditions of Plaintiff's employment or of the motivations of either Bolduc or Butler.

For instance, Ms. Shanley was a consultant in New England Gas Co.'s IT Services Department. Her complaint of discrimination, filed in 2000 in Rhode Island Superior Court, contains no reference whatsoever to Kala, Bolduc, Butler, or any other person even tangentially related to Plaintiff's instant action. (A copy of Ms. Shanley's Complaint is attached as Exhibit A.) Furthermore, Ms. Shanley's allegations of discrimination are factually poles apart from

Plaintiff's. Ms. Shanley does not allege harassment or retaliation, and her claim of discriminatory termination based on sex has absolutely no common facts or circumstances with Plaintiff's. In short, Ms. Shanley has no personal knowledge of (a) Plaintiff's working conditions; (b) the actions or motivations of those New England Gas Co. employees who Plaintiff alleges were the "bad actors" relative to Plaintiff's lawsuit; and/or (c) the factual circumstances of Plaintiff's termination.

Likewise, Ms. Faria and Ms. Smith also worked in an entirely different department with entirely different individuals, and neither of their respective allegations of discrimination contains any similarities to Plaintiff's. Both women worked in the Meter Reading department, and therefore had no interaction with Kala and Bolduc, and minimal interaction with Butler. Both Ms. Faria and Ms. Smith alleged, in charges filed at the Rhode Island Commission for Human Rights ("Commission"), that in the spring of 2004 they were each improperly passed over for an open position in the Collections department that was ultimately filled by a younger male employee. (Copies of Ms. Faria's and Ms. Smith's charges of discrimination are attached as Exhibit B and Exhibit C, respectively.) Both charges alleged that age and sex discrimination accounted for the refusal to grant the transfers.

In position statements filed with the Commission, New England Gas Co. explained that both women were passed over because the company initially believed that they lacked relevant, legally-mandated experience in handling "turn-ons" and "shuts-offs" of gas lines. (Copies of New England Gas Co.'s position statements responding to Ms. Faria's and Ms. Smith's charges, respectively, are attached as Exhibit D and Exhibit E.) Both women pursued the grievance procedure outlined in the operative collective bargaining agreement, and both grievances were settled when the company agreed to give Ms. Faria and Ms. Smith trial periods in the Collections

department. Ms. Faria voluntarily returned to her prior position as meter reader after one week in Collections, and withdrew her charge at the Commission. Ms. Smith remained in the Collections department and similarly withdrew her charge.

Like Ms. Shanley, neither Ms. Faria nor Ms. Smith alleged harassment or retaliation and their claim of disparate treatment based on sex have absolutely no common facts or circumstances with Plaintiff's. In sum, Ms. Faria and Ms. Smith also have no personal knowledge of (a) Plaintiff's working conditions; (b) the actions or motivations of those New England Gas Co. employees who Plaintiff alleges were the "bad actors" relative to Plaintiff's lawsuit; and/or (c) the factual circumstances of Plaintiff's termination.

## II. Legal Analysis

"[A] trial judge has broad discretion in ruling on the admissibility of evidence." O'Brien v. Papa Gino's of America, Inc., 780 F.2d 1067, 1076 (1st Cir. 1986); see also Ruffin v. City of Boston, 146 Fed. Appx. 501, 508 (1st Cir. 2005) (unpublished). "[A]necdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.'" Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 856 (10th Cir. 2000) (quoting Simms v. State of Oklahoma, 165 F.3d 1321, 1330 (10th Cir. 1999)). Plaintiff can meet this requirement by showing that the same supervisors were involved in prior discriminatory employment actions. Id. Absent any evidence connecting Plaintiff's allegations to the anecdotal evidence to be elicited through other witnesses, such evidence should be precluded because it is "entirely irrelevant" and its admission would "protract the trial by taking the testimony too far afield from [Plaintiff's] actual claims." Martin v. Reno, 2000 U.S. Dist. LEXIS 18278, at *10 (S.D.N.Y. Dec. 19, 2000) (citing Heno, 208 F.3d at 856).

For the same reason, evidence of discrimination that allegedly occurred ***after*** the events that form the basis of Plaintiff's claims is also inadmissible. Heno, 208 F.3d at 856 ("Discriminatory incidents which occurred either several years before the contested action or anytime after are 'not sufficiently connected to the employment action in question to demonstrate pretext.'"). "Testimony about later events is even less relevant and of less probative value than evidence of prior bad acts generally, because the logical relationship between the circumstances of the character testimony and the employer's decision to terminate is attenuated." Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999).

In similar circumstances, several courts have excluded evidence of discrimination unconnected to Plaintiff's claims. See Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 155-56 (6th Cir 1988) (holding that trial court committed reversible error by admitting co-employee testimony of alleged discrimination where such testimony was irrelevant because different decision-makers were involved and prejudicial because, inter alia, it was likely to mislead the jury under Fed. R. Evid. 403); see also Jackson v. NTMedia, 199 Fed. Appx. 653, 664-65 (10th Cir. 2006) (unpublished) (affirming exclusion of co-employee's proffered testimony of acts exhibiting age discrimination by corporate managers in different location from, and otherwise unrelated to, the plaintiff); Kidd v. Pennsylvania, 37 Fed. Appx. 588, 592-93 (3d Cir. 2002) (unpublished) (exclusion of co-employee testimony proper where "none of the witnesses could testify from first-hand knowledge about the relevant procedures" in the location where the plaintiff worked); Keller v. City of Wilmington, 2006 U.S. Dist. LEXIS 14136, at *4-6 (D. Del. March 30, 2006) (exclusion of proffered co-employee testimony proper where "Plaintiffs were employed in different departments, performing different jobs, and working under different supervision" because testimony "would serve only to confuse and mislead the jury, a result

which would cause undue prejudice to Defendants"); Rhyce v. Martin, 2003 U.S. Dist. LEXIS 135, at *8 (E.D. La. Jan. 6, 2003) ("In order for [co-employee's testimony alleging discrimination] to be considered relevant, it should be with regard to other employees who actually worked with the plaintiff at the time the plaintiff encountered the alleged discrimination and who encountered the same experiences as plaintiff in relation to the male employees at that place of employment."), Martin v. Reno, 2000 U.S. Dist. LEXIS 18278, at *10.

Here, neither Ms. Shanley, Ms. Faria, nor Ms. Smith can offer any testimony that is relevant to Plaintiff's claims of harassment, discrimination, and/or retaliation. As a threshold matter, both Ms. Faria's and Ms. Smith's allegations relate to a failure to transfer that occurred in 2004 – some fours years after the events underlying Plaintiff's claims. This raises a strong presumption that their testimony is irrelevant to Plaintiff's case. See Heno, 208 F.3d at 856; Coletti, 165 F.3d at 777. Furthermore, because both Ms. Faria's and Ms. Smith's testimony would involve alleged discrimination by the company in failing to grant them internal transfers, any factual connection to Plaintiff's allegations is extremely tenuous, further militating in favor of exclusion. See Rhyce, 2003 U.S. Dist. LEXIS 135, at *9 (excluding co-employees' testimony because their "alleged discriminatory failure to hire claim is not factually similar to plaintiff's disparate treatment claim"). Nor does Ms. Faria or Ms. Smith allege that the company's decision not to offer them the requested transfer was made by any of the same persons whose conduct is at issue relative to Plaintiff's claims. See Keller, 2006 U.S. Dist. LEXIS 14136, at *5 (excluding "those witnesses whose employment conditions were impacted by decision makers different than those of Plaintiffs"); see also Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 733 (7th Cir. 1998) ("Only evidence on the attitudes of the employees involved in the decision to fire the plaintiff is relevant.").

Ms. Shanley's testimony would be equally irrelevant. Ms. Shanley, like Ms. Faria and Ms. Smith, worked in an entirely different department, with different job responsibilities, and under different supervisors. Ms. Shanley's Superior Court Complaint does not mention the name of even one person who was involved in Plaintiff's employment and termination. Further, Ms. Shanley's allegations of discrimination do not in any way resemble Plaintiff's, and she does not allege harassment or retaliation. These facts render her testimony inadmissible on the ground of relevance alone. See Rhyce, 2003 U.S. Dist. LEXIS 135, at *11 (excluding co-employee testimony where neither plaintiff nor proffered witness "held similar responsibilities, were evaluated on the same work activities, or shared similar work experiences within their respective employments with the [defendant]"); Keller, 2006 U.S. Dist. LEXIS 14136, at *6 (excluding co-employee testimony where "Plaintiffs were employed in different departments, performing different jobs, and working under different supervision").

Even if the Court were to find that testimony from Ms. Shanley, Ms. Faria, and Ms. Smith may be marginally relevant, these witnesses should still be excluded under Rule 403 on the grounds that the probative value of their testimony would be far outweighed by the danger of prejudice to the Defendants and the likelihood that the jury would be misled. In Schrand v. Federal Pacific Electric Company, an age discrimination case, the Sixth Circuit explained why co-employee testimony regarding alleged discrimination unrelated to that alleged by Plaintiff should be excluded pursuant to Rule 403:

> With no other direct evidence of age discrimination in the case, the impact of the two former employees' testimony would be great. Thus, even if that evidence were relevant, we believe its probative value was substantially outweighed by the danger of unfair prejudice flowing from its admission. Although it had no direct bearing on the issue to be decided - whether Schrand was discharged because of his age - this testimony embellished the circumstantial evidence directed to that issue by adding "smoking

> gun" type evidence. It offered an emotional element that was otherwise lacking as a basis for a verdict in Schrand's favor. See Notes of Advisory Committee to Rule 403.
>
> In addition to creating prejudice that substantially outweighed its probative value, the testimony tended to confuse the issue by focusing the jury's attention on two totally unrelated events, a consideration under Rule 403. If the jury was convinced that the testimony of [co-employees] Owens and Dolan was truthful, there was a distinct danger that the jury would assume a connection that was never proven between the terminations of the two witnesses and that of Schrand.

851 F.2d at 156; see also Keller, 2006 U.S. Dist. LEXIS 14136, at *5 (denying motion for new trial because, inter alia, trial court "properly concluded that testimony regarding the circumstances of employees subjected to different conditions would serve only to confuse and mislead the jury, a result which would cause undue prejudice to Defendants").

The same concerns are present in the instant case. Even if the proffered testimony from Ms. Shanley, Ms. Faria, and Ms. Smith was tenuously connected to Plaintiff's claims, which it is not, the danger that the jury would improperly weigh such testimony in deciding whether *Carol Petrarca* was the victim of discrimination or retaliation is too great. Fed. R. Evid. 403. In order to avoid unfairly prejudicing the defense, the Court should preclude Plaintiff from calling these witnesses.

## III. Conclusion

For all of the foregoing reasons, Defendants respectfully request that the Court GRANT their motion *in limine* to preclude Plaintiff from calling Wendy Smith, Roberta Faria, and Brenda Shanley at trial.

Respectfully submitted,
DEFENDANTS SOUTHERN UNION CO., NEW ENGLAND GAS CO., and NARRAGANSETT ELECTRIC CO.

By its attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Steven Richard (#4403)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
srichard@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: April 30, 2007

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a true and accurate copy of the within document to the following persons this 30th day of April, 2007.

Via Regular Mail, Postage Prepaid

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Via Regular Mail, Postage Prepaid

Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

/s/ Neal J. McNamara

# EXHIBIT A

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

BRENDA SHANLEY

Plaintiff,

v.

THE PROVIDENCE GAS COMPANY,

Defendant.

C. A. No. __________

# COMPLAINT

## NATURE OF ACTION

1. This Complaint arises out of allegations of employment discrimination based on sex.

## JURISDICTION

2. Plaintiff invokes the jurisdiction of this Court pursuant to R.I.G.L. 28-5-1 et seq. and 42-112-1 et seq.

## PARTIES

3. Brenda Shanley (hereinafter "Plaintiff"), is a resident of the State of Rhode Island and a United States citizen.

4. Defendant, The Providence Gas Company (hereinafter the "Gas Company"), is a corporation doing business in the State of Rhode Island.

## ADMINISTRATIVE PROCEDURES

5. Charges of discrimination, based upon sex, were timely filed with the Rhode Island Commission for Human Rights (hereinafter the "Commission").

6. On or about July 13, 2000, the Commission issued a "Notice of Right To Sue."

7. This Complaint has been filed within ninety (90) days of the receipt of the "Notice of Right to Sue."

## STATEMENT OF FACTS

8. In about February, 1988, Plaintiff began working for the Gas Company.

9. From about the time that Plaintiff was hired until about 1990, she was a secretary in the Work Station Division which is part of the IT Services Department.

10. In about 1990, Plaintiff was promoted to the position of WSS Consultant. She continued to work in the Work Station Division.

11. In about March, 1998, Plaintiff was at a Grade 9 level and was still a WSS Consultant in the Work Station Division.

12. In March, 1998, Plaintiff applied for a Grade 11 position in a different department of the Gas Company. After Plaintiff was offered this new position, Plaintiff informed her then supervisors in the Work Station Division, Steve Ferrante (hereinafter "Ferrante") and Peter Gill (hereinafter "Gill"), that she was leaving to accept this new position.

13. After Plaintiff informed Ferrante and Gill of her decision to leave, they told Plaintiff that, if she stayed in the Work Station Division, they would promote her to Team Leader which was a Grade 11 position.

14. After accepting the offer, Plaintiff began to work as a Team Leader in the Work

Station Division at about the end of March, 1998.

15. When Plaintiff was given the title of Team Leader, she was the first female to ever hold a supervisory position in the IT Services Department.

16. Although Plaintiff was given the title of Team Leader in March, 1998, she had been performing the duties and responsibilities of Team Leader since about 1993.

17. As of the time that Plaintiff became a Team Leader, her immediate supervisor was Ferrante.

18. In about January or February, 1998, Edward Cabral (hereinafter "Cabral"), who was Ferrante's immediate supervisor, left the Company. However, in about September, 1998, Cabral returned to the Company and began to work in the IT Services Department.

19. Within a few weeks of Cabral's return to the Company, he told Plaintiff that he did not believe that she should be Team Leader.

20. On or about November 17, 1998, Plaintiff had a review with Ferrante and Cabral. During the review, Plaintiff was told that her job performance was below expectations. Plaintiff was also told that she was being demoted to a grade 9 position and that she was no longer a Team Leader.

21. Prior to November 17, 1998, Plaintiff had never been told that her job performance was below expectations. To the contrary, Plaintiff had received positive feedback about the manner in which she was performing her duties and responsibilities.

22. The day after Plaintiff was demoted, Plaintiff asked Ferrante what her duties and responsibilities were. Although Plaintiff had been stripped of the title of Team Leader, Ferrante informed her that she should continue to perform the duties and responsibilities of Team Leader.

23. Prior to November, 1998, all of Plaintiff's job performance evaluations were at the level of "exceeds expectations."

24. As a direct result of the discriminatory conduct of the Gas Company, Plaintiff was forced to take a medical leave of absence in November, 1998.

25. After about thirteen weeks, Plaintiff returned to the Gas Company from her medical leave of absence.

26. After Plaintiff returned from her medical leave, Ferrante was hostile towards Plaintiff.

27. After Plaintiff returned from her medical leave, Ron Coutu assumed some of her duties and responsibilities. Plaintiff had hired Coutu after she became Team Leader.

28. On or about September 9, 1999, the Gas Company terminated Plaintiff allegedly because she had performed below expectations for two consecutive years.

29. During the entire time that Plaintiff worked for the Gas Company, Plaintiff was never issued any warnings about her job performance or even told that her performance was not satisfactory. Moreover, prior to the time that Plaintiff was fired, she never saw, nor was asked to sign, any job performance evaluations which were below expectations.

30. The Gas Company's proffered reason for demoting and terminating Plaintiff was a pretext for sexual discrimination.

## COUNT I
## (Rhode Island Fair Employment Practices Act, Sections 28-5-1 et seq. ("FEPA"))

31. Plaintiff incorporates by reference Paragraphs 1 through 30 as if fully set forth herein.

32. Defendant, the Gas Company, is an "employer" within the meaning of the FEPA.

33. By the aforesaid actions, the Gas Company intentionally violated the FEPA by

discriminating against Plaintiff based upon her sex.

34. Plaintiff was damaged as a proximate result of the Gas Company's intentional conduct.

**COUNT II**
**Rhode Island Civil Rights Act, Sections 42-112 et seq. ("RICRA")**

35. Plaintiff incorporates by reference Paragraphs 1 through 34 as if fully set forth herein.

36. Defendant, the Gas Company, is covered by the RICRA.

37. By the aforesaid actions, the Gas Company intentionally violated the RICRA by discriminating against Plaintiff based upon her sex.

38. Plaintiff was damaged as a proximate result of the Gas Company's intentional conduct.

**COUNT III**
**(Negligent Training, Retention and Supervision)**

39. Plaintiff incorporates by reference Paragraphs 1 through 38 as if fully set forth herein.

40. Defendant, the Gas Company, had a duty to exercise reasonable care in retaining, training and supervising employees and in preventing wrongful or illegal conduct by its employees and to protect against, detect, monitor, deter, investigate, correct and remedy discrimination.

41. Defendant, the Gas Company, breached the duty of care owed to Plaintiff as set forth above.

42. As a result of the Gas Company's negligence, negligent supervision, and other negligent acts and omissions, Plaintiff has suffered, and will continue to suffer, extreme and severe emotional distress, with resulting physical and emotional manifestations, physical injuries and sickness, mental anguish, inconvenience, loss of enjoyment of life, public humiliation, irreparable

harm to her career, future pecuniary losses, and other non-pecuniary losses and will continue to do so now and in the future.

43. Defendant, the Gas Company, knew or should have known of the unfitness and incompetence of Plaintiff's supervisors including Cabral as well as the sexual discrimination to which Plaintiff was subjected.

**PRAYER FOR RELIEF**

Plaintiff prays that this Court:

(1) declare that the employment practices complained of in this Complaint are unlawful;

(2) order the Defendant to make Plaintiff whole;

(3) order that the Defendant pay Plaintiff compensatory damages;

(4) order that the Defendant pay Plaintiff punitive damages;

(5) retain jurisdiction of this action to ensure full compliance;

(6) order the Defendant to pay Plaintiff costs and expenses and reasonable attorney's fees;

(7) grant such other relief to Plaintiff as the court deems just and proper.

Plaintiff's damages are in an amount sufficient to invoke the jurisdiction of this Court.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Plaintiff,
By his attorney,

Patricia E. Andrews, #4321
170 Westminster Street, Suite 601
Providence, Rhode Island 02903
(401) 421-0966
(401) 351-4802 (Fax)
E-Mail: PEAndrews@aol.com

# EXHIBIT B

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| [X] FEPA | 05EAG 139-11/06 |
| [ ] EEOC | 16JA500075 |

R I Commission For Human Rights and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Roberta M. Faria | (401) 253-2962 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 5 Normand Street, Bristol, RI 02809 | | 11/28/1951 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| New England Gas Company | Cat D (501 +) | (401) 272-5040 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 477 Dexter Street, Providence, RI 02907 | | 007 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| Southern Union Company | (570) 820-2400 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| One Pei Center, Wilkes-Barre, P A 18711 | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[ ] RETALIATION [X] AGE [ ] DISABILITY [ ] OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
*EARLIEST* 04/25/2004 *LATEST* 04/25/2004
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

1. I was subjected to discriminatory terms and conditions of employment by my employer, New England Gas Company/Southern Union Company. I have been employed for approximately thirty-two (32) years and currently hold the position of Meter Reader.

2. Respondent has offered no reason for the discriminatory treatment I was forced to endure.

3. I believe I have been discriminated against on the basis of my age (53) (date of birth November 28, 1951) and sex (female) in that I was passed over for a position I was qualified for. In or around April 2004, a position for a Collector was posted. I had the necessary experience and qualifications for this position because I had previously worked in this capacity. On or about April 25, 2004, my application was rejected ostensibly because I did not have the appropriate relative experience. The other two (2) female employees that applied for the position were also rejected. A younger male employee with less experience was awarded the position. These actions are in violation of Title VII of the Civil Rights Act of 1964, as amended, Age Discrimination in Employment Act of 1967, as amended and applicable state laws.

R.I.C.H.R.
FEB 03 2005

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT
X Roberta Faria

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year)
Esmeralda Lawrence 2-3-05

X 2/3/05
Date

X Roberta Faria
Charging Party *(Signature)*

EEOC FORM 5 (Rev. 07/99)

001896

# EXHIBIT C

CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY: [X] FEPA [ ] EEOC

CHARGE NUMBER: 95EAG 170-39/06

R I Commission For Human Rights and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Wendy A. Smith | (401) 397-6682 |

| STREET ADDRESS / CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 134 Victory Highway, West Greenwich, RI 02817 | 06/20/1953 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| New England Gas Company | Cat D (501 +) | (401) 272-5040 |

| STREET ADDRESS / CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 100 Wesybosset Street, Providence, RI 02903 | 007 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Southern Union Company | (570) 820-2400 |

| STREET ADDRESS / CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| One Pei Center, Wilkes-Barre, P A 18711 | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[ ] RETALIATION [ ] AGE [ ] DISABILITY [X] OTHER *(Specify)* Fepa Statue-Other

DATE DISCRIMINATION TOOK PLACE
EARLIEST: 04/25/2004 LATEST: 04/25/2004
[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

1. I was subjected to discriminatory terms and conditions of employment by my employer, New England Gas Company/Southern Union Company. I am currently employed as a Research Analyst.

2. Respondent's stated reason for denying me the position was that I didn't possess the required experience.

3. I believe I have been discriminated against on the basis of my age (51) (date of birth June 20, 1953) and sex (female) in that I was passed over for a position I was qualified for. In or around April 2004, a position for a Collector was posted. I had the necessary experience and qualifications for this position. On or about April 25, 2004, my application was rejected ostensibly because I did not have the appropriate relative experience. The other two (2) female employees that applied were also rejected for the same reason. However, a younger male employee with less seniority was awarded the position. These actions are in violation of applicable state laws.

R.I.C.H.R.

MAR 02 2005

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I declare under penalty of perjury that the foregoing is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

X 3/2/05
Date Charging Party *(Signature)*

SIGNATURE OF COMPLAINANT
X Wendy A Smith

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year)
3/2/05 My Commission Expires On 11/28/05

EEOC FORM 5 (Rev. 07/99)

# EXHIBIT D

ADLER POLLOCK & SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI 02903-1345
Telephone 401-274-7200
Fax 401-751-0604 351-4607

175 Federal Street
Boston, MA 02110-2890
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

May 3, 2005

Mr. Jason Flanders
Investigator
Rhode Island Commission
For Human Rights
180 Westminster Street
Providence, RI 02903

**Re:** ***Roberta M. Faria v. New England Gas Company/Southern Union Company***
**RICHR No. 05 EAG 139, EEOC No. 16JA500075**

Dear Mr. Flanders:

This office represents New England Gas Company/Southern Union Company (hereinafter "NEG"),[1] the Respondent in the above-referenced matter. On behalf of NEG, we write in response to the Charge of Discrimination ("Charge") filed with the Rhode Island Commission for Human Rights by Roberta M. Faria. In her Charge, Ms. Faria alleges that she was discriminated against on the basis of her age and sex in that she was passed over for an open position with her employer for which she applied.

NEG denies each and every allegation of unlawful discrimination raised by Ms. Faria in her Charge. Although it is true that Ms. Faria applied for an open field collector position within the company, the reason her application was rejected had nothing whatsoever to do with her age or sex. Rather, as is fully explained below, Ms. Faria was initially passed over for the position because NEG determined that she did not have the requisite experience necessary for the position – experience that is mandated by state law.

NEG is a public utility that is regulated by state and federal law. It provides natural gas for home heating and other uses to a great many of Rhode Island's residents. NEG's workforce is heavily unionized. Specifically, NEG's production plant and distribution department employees, its meter readers, collectors, customer service employees, and main office building maintenance employees are represented by the United Steelworkers of America, Local 12431-01 for purposes of collective bargaining and the adjustment of grievances. As a meter reader, Ms. Faria is a member of the Local 12431-01 bargaining unit.

[1] New England Gas Company and Southern Union Company are, for all intents and purposes, the same entity. New England Gas Company is a wholly-owned subsidiary of Southern Union Company.

ADLER POLLOCK & SHEEHAN P.C.

Mr. Jason Flanders
May 3, 2005
Page 2

On March 12, 2004, in accordance with the collective bargaining agreement between NEG and Local 12431-01 (hereinafter "CBA"), NEG posted a notice of three (3) vacant field collector positions in the bargaining unit. *See* CBA, a copy of which is attached as **Exhibit A**; Local 12431-01 Notice of Vacancy dated March 12, 2004, a copy of which is attached as **Exhibit B**. In posting the open field collector positions, NEG followed the specific requirements set forth in Article XI of the CBA regarding Notice of Vacancies. Article XI provides, in relevant part:

> **General.** Notices shall be posted of all vacancies in the Company to be filled by employees, except those for foreman, assistant foreman, and laborers.
>
> ........................................................
>
> *Section 1.* **Posting of Notices.** In the event of a vacancy, the Company shall post notices describing it on bulletin boards throughout the Company. This notice shall include a statement of the requirements of the job and the minimum qualifications for trial. Copies of the notice will be sent to members of the Grievance Committee representing the Division in which the vacancy occurs at the time the notice is posted.
>
> Employees desiring to fill such a vacancy shall apply in writing within five (5) calendar days to the person designated in the notice to receive applications. An application will be accepted for an employee absent during the period of posting if it is signed by a Steward.
>
> *Section 2.* **Filling a Vacancy.** A vacancy shall be filled by the selection of the senior applicant, as determined by the seniority provisions of this Agreement, who has the minimum qualifications for trial.
>
> Any senior applicant not considered to have the minimum qualifications for trial will be so notified at the time of selection of the successful applicant, and an explanation will be given to the employee as to why that employee is not considered qualified.
>
> ........................................................

ADLER POLLOCK & SHEEHAN P.C.



Ex. A, Art. XI.

Ms. Faria, along with a number of other bargaining unit employees, applied for one of the vacant field collector positions by signing the bargaining unit roster that was posted along with the vacancy posting. *See* Signed/Initialed Applicant List for March 12, 2004 Field Collector Position Posting, a copy of which is attached as **Exhibit C**. Union Stewards from other NEG locations indicated the bargaining unit members from those locations who expressed interest in the field collector position by sending a list to Joan Chaffee, NEG's Human Resources Supervisor. *See* Applicant Lists for the Field Collector Position, copies of which are attached as **Exhibit D**.

Once the applicant lists for the open positions were collected, NEG arranged the list of applicants in order of their seniority with the company. A copy of the applicant list for the field collector posting, arranged by seniority, is attached as **Exhibit E** (an "x" in the column for "Steward" indicates that a Local 12431-01 Steward signed/initialed the roster accompanying the posting in the employee's absence). In accordance with the parties' custom, NEG next began the process of "clearing" the posting. To "clear" the posting, managers and supervisors contact each employee who expressed interest in the open position and ask the employee if he/she is truly interested in the job and, if so, whether he/she has the requisite experience and qualifications as indicated in the Notice of Vacancy posting. In many cases, employees who initially expressed interest in the position by signing the roster list accompanying the posting are not really interested in the job and they so inform the manager during the posting clearing process.[2] Other times, employees do not have the necessary experience and qualifications to fill the position, and they acknowledge this during the clearing process.

After the clearing process was completed for the open field collector positions, Ms. Faria was the most senior remaining applicant for one of the positions. Unfortunately, however, NEG felt compelled to bypass Ms. Faria and continue down the seniority list on the basis of its determination that she did not "meet all regulatory requirements for necessary skills and experience to disconnect gas service and remove meters," as set forth in the Notice of Vacancy posting as a minimum qualification for the position. *See* Ex. B. Specifically, NEG determined that Ms. Faria lacked the requisite two (2) years' experience disconnecting gas service as

[2] Certain employees appear to have a practice of signing every vacancy posting, even though they are not really interested in the job and have no intention of transferring into it.

mandated by state law. *See* R.I. Gen. Laws § 39-2-23. Rhode Island General Laws Section 39-2-23 provides:

> **Safe termination of service – Qualified employees. –**
>
> No gas company . . . shall allow their employees to terminate or restore or activate gas services unless those employees have gained relevant experience by working for a gas company at least two (2) years and have been properly trained in the safe termination or activation or restoration of gas services. The same criteria shall also apply to the periodic testing of meters. A certification process for gas service employees shall be established and enforced by the public utilities commission.

Here, NEG determined that Ms. Faria, as a meter reader, did not have two years' relevant experience or proper training in the safe termination of gas services. Because NEG believed that she did not meet the minimum entry requirements required for the field collector position for which she applied, Ms. Faria was passed over in favor of the next most-senior and qualified applicant on the list.

In response, Ms. Faria filed a grievance under the CBA's grievance and arbitration procedure. *See* Ex. A, Art. XVIII. In her grievance, Ms. Faria alleges that in rejecting her application for the field collector position, NEG violated the seniority provisions of the CBA. NEG denied Ms. Faria's grievance on the same basis as set forth above. On behalf of Ms. Faria, Local 12431-01 referred her grievance to arbitration pursuant to Article XVIII of the CBA. The arbitration is currently scheduled to take place on June 8, 2005.

In the meantime, NEG, Local 12431-01, and Ms. Faria have engaged in discussions in an attempt to resolve the grievance. On April 26, 2005, the parties reached a settlement agreement under which Ms. Faria would be placed in a field collector's position upon her return from vacation on May 9, 2005. Ms. Faria has also advised NEG that she will be withdrawing her pending Charge before the Commission, but to date, NEG has no knowledge that she has actually done so.

As the foregoing indicates, NEG's decision to bypass Ms. Faria in favor of a less-senior, qualified applicant obviously had absolutely nothing to do with her age or sex. If NEG had determined that Ms. Faria had the requisite two years' relevant experience and proper training in the termination of gas services, she would have automatically been placed in one of the field

collector positions on the basis of her seniority. Ms. Faria and Local 12431-01 believe that she has the necessary experience and training to fill the position, and they are certainly entitled to that opinion. They are also entitled to file a grievance concerning NEG's decision to bypass her – a grievance which has now been resolved to the parties' satisfaction. However, while Ms. Faria is certainly entitled to file a Charge of Discrimination with the Commission, that does not mean her Charge is appropriate, or that it has any merit. Given the facts set forth above, it clearly meets neither standard.

Although NEG has now agreed to place Ms. Faria in a field collector position starting May 9, 2005, this gives no additional viability to her Charge. As a threshold matter, Ms. Faria has now achieved the remedy she was seeking through the internal grievance procedure, and her Charge has therefore become moot.

Even if the merits of her Charge are considered, to prevail Ms. Faria must demonstrate that NEG discriminated against her because of her age or sex. Since NEG's initial decision with respect to Ms. Faria's application for the field collector position – even if it is viewed as being incorrect – so clearly had nothing to do with either factor, her Charge should be promptly dismissed with a finding of no probable cause if she does not withdraw it on her own.

In addition to the foregoing, Ms. Faria's Charge is also subject to dismissal under the election of remedies doctrine. As set forth above, before filing her Charge, Ms. Faria filed a grievance challenging NEG's initial decision to bypass her for the field collector position, and that grievance was scheduled for arbitration pursuant to the CBA before being settled by the parties. In accordance with the well-established election of remedies doctrine, in first initiating the grievance procedure of the collective bargaining agreement, Ms. Faria selected her remedy concerning this matter and may not pursue her dispute in a second forum. The Rhode Island Supreme Court "long has adhered to the election of remedies doctrine to 'mitigate unfairness to both parties by preventing double redress for a single wrong.'" *Martone v. Johnston School Committee*, 824 A.2d 426, 429 (R.I. 2003) (quoting *State Dept. of Environmental Management v. State Labor Relations Board*, 799 A.2d 274, 277 (R.I. 2002)). Under the election of remedies doctrine, when a party takes advantage of the grievance procedure of a collective bargaining agreement by initiating a grievance, that party may not pursue the same dispute before another administrative agency, like the Commission, or in the Rhode Island courts. *See Martone*, 824 A.2d at 429; *School Committee of North Kingstown v. Crouch*, 808 A.2d 1074, 1080 (R.I. 2002); *State DEM*, 799 A.2d at 278; *Rhode Island Employment Security Alliance v. State Dept. of Employment and Training*, 788 A.2d 465, 467-68 (R.I. 2002); *Cipolla v. Rhode Island College Board of Governors for Higher Education*, 742 A.2d 277, 281 (R.I. 1999). Because Ms. Faria

ADLER POLLOCK & SHEEHAN P.C.



chose first to file a formal grievance concerning this matter, she is barred from pursuing her dispute before the Commission. Thus, Ms. Faria's Charge should be dismissed for this additional reason as well if she does not withdraw it.

NEG's response to your information request, as such request has been revised pursuant to our discussion on April 19, is being sent to you contemporaneously under separate cover. If you have any questions or need any additional information, please contact me.

Very truly yours,

MICHAEL D. CHITTICK

Attachments

cc: Ms. D'Anna Soehnge
Ms. Joan Chaffee

*330636_1.doc*

# EXHIBIT E

ADLER POLLOCK & SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI 02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA 02110-2890
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

May 3, 2005

Mr. Jason Flanders
Investigator
Rhode Island Commission
For Human Rights
180 Westminster Street
Providence, Rhode Island 02903

**Re:** ***Wendy A. Smith v. New England Gas Company/Southern Union Company***
**RICHR No. 05 EAG 170-39/06**

Dear Mr. Flanders:

This office represents New England Gas Company/Southern Union Company (hereinafter "NEG"),[1] the Respondent in the above-referenced matter. On behalf of NEG, we write in response to the Charge of Discrimination ("Charge") filed with the Rhode Island Commission for Human Rights by Wendy A. Smith. In her Charge, Ms. Smith alleges that she was discriminated against on the basis of her age and sex in that she was passed over for an open position with her employer for which she applied.

NEG denies each and every allegation of unlawful discrimination raised by Ms. Smith in her Charge. Although it is true that Ms. Smith applied for an open field collector position within the company, the reason her application was rejected had nothing whatsoever to do with her age or sex. Rather, as is fully explained below, Ms. Smith was passed over for the position because NEG determined that did not have the requisite experience necessary for the position – experience that is mandated by state law.

NEG is a public utility that is regulated by state and federal law. It provides natural gas for home heating and other uses to a great many of Rhode Island's residents. NEG's workforce is heavily unionized. Specifically, NEG's production plant and distribution department employees, its meter readers, collectors, customer service employees, and main office building maintenance employees are represented by the United Steelworkers of America, Local 12431-01 for purposes of collective bargaining and the adjustment of grievances. As a research analyst in NEG's engineering department, Ms. Smith is a member of the Local 12431-01 bargaining unit.

On March 12, 2004, in accordance with the collective bargaining agreement between NEG and Local 12431-01 (hereinafter "CBA"), NEG posted a notice of three (3) vacant field collector

[1] New England Gas Company and Southern Union Company are, for all intents and purposes, the same entity. New England Gas Company is a wholly-owned subsidiary of Southern Union Company.

ADLER POLLOCK & SHEEHAN P.C.



positions in the bargaining unit. *See* CBA, a copy of which is attached as **Exhibit A**; Local 12431-01 Notice of Vacancy dated March 12, 2004, a copy of which is attached as **Exhibit B**. In posting the open field collector positions, NEG followed the specific requirements set forth in Article XI of the CBA regarding Notice of Vacancies. Article XI provides, in relevant part:

> **General.** Notices shall be posted of all vacancies in the Company to be filled by employees, except those for foreman, assistant foreman, and laborers.
>
> ..........................................................
>
> *Section 1.* **Posting of Notices.** In the event of a vacancy, the Company shall post notices describing it on bulletin boards throughout the Company. This notice shall include a statement of the requirements of the job and the minimum qualifications for trial. Copies of the notice will be sent to members of the Grievance Committee representing the Division in which the vacancy occurs at the time the notice is posted.
>
> Employees desiring to fill such a vacancy shall apply in writing within five (5) calendar days to the person designated in the notice to receive applications. An application will be accepted for an employee absent during the period of posting if it is signed by a Steward.
>
> *Section 2.* **Filling a Vacancy.** A vacancy shall be filled by the selection of the senior applicant, as determined by the seniority provisions of this Agreement, who has the minimum qualifications for trial.
>
> Any senior applicant not considered to have the minimum qualifications for trial will be so notified at the time of selection of the successful applicant, and an explanation will be given to the employee as to why that employee is not considered qualified.
>
> ..........................................................

Ex. A, Art. XI.

Ms. Smith, along with a number of other bargaining unit employees, applied for one of the vacant field collector positions by signing the bargaining unit roster that was posted along with the vacancy posting. *See* Signed/Initialed Applicant List for March 12, 2004 Field Collector Position Posting, a copy of which is attached as **Exhibit C**. Union Stewards from other NEG locations indicated the bargaining unit members from those locations who expressed interest in the field collector position by sending a list to Joan Chaffee, NEG's Human Resources Supervisor. *See* Applicant Lists for the Field Collector Position, copies of which are attached as **Exhibit D**.

Once the applicant lists for the open positions were collected, NEG arranged the list of applicants in order of their seniority with the company. A copy of the applicant list for the field collector posting, arranged by seniority, is attached as **Exhibit E** (an "x" in the column for "Steward" indicates that a Local 12431-01 Steward signed/initialed the roster accompanying the posting in the employee's absence). In accordance with the parties' custom, NEG next began the process of "clearing" the posting. To "clear" the posting, managers and supervisors contact each employee who expressed interest in the open position and ask the employee if he/she is truly interested in the job and, if so, whether he/she has the requisite experience and qualifications as indicated in the Notice of Vacancy posting. In many cases, employees who initially expressed interest in the position by signing the roster list accompanying the posting are not really interested in the job and they so inform the manager during the posting clearing process.[2] Other times, employees do not have the necessary experience and qualifications to fill the position, and they acknowledge this during the clearing process.

After the clearing process was completed for the open field collector positions, Roberta Faria, a co-worker in Ms. Smith's bargaining unit, was the most senior remaining applicant for one of the positions. Unfortunately, however, NEG was compelled to bypass Ms. Faria and continue down the seniority list on the basis of its determination that she did not "meet all regulatory requirements for necessary skills and experience to disconnect gas service and remove meters," as set forth in the Notice of Vacancy posting as a minimum qualification for the position. *See* Ex. B.[3] Specifically, NEG determined that Ms. Faria lacked the requisite two (2) years' experience disconnecting gas service as mandated by state law. *See* R.I. Gen. Laws § 39-2-23. Rhode Island General Laws Section 39-2-23 provides:

[2] Certain employees appear to have a practice of signing every vacancy posting, even though they are not really interested in the job and have no intention of transferring into it.

[3] Ms. Faria also filed a Charge of Discrimination with the Commission in which she alleges that NEG bypassed her because of her age and sex.

> **Safe termination of service – Qualified employees. –**
>
> No gas company . . . shall allow their employees to terminate or restore or activate gas services unless those employees have gained relevant experience by working for a gas company at least two (2) years and have been properly trained in the safe termination or activation or restoration of gas services. The same criteria shall also apply to the periodic testing of meters. A certification process for gas service employees shall be established and enforced by the public utilities commission.

Here, NEG determined that Ms. Faria, as a meter reader, did not have two years' relevant experience or proper training in the safe termination of gas services. Because NEG believed that Ms. Faria did not meet the minimum entry requirements required for the field collector position for which she applied, she was passed over in favor of the next most-senior applicant on the list, and so on, until a qualified candidate was reached.

Like Ms. Faria, Ms. Smith was also bypassed in favor of a less senior, but qualified, applicant. As was the case with Ms. Faria, NEG determined that Ms. Smith simply did not possess the requisite experience and proper training in the safe termination of gas services necessary for the field collector position. Otherwise, Ms. Smith would have been placed in the position on the basis of her seniority with the company.

As the foregoing indicates, NEG's decision to bypass Ms. Smith in favor of a less-senior, qualified applicant obviously had absolutely nothing to do with her age or sex. If NEG had determined that Ms. Faria had the requisite two years' relevant experience and proper training in the termination of gas services, she would have been placed in one of the field collector positions on the basis of her seniority. Evidently, Ms. Smith believes that she has the necessary experience and training to fill the position, and she is certainly entitled to that opinion. If so, however, her appropriate remedy was to file a grievance under the grievance and arbitration procedure of the CBA. *See* Ex. A, Art. XVIII. For whatever reason, Ms. Smith chose not to file a grievance. While Ms. Smith is entitled to file a Charge of Discrimination with the Commission, that does not mean her Charge has any merit. Given the facts set forth above, it clearly does not.

To prevail on her Charge, Ms. Smith must demonstrate that NEG discriminated against her because of her age or sex. Since NEG's decision with respect to Ms. Smith's application for the

ADLER POLLOCK & SHEEHAN P.C.



field collector position so clearly had nothing to do with either factor, her Charge should be promptly dismissed with a finding of no probable cause.

NEG's response to your information request in this matter is being sent to you contemporaneously under separate cover. If you have any questions or need any additional information, please contact me.

Very truly yours,

MICHAEL D. CHITTICK

Attachments

cc: Ms. D'Anna Soehnge
Ms. Joan Chaffee

*330773_1.doc*